Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual, | Case No. 1:21-cv-01349-NONE-BAM |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities | **Date:** January 14, 2022<br>**Time:** 9:00 a.m.<br>**Judge:** Hon. Barbara McAuliffe |
| Defendants. | |

## I. INTRODUCTION

On or around March 7, 2019, CDCR inmate Luis Romero was transferred to California State Prison, Corcoran. Corcoran prison officials rushed to assign Mr. Romero to the same cell as convicted murderer and single-celled-inmate Jaime Osuna. Corcoran officials had already been put on notice that Mr. Osuna was uniquely unfit to be housed with a cellmate, as he had engaged in multiple acts of violence against fellow inmates and had been charged with attempted murder as a result of one such incident. On March 8, 2019, Corcoran prison officials chose to bypass the standardized process and then failed to conduct regularly scheduled nightly safety checks of Mr. Romero's new cell. In the early morning hours of March 9, 2019, Corcoran prison officials finally conducted a safety check. At that point, Mr. Romero was found decapitated, and Mr. Osuna was found wearing a necklace made of Mr. Romero's body parts.

On March 2, 2020, Mr. Romero's mother, Dora Solares, filed a wrongful death case on behalf of her son. *See Solares v. Diaz, et al.* (E.D. Cal. 20-cv-323-NONE), Dkt. No. 1. Due to the judicial emergency in the Eastern District of California, that case has not yet been assigned a District Judge. *See e.g. Solares v. Diaz, et al.* (E.D. Cal. 20-cv-323-NONE), Dkt. No. 40. In 2021, the tragedy experienced by Ms. Solares was compounded greatly when gruesome photographs of Mr. Romero's mutilated body were posted online.

On September 8, 2021, Ms. Solares filed this lawsuit, and on September 15, 2021, this lawsuit was related with *Solares v. Diaz*. *See Solares v. Burns* (E.D. Cal. 21-cv-1349-NONE), Dkt. No. 6. In this case, Plaintiff alleges that defendant Sergeant Burns took photos of Mr. Romero's mutilated body, shared those grisly images with other CDCR staff, despite having no legitimate governmental purpose to do so, and that those images were shared among correctional officers within Corcoran and other CDCR facilities then ultimately posted on the Internet, resulting in widespread publication on a multitude of online platforms.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (emphasis added). Federal rules simply require notice pleading. Fed. R. Civ. P. 8(a)(2).

Defendants' motion to dismiss should be denied because the Complaint contains allegations "taken as true and construed in the light most favorable to plaintiff[]," *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999), "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## III. PLAINTIFF STATES A VALID CLAIM FOR A FOURTEENTH AMENDMENT VIOLATION

### A. Shocks the Conscience: Defendant Burns and Other Unidentified CDCR Personnel Took Photos of a Mutilated, Decapitated Body and Shared Those Images, All Without a Legitimate Government Purpose

Whether an officer's conduct is unconstitutional under the Fourteenth Amendment turns on the factual issue of whether the conduct "shocks the conscience." *See Nicholson v. City of L.A.*, 935 F.3d 685, 692-93 (9th Cir. 2019). This standard is met where the alleged conduct "offend[s] the community's sense of fair play and decency." *Rochin v. California*, 342 U.S. 165, 173 (1952).

"Few things are more personal than the graphic details of a close family member's tragic death. Images of the body usually reveal a great deal about the manner of death and the decedent's suffering during his final moments – all matters of private grief not generally shared with the world at large." *Marsh v. County of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012). Given the "long-standing tradition of respecting family members' privacy in death images," the constitutional right to privacy "encompasses the power to control images of a dead family member." *Id.* at 1153. The Ninth Circuit in *Marsh* held that sharing death images without any legitimate governmental purposes violates this right and shocks the conscience when it deprives the decedent's family the right to control the tragic images of family members. *See id.* at 1155. The privacy right in question centers on the right to be protected from government officials gratuitously revealing "the graphic details of a close family member's tragic death." *Id.* at 1154.

To be clear, *Marsh* did not involve "publication" of death images in the press or on the Internet. In *Marsh*, a district attorney kept a death photo and later sent a copy to two reporters. However, neither the district attorney or the two reporters published the photo and the photo never appeared on the Internet. Appellees' Brief, *Marsh*, No.11-55395, 2011 WL 3436959, at *1 (9th Cir. Aug. 1, 2011) However, the mishandling of the death images shocked the conscience, and the district attorney's actions gave rise to the plaintiff's fear that she might one day "stumble upon photographs of her dead son," given the "viral nature of the Internet." *Marsh*, 680 F.3d at 1155.

Thus, the release of child's autopsy photos without any legitimate government interest intruded upon the grief of the mother so as to constitute a substantive due process violation. *Id.*; *see also Shelly v. Cty. of San Joaquin*, 996 F. Supp. 2d 921, 931 (E.D. Cal. 2014) (substantive due process violated based upon allegations that defendant exhumed decedent's skeletal remains, and that a news broadcasts observed by Plaintiff showed body parts that she believed belonged to her deceased daughter being dumped "like garbage.")

Similarly, here, the taking and sharing of the photographs, which foreseeably and factually led to the publication of the grisly images on the Internet and social media caused Plaintiff's harm: Sergeant Burns was a CDCR sergeant working at California State Prison, Corcoran. (Dkt. No. 1, Complaint) Mr. Romero's remains were "mutilated" (*id.* at 5, l. 23), he was "decapitated" (*id.* at 5, l. 26) and "Osuna made a necklace for himself using Mr. Romero's body parts and organs." (*id.* at 6, l. 1-2). The Complaint clearly alleges that Burns "took photographs of Mr. Romero's remains" (*id.* at 6, l. 5-6) while he was "on duty" (*id.* at 6, l. 6) and while in an area "where public access was prohibited and only first responders employed by the CDCR were allowed." (*id.* at 6, l. 6-7) Defendant Burns then "possessed and shared" (*id.* at 6, l. 9) photos of Mr. Romero's remains, "which in turn allowed these photographs to be leaked publicly," (*id.* at 6, 10-11) including on the website Sword and Scale. *Id.* at 6, l. 13. Taking advantage of unique access afforded by being a CDCR employee while on duty, and then "taking and sharing photos of Luis Romero's remains without any legitimate purposes" (*id.* at 7, ll. 27-28), was "willful, wanton, malicious and oppressive" (*id.* at 7, l. 15) and "deprived Plaintiff of her substantive due process rights to control the physical remains, memory and death images of her deceased child." *Id.* at 8, ll. 1-2.

That Defendant Burns shared but not published the death images does not make the conduct permissible any more than the conduct in *Marsh* was excusable because the news outlets never published the photo. Merely taking and/or sharing the death images is enough under *Marsh*. Moreover, Plaintiff's complaint goes the extra mile and notes that the CDCR has acknowledged the legal copyright holder of the images (*id.* at 4, l. 28) an admission that the photos were taken by Corcoran personnel and potential evidence of Burns' involvement.

Defendant chucks in the argument that the inclusion of Does in Plaintiff's complaint somehow obviates the allegations made against Defendant Burns as an individual. A plain reading of the complaint indicates otherwise. As describe above, Defendant Burns is alleged to have taken photographs and shared them without any legitimate government purpose, that others participated in the wrongdoing does not minimize the specific allegations against

4

him. Taking photographs of a decapitated corpse while on duty, and then sharing those grisly images for no legitimate government interest is a quintessential example of conduct that "shocks the conscience," especially considering that the images indeed entered the public domain.

**B.    No Qualified Immunity**

"[D]etermining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009). Moreover, "'[c]learly established' for purposes of qualified immunity means that 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999). "Specific precedent is not required in order to overcome a qualified immunity defense, but the law in question must be sufficiently clear that the unlawfulness of the action would have been apparent to a reasonable official." *Chew v. Gates*, 27 F.3d 1432, 1446-47 (9th Cir. 1994). Qualified immunity involves an objective inquiry. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

As described in Section A, Defendant Burns' conduct violated Plaintiff's Fourteenth Amendment right. As for the second step, the Supreme Court has ruled that family members have a personal stake in protecting against public intrusions upon their own grief. *Favish v. Nat'l Archives & Records Admin*, 541 U.S. 156, 167-68 (2004). "Concluding that this right is deeply rooted in our Nation's history and tradition, the Ninth Circuit has held that it rises to the level of a constitutional right protected by substantive due process." *Jones v. Jinparn*, 2020 WL 999806, at * 4 (N.D. Cal. Mar. 2, 2020) (quoting *Marsh*, 680 F.3d at 1154).

| | |
|---|---|
| 1 | This right to protect public invasion upon a family's private grief towards a loved |
| 2 | one's physical remains was "clearly established" by at least 2012: "A parent's right to control |
| 3 | a deceased child's remains and death images flows from the well-established substantive due |
| 4 | process right to family integrity." *Marsh*, 680 F.3d at 1154 (9th Cir. 2012). Courts have relied |
| 5 | on *Marsh* in holding that this Fourteenth Amendment right was clearly established. In *Walter* |
| 6 | *v. Cnty of San Diego*, the District Court denied defendants' motion to dismiss a complaint |
| 7 | alleging interference with a dead child's remains and memory. *Walter v. Cnty. of San Diego*, |
| 8 | 2020 WL 7024660, at *12 (S.D. Cal. Nov. 30, 2020). The Court held that, "based on *Marsh*," |
| 9 | the Plaintiff pled "a plausible Fourteenth Amendment substantive due process claim," the |
| 10 | right was "clearly established" at the time of the child's death in October 2018, and individual |
| 11 | defendants "were on notice that their conduct was unlawful." *Id.* at * 11-12. |

Additionally, Defendant Burns was on notice that California Code of Civil Procedure § 129 creates a Due Process right because it (1) provides substantive criteria that limits an official's discretion to reproduce an autopsy photograph, and (2) contains explicit and mandatory language limiting an official's discretion unless specific exemptions apply. *See* Cal. Code Civ. Proc. § 129 ("[A] copy, reproduction, or facsimile of any kind of photograph…of the body, or any portion of the body, of a deceased person, taken by or for the coroner a the scene of death…shall not be made or disseminated, except [setting forth limited exceptions]"). A defendant's "violation of section 129 provides an additional basis" for a plaintiff's section 1983 claim. *Marsh*, 680 F.3d at 1158. Given all this, Defendant Burns cannot realistically argue that he was not on notice at the time of Mr. Romero's death that he was legally permitted to take photographs of an inmate's mutilated remains, with no legitimate governmental interest, and share them with others.

Thus, the Complaint contains sufficient allegations to support a Fourteenth Amendment due process violation claim.

## IV. PLAINTIFF STATES A VALID NEGLIGENCE CLAIM

Plaintiff's claim for general negligence liability arises under California Civil Code section 1714. The California Supreme Court has made clear that law enforcement officials are subject to general negligence liability. *Lugtu v. Cal. Highway Patrol*, 26 Cal. 4th. 703, 716 (2001). The Complaint cites to California Government Code section 820, which states, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." *See* Cal. Gov. Code § 820(a).

California law has long recognized a duty to handle dead bodies with due care because such conduct "is likely to cause serious emotional distress to members of the decedent's immediate family regardless of whether they observe the actual negligent conduct or injury to the remains of their decedent. *Christensen v. Superior Court*, 54 Cal.3d.868, 894-95 (1991). California specifically imposes a duty on law enforcement officers to "refrain from exploiting gruesome death images by disseminating them to friends and family members or others with no involvement in official [law enforcement] activities." *Catsouras v. Dept't of Cal. Highway Patrol*, 181 Cal. App. 4th. 856, 884 (2010). "*Catsouras* strongly supports the existence of a duty with respect to [individual law enforcement officials] who took the photos of the victims and shared them with others." *Bryant v. Cnty. of L.A.*, 2020 WL 8024857, at *7 (C.D. Cal. Dec. 28, 2020).

In *Catsouras*, two California Highway Patrol officers e-mailed horrific photographs of decedent's mutilated corpse to their friends and family members. *Catsouras*, 181 Cal. App. 4th at 863. Those photographs were then forwarded to others and spread across the Internet. *Id.* The California Court of Appeal found that the two officers "owed plaintiffs a duty not to exploit CHP-acquired evidence in such a manner as to place them at foreseeable risk of grave emotional distress." *Id.* It must be noted that the defendant officers themselves did not publish photographs on the Internet, and that merely sharing such sensitive images with others was enough to establish a breach of a duty of care. The *Catsouras* court swatted down the notion that the officers were immune, or that individual

7

liability would hinder investigatory or other law enforcement purposes: "We simply hold that the CHP and its officers must refrain from exploiting gruesome death images by disseminating them to friends and family members or others with no involvement in official CHP activities." *Id.* at 884.

Similarly, the widow of Kobe Bryant brought negligence claims against individual Los Angeles County Sheriff's Deputies for taking and sharing photographs of the remains of her late husband and daughter, even though these photographs had never been published on the Internet. In denying defendants' motion to dismiss, the court in *Bryant* found that "*Catsouras* strongly supports the existence of a duty in this case with respect to the LASD deputies who took the photos of the victims and shared them with others." *Bryant v. Cnty. of Los Angeles*, 2020 WL 8024857, at *7 (C.D. Cal. Dec. 28, 2020).

Here, Plaintiff alleges that Defendant Burns "took photographs of Mr. Romero's remains while in uniform, on duty, and in an area where public access was prohibited and only first responders employed by the CDCR were allowed within the Corcoran Prison." (Dkt. No. 1, at 6, ll. 7-8) The Complaint further alleges that Defendant Burns possessed the photographs of Mr. Romero's remains "and shared them," "which in turn allowed these photographs to be leaked publicly." *Id.* at ll. 10-11.

Defendants argue that Defendant Burns did not breach any duty of care and had no duty of care to protect against third parties. A plain reading of the Complaint and referral to California case law demonstrates why this argument fails. The Complaint alleges that Defendant Burns himself, not a third party, caused Plaintiff's harm, by taking and sharing photographs of Mr. Romero's remains with no legitimate government interest. Thus, this case involves malfeasance, not nonfeasance. *See Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, fn. 5, ("the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter"); *Lugtu*, 26 Cal. 4th. at 716 (general negligence liability applies to law enforcement officers for allegations "based upon a claim of misfeasance, not nonfeasance").

The Complaint properly alleges that Defendant Burns himself, not a third party, caused Plaintiff's harm by acts of misfeasance, the taking and sharing photographs of Mr. Romero's remains with no legitimate government interest: The Complaint clearly alleges that Burns "took photographs of Mr. Romero's remains" (Dkt. No. 1, at 6, ll. 5-6) while he was "on duty" (*id.* at 6, l. 6) and while in an area "where public access was prohibited and only first responders employed by the CDCR were allowed." (*id.* at 6, l. 6-7) Defendant Burns then "possessed and shared" (*id.* at 6, l. 9) photos of Mr. Romero's remains, "without any legitimate purposes" (*id.* at 7, ll. 27-28). In so doing, the Complaint properly alleges that Burns had a duty of care and breached it.

Defendant's apparent argument is that Plaintiff does not allege that Defendant Burns himself posted the photographs on the internet and therefore cannot be held responsible. *Catsouras* and *Bryant* hold otherwise. Indeed, the mere taking and sharing of photographs is enough to establish liability. *See Catsouras*, 181 Cal. App. 4th at 884; *Bryant v. Cnty. of L.A.*, 2020 WL 8024857, at *7 (C.D. Cal. Dec. 28 2020).

## V. PLAINTIFF STATES A VALID INVASION OF PRIVACY CLAIM

Plaintiff's Complaint properly alleges a claim for invasion of privacy.

The elements of a claim of invasion of privacy on the public disclosure of private facts are as follows: (1) public disclosure; (2) of a private fact; (3) which would be offensive and objectionable to the reasonable person; and (4) which is not of legitimate public concern. *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 214 (1998).

The Supreme court has recognized a common law right "of family members to direct and control disposition of the body of the deceased." *Marsh*, 680 F.3d at 1153 (quoting *Favish*, 541 U.S. at 167). The *Catsouras* court recognized that surviving family members have no right of privacy arising from discussion of the life of a decedent but held that they do have a common law privacy right in the death images of the decedent. *Catsouras*, 181 Cal. App. 4th at 863-64. California and federal courts recognize that the sharing of sensitive images can constitute a cognizable basis for a state law invasion of

9

privacy claim, whether the images involve a sonogram of an aborted fetus or a sex tape involving a rock singer and actress. *See Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1258 (2017) ("Mayweather's publication of the sonogram and summary medical report, like the *Catsouras* photographs and Michaels-Lee sex tape, involved a 'morbid and sensational' prying into her private life and thus constituted a cognizable basis for her invasion of privacy claim"); *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823, 842 (C.D. Cal. 1998) (granting preliminary injunction prohibiting dissemination of sex tape "to prevent a violation of plaintiff's state law right of privacy in the contents of the Tape.")

Plaintiff's complaint alleges every element for an invasion of privacy claim. Like a sonogram or sex tape, the death images portray a private fact -- Mr. Romero's "mutilated" (Dkt. No. 1, at 5, l. 23) and "decapitated" (*id.* at 5, l. 26) remains -- that would be offensive to a reasonable person if shared for morbid and sensational purposes. Defendant Burns facilitated the public disclosure of these death images when he "possessed and shared" (*id.* at 6, l. 9) them, "which in turn allowed these photographs to be leaked publicly," (*id.* at 6, 10-11) including on the website Sword and Scale. (*id.* at 6, l. 13). The Complaint clearly alleges that Burns "took photographs of Mr. Romero's remains" (*id.* at 6, l. 5-6) while he was "on duty" (*id.* at 6, l. 6) and while in an area "where public access was prohibited and only first responders employed by the CDCR were allowed." (*id.* at 6, l. 6-7), but that this taking and sharing photos of grotesque images of Luis Romero's remains was "without any legitimate purposes" (*id.* at 7, ll. 27-28), and furthermore was "willful, wanton, malicious and oppressive." *Id.* at 7, l. 15.

Thus, Plaintiff has plainly set forth the factual allegations for a cause of action for invasion of privacy.

### VI. BREACH OF MANDATORY DUTY

The Ninth Circuit in *Marsh* held that "[s]tate law can create a right that the Due Process Clause will protect only if the state law contains (1) substantive predicates governing official decision making, and (2) explicitly mandatory language specifying the

10

outcome that must be reached if the substantive predicates have been met.'" *Marsh*, *supra*, 680 F.3d at 1155. The *Marsh* court further held that, because "California consciously and deliberately gave its citizens the right not to have government officials engage in unwarranted reproduction of autopsy photographs or other death images of deceased relatives," and that defendant's violation of section 129 could provide a basis for plaintiff's § 1983 claim. *Id.* at 1157-58.

Despite state law giving right to a federal civil cause of action, Defendant somehow argues that state law does not give rise to a state civil cause of action, since a breach of mandatory duty claim can only be against a public entity. *See* Dkt. No. 11-1 at 9. That is not the case. For instance, the California Supreme Court has held that Cal. Penal Code § 11166(a) imposes a mandatory duty to make a report upon individual government employees who are deemed mandated reporters. *B.H. v. Cty. of San Bernardino*, 62 Cal. 4th 168, 197 (2015) ("[I]f [sheriff's deputy] were dispatched to investigated a reported residential burglary and observed evidence that would sustain an objective suspicion of child abuse, she would be required to report under section 11166, subdivision(a).") Federal courts have also recognized that the same statute imposes a mandatory duty upon county officials. *See e.g. R.H. v. Cty. of San Bernardino*, 2020 WL 5775177, *9 (C.D. Cal. Jul 31, 2020) (denying summary judgment and permitting claim against county social worker for violation of Cal. Penal Code § 11166(a)).

Section 129 explicitly states that photograph "of the body, or any portion of the body, of a deceased person," "shall not be made or disseminated," except under a very limited set of circumstances described "except as follows." Cal. Civil Code § 129. The Complaint explicitly states that Defendant Burns took photos of Mr. Romero's remains while on duty and in an area where only first responders were allowed. (Dkt. No. 1, at 6, ll. 4-5) Plaintiff further alleges that Defendant Burns then shared photos of grotesque images of Luis Romero's remains, which was "without any legitimate purposes." (Dkt. No. 1, at 7,

ll. 27-28) This was a breach of Section 129's mandatory duty not to make or disseminate photographs of a deceased person.

## VII. CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(6) motion should be denied, and they should be ordered to answer Plaintiff's Complaint.

Alternatively, Plaintiff should be granted leave to amend should the Court determine any ground of the motion to dismiss to be meritorious. Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave when justice so requires," and the Ninth Circuit requires this policy be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The Ninth Circuit, "in a line of cases stretching back nearly 50 years, [has] held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotations and citations omitted). Defendant provides no specific explanation for why any purported deficiencies could not be cured by amendment, and Plaintiff urges the Court to permit amendment should it grant any portion of Defendant's Motion.

Respectfully submitted,

Dated:  December 31, 2021

                                          LAW OFFICES OF ERIN DARLING

                                          By: _____*/s/Erin Darling*_____
                                                    Erin Darling,
                                                    Attorneys for Plaintiff
                                                    Dora Solares