**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA SOLARES, | ) Case No.: 1:21-cv-01349 JLT BAM |
| Plaintiff, | ) <br> ) ORDER GRANTING DEFENDANT BURNES' <br> ) MOTION TO DISMISS |
| v. | ) |
| JOSEPH BURNS, et al., | ) (Doc. 11) <br> ) |
| Defendants. | ) <br> ) |

Dora Solares alleges that after her son, Luis Romero, was brutally murdered by a cellmate at Corcoran State Prison, California Department of Corrections and Rehabilitation Sergeant Joseph Burnes[1] and Does 1-15 took and shared photographs of Mr. Romero's mutilated remains, which were later published on the Internet and witnessed by Plaintiff. (*See generally* Doc. 1.) She seeks to hold Defendants liable for, *inter alia*, violating her substantive due process rights under the Fourteenth Amendment of the U.S. Constitution. (*Id.*)

Burnes seeks dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 11.) Plaintiff opposes dismissal, asserting it states a valid and plausible claim. (Doc. 13.) The Court finds the matter suitable for decision without oral argument pursuant to Local

---

[1] Plaintiff identifies this Defendant by the last name "Burns". (*See* Doc. 1.) This appears to be in error, as the motion to dismiss uses the spelling "Burnes." (*See* Doc. 11) Accordingly, the Court will do the same.

1

Rule 230(g) and General Order 618. For the reasons set forth below, Burnes' motion to dismiss is **GRANTED**.

I. **Background and Allegations**

On March 7, 2019, Luis Romero was transferred from Mule Creek State Prison to California State Prison, Corcoran. (Doc. 1 at ¶ 14.) According to Plaintiff, Defendants failed to follow the "standardized administrative committee process" for determining whether two inmates should share a cell and hastily assigned Mr. Romero to inmate Jaime Osuna's cell. (*Id.*) Osuna, a convicted murderer, had never been housed with another inmate while at Corcoran due to his extremely violent history, including against fellow inmates. (*Id.* at ¶ 15.) Defendants were allegedly on notice of these facts, and yet proceeded to make their fatal assignment. (*Id.* at ¶ 14.)

The day after Mr. Romero arrived, Defendants failed to properly monitor the premises or conduct regular safety checks of Mr. Romero's cell as required and failed to order the bedsheet draped over his cell window to be removed, which prevented outside surveillance. (Doc. 1 at ¶ 15.) Early the next morning, on March 9, 2019, prison officials eventually moved the bedsheet aside to find Mr. Romero brutally murdered. (*Id.* at ¶ 1.) Using what appeared to be a razor wrapped in string, Osuna had removed Mr. Romero's right ear, forcibly detached his eyes, removed his ribs and lungs, decapitated him, and was wearing a necklace made of his body parts and organs. (*Id.* at ¶ 16.) Plaintiff asserts Defendants took photographs of Mr. Romero's remains while in uniform and on duty, then possessed, shared, and/or permitted other CDCR employees under their supervision to possess and share the photographs, "which in turn allowed these photographs to be leaked publicly." (*Id.* at ¶ 17.) Plaintiff alleges she had "the horrific experience of witnessing the photographs" on various websites and social media, and she continues to experience "intense distress and emotional anguish" caused by Defendants' conduct. (*Id.* at ¶ 18.)

Based upon these allegations, Plaintiff filed the instant action on behalf of herself and as successor-in-interest to Mr. Romero, asserting a 42 U.S.C. § 1983 claim and pendent state law claims against Burnes and Does 1-15 in their individual capacities.[2] Pending before the Court is Burnes'

---

[2] Plaintiff filed a parallel action in connection with the events preceding those at issue here. *Solares v. Diaz*, No. 1:20-CV-00323-JLT-BAM.

motion to dismiss under Rule 12(b)(6). (Doc. 11.) Plaintiff filed an opposition on December 31, 2021, (Doc. 13), to which Burnes replied on January 7, 2022. (Doc. 14.)

## II.     Motion to Dismiss under Rule 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. Porterville of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III.    Discussion and Analysis

### A.      Substantive due process under 42 U.S.C. § 1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) he or she was

deprived of a right secured by the Constitution or federal law; and (2) the defendant acted 'under color of state authority' in depriving the plaintiff of this right." *Franklin v. Terr*, 201 F.3d 1098, 1100 (9th Cir. 2000) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

### 1. Defendants acted under color of state law

Though not in dispute, Plaintiff alleges Defendants were acting within the course and scope of their employment with CDCR, (Doc. 1 at ¶ 7), which is adequate to satisfy the second prong. *See Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (explaining that there is no "rigid formula" in determining whether a state or local official acted under color of state law and "state employment is generally sufficient to render the defendant a state actor"). Thus, the Court is left to determine whether Plaintiff sufficiently alleges the deprivation of a constitutional right.

### 2. A parent's control over a child's death images is a secured right

Plaintiff's substantive due process claim rests upon on her constitutional right to control the death images of her son as established in *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012). (Doc. 1 at ¶ 25.) Indeed, "[a] parent's right to control a deceased child's remains and death images flows from the well-established substantive due process right to family integrity." *Marsh*, 680 F.3d at 1154. The Constitution protects this right "against unwarranted public exploitation by the government." *Id*. In *Marsh*, the Ninth Circuit held that a retired prosecutor's release of a copy of the plaintiff's child's autopsy photograph to the press in an attempt to publish it violated the plaintiff's Fourteenth Amendment due process rights. The Court reasoned:

> Mutilation of a deceased family member's body, desecration of the burial site and public display of death images are the kind of conduct that is likely to cause the family profound grief and therefore "shocks the conscience" and "offend[s] the community's sense of fair play and decency."

680 F.3d at 1155 (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952)). Thus, by attempting to publish the image, the Court found the prosecutor's "intrusion into the grief of a mother over her dead son—*without any legitimate governmental purpose*— 'shocks the conscience' and therefore violate[d] [the plaintiff's] substantive due process right." *Id.* (emphasis added).

The "cognizable level of executive abuse of power" for a substantive due process violation is

egregious conduct which "shocks the conscience and violates the decencies of civilized conduct." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks omitted); *see also Marsh*, 680 F.3d at 1154; *Goldyn v. Clark Cty., Nevada,* 346 F. App'x 153, 155 (9th Cir. 2009). Both parties focus, in large part, on surmising the basis for the holding in *Marsh*. Burnes argues that his conduct doesn't shock the conscience and *Marsh* is distinct because Plaintiff doesn't allege Burnes was involved in the publication of the photographs. (*See* Doc. 11-1 at 4-6.) Plaintiff contends that "taking and/or sharing" the photographs with others, is enough to shock the conscience under *Marsh*. (Doc. 13 at 5.)

Irrespective of the form or subject of delivery, an essential consideration in *Marsh* was whether the defendant acted with a legitimate government purpose. *See Marsh*, 680 F.3d at 1155. Moreover, while it is relatively clear that whether the photographs were published is of no import as the photographs were not ultimately published in *Marsh*, the Court finds no indication as to whether the Ninth Circuit's decision relied upon the prosecutor's attempt to publish the photographs by delivering them to the press as opposed to, for example, sharing the photos with an employer, co-worker, or friends. In other words, it is unclear whether the decision hinged on *how* or *with whom* the imaged were shared.

Though many courts have determined at the pleading stage whether alleged conduct shocked the conscience,[3] the Court finds it unnecessary to engage in such an analysis as Plaintiff fails to allege facts sufficient to state a cognizable due process claim, discussed *infra*, and controlling law on the particular subject of dissemination of death images in *Marsh* was decided at the summary judgment stage. *See Roberts v. Bell*, 281 F. Supp. 3d 1074, 1079 (D. Mont. 2018) (acknowledging a court's

---

[3] *See*, *e.g.*, *Sanghvi v. Cnty. of San Bernardino*, 2022 WL 486634 (9th Cir. Feb. 17, 2022) (finding allegations insufficient to survive motion to dismiss based on failure to plead facts indicating conduct that shocked the conscience); *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017) (dismissing claim where conduct alleged was not sufficiently "egregious"); *Neil v. Modesto City Sch. Dist.*, 2018 WL 573368 (E.D. Cal. Jan. 26, 2018) (same); *Jones v. Jinparn*, 2020 WL 999806 (N.D. Cal. Mar. 2, 2020) (finding that because the allegations sounded, at most, in negligence, as opposed to egregious conduct that shocks the conscience, plaintiffs failed to state a claim); *Richter v. Ausmus*, 2020 WL 1429758 (N.D. Cal. Mar. 24, 2020) (finding plaintiff failed to state a claim because even if she had sufficiently alleged a protected right, she failed to allege conduct that shocked the conscience); *Gomez v. Arizona*, 2017 WL 5517449, at *4 n.1 (D. Ariz. Nov. 17, 2017) (finding that to the extent plaintiff asserted a substantive due process claim, her allegations failed to meet this "high standard").

"discretion pursuant to both United States Supreme Court and Ninth Circuit precedent to determine the question of whether conduct shocks the conscience as a matter of law" as well as precedent providing that the issue could be left to the jury). Thus, although an important determination, the Court finds it unnecessary to resolve at this stage whether the conduct at issue is, as a matter of law, conscience-shocking, the Complaint presents other fatal deficiencies.

### 3. Plaintiff fails to state a claim

Burnes argues Plaintiff fails to sufficiently allege that his conduct shocks the conscience and the vague allegations do not provide fair notice of his alleged wrongdoing.[4] (Doc. 11-1 at 4-6.) Plaintiff fails to meaningfully oppose the pleading deficiencies indicated by Burnes, instead asserting that "taking and/or sharing" images of her deceased son is sufficient to shock the conscience under *Marsh*, which the Court declines to determine at this stage. (Doc. 13 at 5-6.)

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Though detailed factual allegations are not required,

---

[4] As an initial matter, Burnes argues that "all of Plaintiff's allegations regarding the photographs are directed collectively to Burnes 'and Does 1 through 15,' apparently with the meaning that at least one, but not all, of the sixteen accused people participated in the conduct alleged." (Doc. 11-1 at 5 [quoting Doc. 1 at ¶ 17].) Relying on *Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012), he asserts the Complaint fails to allege "what Burnes himself supposedly did." (*Id*.)

In *Henry*, the defendants consisted of the county, two named county officials, two named state officials, ten Doe defendant county caseworkers, and ten Doe defendant county supervisors. 678 F.3d 991 at 996. As Burnes himself quotes, the Ninth Circuit illustrated that it was implausible to suggest that detailed allegations, such as failing to respond to a report of abuse or authorize a medical treatment, could be attributed personally to the state official defendants, who merely oversaw the county's programs and ensured regulation compliance. *See id*. at 996, 1004. At issue is whether Plaintiff states a claim against Burnes. *Iqbal*, 556 U.S. at 676-77 (plaintiff must allege how each named defendant personally deprived her).

The allegations attribute the wrongful conduct to Burnes "and" the Doe Defendants. Thus, if the Court omits Doe Defendants from the discussion, each allegation is directed specifically at Burnes, and it is not implausible that the allegations could be attributed to him, nor does he argue otherwise. Alternatively, alleging that Burnes *and* the Doe Defendants engaged in the deprivation of Plaintiff's rights results in the same conclusion. *See Garcia v. Cnty. of Riverside*, 2022 WL 3574447, at *4 (C.D. Cal. July 8, 2022) ("If Plaintiffs allege that Defendants worked collectively, or in tandem, which Plaintiffs appear to do in relation to Defendant Sardina and Doe Defendants in paragraphs 49 through 60, that would sufficiently notify Defendants of their potential liability."). Thus, Burnes' argument is without merit. However, even taking all allegations as true—that sixteen CDCR officials were capable of and did collectively capture and share the photographs at issue—Plaintiff still fails to allege she is entitled relief.

*Iqbal*, 556 U.S. at 678, a complaint must contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Relatedly, actions brought under § 1983 must allege how each named defendant personally participated to cause the deprivation of the plaintiff's rights. *Iqbal*, 556 U.S. at 676-77; *see also Foust v. Warden*, 2023 WL 2874420, at *3 (E.D. Cal. Apr. 10, 2023) ("There can be no liability under 42 U.S.C. § 1983 unless there is an adequate link or connection between a defendant's actions and the claimed deprivation.") (citing *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). Thus, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (quoting *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992)).

With respect to her substantive due process claim, Plaintiff alleges that:

> CDCR officials defendants **Burn[e]s** and Does 1 through 15, **took photographs** of Mr. Romero's remains while in uniform, on duty, and in an area where public access was prohibited and only first responders employed by the CDCR were allowed within the Corcoran Prison. After the photos were taken, Defendant Burn[e]s and Does 1 through 15 **possessed and shared them**, and/or permitted other CDCR employees under their supervision to possess and share these photographs, **which in turn allowed these photographs to be leaked publicly**.

(Doc. 1 at ¶ 17 [alterations and emphases added].) In the most vague and general terms, Plaintiff asserts Defendants "shared" photographs they took of Mr. Romero's remains while on duty, which "allowed" them to be published.[5] This is insufficient to plausibly allege Burnes deprived her of a

---

[5] Unlike her parallel action, Plaintiff does not assert § 1983 supervisory liability claims against any Defendants. *See Solares v. Diaz*, 2021 WL 3565308, at *4-5 (E.D. Cal. Aug. 12, 2021), *report and recommendation adopted in part, rejected in part sub nom. Solares v. Allison*, 2022 WL 102216 (E.D. Cal. Jan. 11, 2022). Nonetheless, "'[a] defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Henry*, 678 F.3d at 1003-04 (quoting *Starr*, 652 F.3d at 1207). To state a claim for supervisory liability under § 1983, "'allegations in a complaint … may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.'" *Id.* at 1004 (quoting *Starr*, 652 F.3d at 1216). "These factual allegations 'must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Id.* Thus, for the same reason Plaintiff's "direct" liability claim against Burnes fails, so also does any potential supervisory liability claim based upon the conclusory allegation that Burnes shared "and/or permitted other CDCR

constitutional right under § 1983. Plaintiff cites to no legal authority to support her position otherwise. As previously discussed, dissemination of death images without a legitimate government purpose *may* shock the conscience under *Marsh*, but that is a determination the Court leaves for another day. Nonetheless, Plaintiff is not exempt from the pleading requirements under Rule 8. *See Olson v. Hornbrook Cmty. Servs. Dist.*, 2022 WL 3908135, at *12 (E.D. Cal. Aug. 30, 2022), *report and recommendation adopted as modified*, 2023 WL 2751980 (E.D. Cal. Mar. 31, 2023) ("Rule 8's pleading requirements are not met by a complaint that contains conclusion or surmise and requires a court to decide whether events not pleaded could be imagined in a plaintiff's favor.") (Internal quotation marks omitted).

Merely asserting that Defendants shared photographs taken while on duty without indicating, for example, with whom the photographs were shared or for what purpose, Plaintiff fails to adequately link Burnes' conduct with her claimed deprivation to apprise him of his wrongdoing. *Foust*, 2023 WL 2874420, at *3; *see also Jones v. Keitz*, 2017 WL 3394121, at *3 (E.D. Cal. Aug. 8, 2017), *aff'd*, 738 F. App'x 503 (9th Cir. 2018) ("[I]t is inappropriate to assume that the plaintiff can prove facts that it has not alleged or that the defendants have violated the…laws in ways that have not been alleged[.]") (alterations in original) (internal quotation marks omitted); *Olson*, 2022 WL 3908135, at *12, 14 (holding that a plaintiff "must allege with at least some degree of particularity overt acts which defendants engaged in that support Plaintiff's claim" and finding the complaint failed to comply with Rule 8 because it was "bereft of specific factual allegations explaining who did what, when, how, and why").

Elsewhere, Plaintiff alleges Defendants took and shared the photographs "without any legitimate purpose." (Doc. 1 at ¶ 25.) Likewise, this unsupported legal conclusion is insufficient to withstand a motion to dismiss. *Litmon*, 768 F.3d at 1241. "Substantive due process protects against 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Lutge v. Harrington*, 2022 WL 18401350, at *2 (N.D. Cal. Dec. 20, 2022) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). However, once again, Plaintiff may not rely upon

---

employees under [his] supervision to possess and share" the photographs. (Doc. 1 at ¶ 26.)

legal conclusions, unsupported by facts, to state a plausible claim for relief. *See, e.g., id.* at *2-3 (dismissing substantive due process claim where plaintiff's conclusory and speculative allegations did not constitute plausible allegations that the defendants had no legitimate reason for their actions); *Shanks v. Dressel*, 540 F.3d 1082, 1089 (9th Cir. 2008) (holding plaintiff failed to state a substantive due process claim and rejected "as an erroneous legal conclusion" that defendants acted in a constitutionally arbitrary manner—that is, "an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective") (internal quotation marks omitted).

In *Houston v. County of Maricopa*, 2023 WL 2877617 (D. Ariz. Mar. 15, 2023), the plaintiff argued he pleaded facts that the sheriff defendant had no "legitimate nonpunitive purpose" for publishing his mugshot on the sheriff's office website. *Id.* at *10. Finding the cited allegations to be legal conclusions as opposed to facts, the court did not accept them as true. *Id*. Moreover, even assuming the truth of the allegations, the court held the plaintiff failed to state a claim, explaining its lack of duty to accept the assertion as true because the complaint alleged other, commercial purposes for the publication. *Id*.

Based on the allegations in the Complaint, it is unreasonable for the Court to infer that Burnes deprived Plaintiff of her constitutional right. As Burnes accurately contends, Plaintiff alleges that Defendants took the photographs while on duty and in uniform, and that CDCR is the copyright holder of the photographs, all of which indicates they were taken for the legitimate government purpose of documenting the crime scene. (Doc. 11-1 at 6 [citing Doc. 1 at ¶¶ 10, 17]; Doc. 14 at 3.) Plaintiff herself alleges the photographs were "crime scene photos taken prior to Romero being removed from the cell." (Doc. 1 at ¶ 16.) Finally, it is unclear whether Burnes was rightfully on the premises as a first responder when he took the photographs, as Plaintiff only alleges "Corcoran prison officials" discovered the body. (*See* Doc. 1 at ¶ 1 ["In the early morning hours of March 9, 2019, Corcoran prison officials finally conducted a safety check and looked on the other side of the bedsheet. At that point, Mr. Romero was found decapitated…"].)

Plaintiff's only potential argument in opposition is that CDCR's acknowledgement that it is the copyright holder of the images is "an admission that the photos were taken by Corcoran personnel and potential evidence of Burn[e]s' involvement." (*See* Doc. 13 at 5.) However, this provides no

9

explanation for the lack of factual allegations to support a reasonable inference that the photographs were taken or shared for an illegitimate government purpose. It is, at most, speculative given that the Complaint does not allege that Burnes was unauthorized to take the photographs or that the photographs were not shared with authorized personnel and/or within the scope of his employment. Thus, Plaintiff's speculative and conclusory allegation that the photographs were shared without a legitimate government purpose—without factual support and with allegations indicating otherwise—will not be accepted. *Houston*, 2023 WL 2877617, at \*10; *see also Shelley v. Cnty. of San Joaquin*, 996 F. Supp. 2d 921, 924-25 (E.D. Cal. 2014) ("A court is not required to accept as true a 'legal conclusion couched as a factual allegation.'") (quoting *Iqbal,* 556 U.S. at 678). With no intent to minimize the reprehensible and horrific nature of Mr. Romero's death or Plaintiff's continued suffering, Plaintiff fails to sufficiently allege Burnes deprived her of a constitutional right, as required to state a § 1983 claim. *Franklin*, 201 F.3d at 1100.[6]

### B. State law claims

Burnes contends the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims for breach of mandatory duty, negligence, and invasion of privacy. (Doc. 11-1 at 13.)

Federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c)(3); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (9th Cir. 2012) ("Where a district court dismisses every claim over which it had original jurisdiction, it retains pure discretion in deciding whether to exercise supplemental jurisdiction over the remaining claims.") (alterations and internal quotation marks omitted). Because the Court will grant leave to amend, it declines to decide at this time whether it will exercise supplemental

---

[6] Because Plaintiff fails to state a claim under § 1983, the Court need not reach the issue of qualified immunity raised by Burnes. *Pena*, 976 F.2d at 471-72; *see also Lewis*, 523 U.S. at 842 n.5 ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.").

jurisdiction over the pendent state law claims.[7]

### C.     Leave to amend

Courts have discretion to grant a motion under Rule 12(c) with leave to amend. *Chandavong v. Fresno Deputy Sheriff's Ass'n*, 599 F. Supp. 3d 1017, 1020 (E.D. Cal. 2022). Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations and internal quotation marks omitted). When dismissing a complaint, "a district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Plaintiff requests leave to amend should the Court grant the motion to dismiss. (Doc. 13 at 13.) The Court has insufficient information to conclude that amendment is futile at this juncture. Amendment would allow Plaintiff to cure the pleading deficiencies identified herein, it does not appear amendment would cause undue delay at this juncture, there is no indication Plaintiff acted in bad faith, and Burnes does not challenge the request. Accordingly, Plaintiff will be given an opportunity to file an amended complaint to the extent she, in good faith, can do so. Additionally, leave to amend is limited to **only** Plaintiff's substantive due process claim under 42 U.S.C. § 1983. As set forth above, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are dismissed without leave to amend.

### IV.     Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1. Defendant Burnes' motion to dismiss (Doc. 11) is **GRANTED**.

2. Plaintiff's substantive due process claim under 42 U.S.C. § 1983 is **DISMISSED** with

---

[7] Likewise, until the plaintiff states a federal law claim, the Court declines to consider the sufficient of the complaint as to the state-law claims

leave to amend.

3. Plaintiff **SHALL** file any Second Amended Complaint within **30 days** of the date of service of this order. **If Plaintiff fails to file an amended complaint, the action may be dismissed without prejudice for failure to prosecute and failure to obey the Court's order**.

IT IS SO ORDERED.

Dated:  **May 19, 2023**

_____
UNITED STATES DISTRICT JUDGE