# Exhibit A

Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>Defendants. | Case No. 1:20-cv-00323-NONE-BAM<br><br>**AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983 and SUPPLEMENTAL STATE CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.  On or about March 7, 2019, CDCR inmate Luis Romero was transferred from Mule Creek State Prison to California State Prison, Corcoran. Corcoran prison officials chose to bypass the standardized administrative committee process that is required before forcing one inmate to share the cell of another, and rushed to assign Mr. Romero to the same cell as convicted murderer, inmate Jaime Osuna. Mr. Osuna had not had a cellmate at Corcoran prior to this assignment. Corcoran officials had already been put on notice that Mr. Osuna was uniquely unfit to be housed with a cellmate, as he had engaged in multiple acts of violence against fellow inmates, had

1

1 been charged with attempted murder as a result of one such incident, and had been recommended for placement in a psychiatric ward rather than a prison. On March 8, 2019, despite having received these warnings about Mr. Osuna, and despite taking the unusual step of expediting Mr. Romero's placement, Corcoran prison officials chose to bypass the standardized process and then failed to conduct regularly scheduled nightly safety checks of Mr. Romero's new cell. Even after a bedsheet was visibly draped along the bars inside this cell, preventing anyone outside from peering in, no Corcoran prison official bothered to conduct a routine safety check during the evening of March 8, 2019. In the early morning hours of March 9, 2019, Corcoran prison officials finally conducted a safety check and looked on the other side of the bedsheet. At that point, Mr. Romero was found decapitated, and Mr. Osuna was found wearing a necklace made of Mr. Romero's body parts. Mr. Romero's body parts were then photographed by prison officials, who shared and distributed the gruesome photographs, including to non-prison officials. By 2021, gruesome photographs of Mr. Romero's remains had been posted online and on social media. The publication of Mr. Romero's remains occurred after the passage of California Penal Code § 647.9, which the state legislature enacted after gruesome photos of Kobe Bryant's body were leaked by first responders following his fatal helicopter crash.

**JURISDICTION AND VENUE**

2. This case arises under 42 U.S.C. § 1983, the Fourteenth Amendments of the United States Constitution, and various state-law governmental tort statutes. Jurisdiction in this Honorable Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff's state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in Eastern District of California pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred in Kings County, California. This is an action for damages and further relief as may be consistent with law pursuant to 42 U.S.C. § 1983, to redress violations of the decedent's rights protected by the United States Constitution, by persons acting under color of law.

**PARTIES**

4. Plaintiff Dora Solares is the mother of Luis Romero, deceased ("the decedent"). She is the mother of Mr. Romero.

5. Defendant Joseph Burnes ("Burnes") is a California Department of Corrections & Rehabilitation (CDCR) Sergeant who was working at the California State Prison, Corcoran at the time of the incident. He is sued in his individual capacity. Defendant Pena ("Pena") is a California Department of Corrections & Rehabilitation (CDCR) officer who was working at the California State Prison, Corcoran at the time of the incident. He is sued in his individual capacity. Defendant Ortega ("Ortega") is a California Department of Corrections & Rehabilitation (CDCR) officer who was working at the California State Prison, Corcoran at the time of the incident. He is sued in his individual capacity.[1] Defendants Burnes, Pena and Ortega are also referred to collectively as "Individual Defendants."

6. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 3 through 15, inclusive, and therefore sues these defendants by such fictitious names, in their individual capacities. Plaintiff is informed, believes and alleges

---

[1] To comply with the Court's Order re: amending the Complaint (Dkt. No. 19), Plaintiff's counsel conducted investigation to obtain additional facts, which are pleaded herein. In that process, the spelling of defendant Burnes was confirmed to not have an "e" and Plaintiff accordingly corrects the spelling. In addition, two additional officers (Pena and Ortega) were identified who should be added as defendants. Plaintiff was ignorant of these officers prior to this investigation. Therefore, Plaintiff amends to add Pena and Ortega as previous Doe defendants, given that Plaintiff has been given leave to amend, and given the liberal standard to amend and add Doe defendants under Cal. Civ. Code. Proc. § 474, as well as Ninth Circuit precedent that holds California law for amending to sue persons originally sued only as Doe defendants applies in § 1983 cases prosecuted in federal court. *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988), vacated and remanded on oth. grds., 490 U.S. 1087 (1989), on remand opn. reinstated, 886 F.2d 235 (9th Cir. 1989) ("California pleading practice allowing new defendants to be named after the original complaint is filed without violating the statute of limitations is such a substantive state policy that is applicable in the federal courts.")

that each of the fictitiously named defendants is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to and described, and thereby illegally caused the injuries, damages, and violations and/or deprivations of rights hereinafter alleged. Plaintiff will seek leave of Court to amend this Complaint and state the true names and/or capacities of said fictitiously named defendants when the same have been ascertained.

7. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Burnes, Pena, Ortega, and Does 3 through 15, inclusive, worked and resided in Kings County, State of California. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Burnes, Pena, Ortega, and Does 3 through 15, inclusive, were employees, agents and/or servants of the CDCR, employed at the California State Prison, Corcoran, and acted within the course and scope of said employment, agency and/or service, and acted under color of state law.

8. The reason why Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does, inclusive, is that same have been unascertainable as of the date of filing of this complaint, as many of these Does may be CDCR officers and/or civilian employee agents, or employees, agents and representatives of the CDCR, and as such many of their records are protected by state statute and can only reasonably be ascertained through the discovery process. The individual defendants were at all times mentioned herein duly appointed, qualified and acting officers of the CDCR, acting within the course and scope of such employment with the CDCR, and acted under color of the law of the State of California.

**PROCEDURAL HISTORY**

9. Pursuant to Government Code § 910, Plaintiff presented a timely appropriate claim for damages and a $25 check for the required tort claim fee, on or around September 9, 2021, less than six months after the incident of the publication of the photographs online. On September 12, 2019, the State of California cashed the $25

4

check, representing the government tort claim fee. This action is timely.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. On March 2, 2020, Plaintiff Solares filed a federal civil rights complaint on behalf of herself and as successor-in-interest for her deceased son, Luis Romero. (*Solares v. Diaz, et al.*, Eastern District Case No. 1:20-cv-00323-NONE-BAM) The complaint stemmed from the gruesome murder of Mr. Romero at the Corcoran Prison. However, at the time of the filing in March 2020, photographs of Mr. Romero's remains had not become published and/or Ms. Solares had not become aware that such photos had been publicly posted, particularly on the website *Sword and Scale* (www.swordandscale.com) and the Facebook and Instagram accounts of *Sword and Scale*. After learning of the online publication of gruesome photos of her son's physical remains, Plaintiff's counsel Justin Sterling sent a letter on February 10, 2021, to counsel for defendants, Jeremy Duggan, Deputy Attorney General, demanding that his client take action to request to removal of web content that infringes on copyright per the Digital Millennium Copyright Act ("DMCA"). On March 9, 2021, Ms. Solares filed a government tort claim pursuant to Government Code § 910, and although the state of California did not formally deny the claim, on March 18, 2021, it did cash the § 910 claim check for $25.

## FACTS

14. On or about March 7, 2019, CDCR inmate Luis Romero (Inmate # H56733) was transferred from Mule Creek State Prison to California State Prison, Corcoran (hereinafter, "Corcoran"). Corcoran prison officials, including defendant CDCR Sergeant Joseph Burnes, and Does, were required to go through a standardized administrative committee process of matching two inmates in one cell, a process that is described in Paragraph 15. Defendant Burnes and Does chose to not follow this standardized administrative committee process, and rushed to place Mr. Romero with convicted murderer and single-celled inmate Jaime Osuna, despite knowing that Osuna was a danger to anyone around him.

5

15. On the evening of March 8, 2019, however, defendants Burnes and Does did not enforce the normal rules, despite being put on notice of the danger that Osuna posed to other inmates in general, and despite being aware of the fact that Osuna had not been permitted to share a cell with anyone before. Moreover, Burnes and Doe defendants, who were the correctional officers on shift over the night, failed to make regular checks despite a bedsheet draped inside Romero and Osuna's cell that evening, which visibly prevented proper monitoring and would have required the inmates to take it down, under Corcoran's own rules.

16. Mr. Romero's remains were then mutilated by Osuna. Romero's right ear was removed by Jamie Osuna. Romero's eyes were forcibly detached by Osuna, and Romero's left eye had been stabbed. The underlying rib segment was removed and Romero's left lung was removed in two parts. Heinously, Osuna decapitated Mr. Romero. Crime scene photos taken prior to Romero being removed from the cell showed Romero's body had been posed in a way that, if possible, made the full decapitation even more shocking. Jamie Osuna had made a necklace for himself using Romero's body parts and organs. Osuna was found with the murder weapon believed to have been manufactured from a razor with a string around it.

17. Defendant Officer Pena discovered Romero's remains as a first responder. Before Jamie Osuna was taken out of the cell block and moved to a crisis bed, defendant Officer Pena said, "Hey look he's wearing body parts on his necklace," and defendant Pena took photographs of Romero's remains with his personal phone, not for purposes related to official law enforcement but rather personal, morbid fascination and tabloid sensibilities. The Investigative Services Unit (ISU) is the CDCR unit tasked with preserving crime scenes and investigating crimes that occur within CDCR walls. Defendant Burnes, Ortega and Does 3 through 15 do and did not belong to the ISU in March of 2019, are not associated with ISU, and do not conduct any work or tasks on behalf of the ISU. After Pena triggered his CDCR issued alarm and word of Romero's grisly murder spread, non-ISU officers including Burnes and Does

6

3-12, arrived at Osuna's cell and took pictures of the crime scene with their phones. Upon information and belief defendants Burnes and Does 3 through 12 were not rightfully on the premises of the murder scene in Romero's cell as first responders. Plaintiff is informed that Defendant Burnes and another CDCR officer were seen immediately after the murder discovery talking to another inmate on the cell block about the gruesome discovery and showing this inmate photographs of the crime scene from their respective cell phones. Plaintiff is informed that Defendant Burnes and this other CDCR officer were heard discussing with this inmate the fact that "they" (apparently referring to ISU) would never find one of Mr. Romero's fingers. This exchange took place prior to ISU arriving on scene. Plaintiff is informed that one Doe officer spoke about how Osuna had stabbed Mr. Romero through his eye and into his brain and had cut out Mr. Romero's tongue and one of his lungs while reaching for his cell phone in an attempt to photograph the grisly scene. Plaintiff is also informed that a correctional officer, Defendant Ortega, later acquired the crime scene photographs taken by Burnes and Doe officer, presumably through the airdrop function, and showed them to an inmate who was on the same cell block as Osuna and Romero.

18. The horror or Mr. Romero's death was thus compounded by the fact that CDCR officials defendants Burnes, Pena, and Does 3 through 15, took photographs of Mr. Romero's remains with personal cell phones despite being in uniform, on duty, and in an area where public access was prohibited and only first responders employed by the CDCR were allowed within the Corcoran Prison. Defendants Burnes, Pena, and Does 3 through 15 had no conceivable investigative purpose to take photographs of the murder scene with their personal cell phones and were not authorized by the CDCR to take photographs of the murder scene with their personal cell phones. In addition, defendants Burnes, Pena and Ortega and Does 3 through 15 later accessed photographs taken for the investigation into Romero's murder, and without a conceivable government purpose, transferred grisly investigation photographs of the murder scene onto their personal cell phones. Defendant Burnes, Pena and Ortega and

7

1 Does 3 through 15 then showed these grisly murder scene photographs (both the ones
2 improperly taken on personal cell phones and ones improperly transferred from
3 investigation files to personal cell phones) to colleagues and CDCR inmates who had
4 nothing to do with the investigation into Romero's murder. Instead, these photos were
5 a topic of conversation of morbid gossip, which were then ultimately leaked to online
6 media platforms.

19. After the photos were taken and obtained, Defendant Burnes, Pena, Ortega and Does 3 through 15 possessed and transmitted them via text and/or airdrop to the personal cell phones of CDCR employees, including defendant Ortega, and to non-CDCR employees, neither of which had any had no role in the investigation. The sharing of these photographs with non-authorized CDCR personnel and civilians, for purposes that did not relate to any investigation or any other legitimate government purpose (but instead motivated by morbid gossip, ill-will and malice), was not in the scope of employment of defendants Burnes and Does 3 through 15. Indeed, defendants Burnes, Pena, Ortega and Does 3 through 15 took advantage of the physical and digital access provided by their employment (to improperly take and obtain murder scene photos) and then violated the trust of their positions of employment, despite the taking and sharing of these photos not being done in the scope of their employment. A plain review of the crimes scene photos that were disseminated into the public domain depict quite clearly that some of these pictures were neither official nor serve any law enforcement or investigative purpose. Some of these photographs are cell phone pictures void of any time stamp or official markings or insignia, typical of investigative photographing or documentation. One photograph depicts Mr. Osuna covered in blood wearing a necklace made up of Mr. Romero's organs and body parts. Another photograph depicts Mr. Romero's head placed onto a nearby table. Mr. Romero's head is missing an eye. Another photograph depicts Mr. Romero's decapitated body positioned upright on the cell floor with the phrase, "hahahahaha" written in blood on the cell wall above. None of these photographs are

ISU photographs, which typically have investigative stamps and insignia on them. Plaintiff understands these photographs to be taken by Defendant Burnes, Pena, Ortega and Does 3 to 15 These are the same cell photographs shown to other inmates and later found on websites such as Sword and Scale and Documenting Reality, with links to them found on the social media platforms Facebook and Instagram.

20. As a result of the taking and sharing grisly photographs of Mr. Romero's remains for no legitimate government purpose, many of these shared photos have since been publicly posted, particularly on the website *Sword and Scale* (www.swordandscale.com) and the Facebook and Instagram accounts of *Sword and Scale*. As a result, Plaintiff had the horrific experience of witnessing the photographs and in knowing that these photographs of her mutilated son had been seen by the general public, a severe disrespect to his mortal remains.

**DAMAGES**

21. As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiff suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiff to sustain general damages in a sum to be determined at trial.

22. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered the denial of her fundamental constitutional rights guaranteed by the Fourteenth Amendments of the United States Constitution, which have caused Plaintiff to sustain damages in a sum to be determined at trial. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff incurred and/or will continue to incur medical

expenses, including psychological treatment. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered past and future losses of income that have caused her to sustain economic damages in a sum to be determined at trial.

23. Defendant Burnes and individual Doe defendants acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive the decedent of his constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial in this matter. Plaintiff also seeks attorneys' fees.

## FIRST CLAIM FOR RELIEF

### Violation of Civil Rights – 42 U.S.C. § 1983

### 14th Amendment

### (Against Individual Defendants and Does 3 through 15)

24. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

25. By taking and sharing photos of Luis Romero's remains without any legitimate governmental purpose, defendants Burnes, Pena, Ortega and other Corcoran prison guards, Does 3 through 15, deprived Plaintiff of her substantive due process right to control the physical remains, memory, and death images of her deceased child. *See Marsh v. Cnty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012); *Vanessa Bryant v. County of Los Angeles*, 2022 U.S. Dist. LEXIS 20538, 2022 WL 2284542 (C.D. Cal. Jan. 5, 2022) (denying defendants' motion for summary judgment for reasons stated in plaintiff's opposition). In taking these actions, defendants Burnes, Pena, Ortega, and Does 3 through 15 acted in a manner that shocks the conscience and offends the community's sense of fair play and decency.

26. Defendants Burnes, Pena, Ortega and Does 3 through 15 were acting

under color of state law at the time of their actions. Defendants Burnes, Pena, Ortega and Does 3 through 15 took photos of Mr. Romero's remains while in uniform, on duty, and in an area where public access was prohibited and only first responders employed by the CDCR were allowed within the Corcoran Prison. After the photos were taken, Defendant Burnes, Pena, Ortega and Does 3 through 15 possessed and shared them, and/or permitted other CDCR employees under their supervision to possess and share them, while in uniform and/or on duty, or otherwise in connection with or by virtue of their employment with the CDCR.

27. As a direct and proximate result of Defendants' conduct, in photographing and sharing photographs of Mr. Romero's mutilated body, defendants Burnes, Pena, Ortega and Does 3 caused harm to Plaintiff and Plaintiff was damaged as alleged herein above.

28. The aforementioned misconduct of the named defendants was of such an egregious nature that it entitles the plaintiffs to an award of exemplary and punitive damages according to proof and as permitted by law.

**SECOND CLAIM FOR RELIEF**

**Breach of a Mandatory Duty**

**(Against Individual Defendants and Does 3 through 15)**

29. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

30. Plaintiff alleges on information and belief that Defendants Burnes, Pena, Ortega and Does 3 through 15 violated mandatory duties including, but not limited to, those set forth in California Penal Code Section 647.9 and California Code of Civil Procedure 129.

31. Plaintiff alleges that had Defendants Burnes, Pena, Ortega and Does 3-15 not breached their mandatory duties, the gruesome photographs of Mr. Romero's mutilated body would not have been publicly leaked and made available to further

traumatize Plaintiff.  Therefore, as a proximate result of the individual defendants and Does 3-15 failure to perform their mandatory duties, photographs of Mr. Romero's remains were made publicly available. Defendants Burnes, Pena, Ortega and Does 3 through 15, as peace officers at the scene of a crime, were first responders and should not have been made or disseminated by any of them.

32. As a direct result of the acts and omission of the Defendants Burnes, Pena, Ortega and Does 3-15, Plaintiff sustained general and special damages in the amounts within the jurisdictional limits of the Court, according to proof at trial.

## THIRD CLAIM FOR RELIEF

### Negligence

### (Against Individual Defendants and Does 3 through 15)

33. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

34. Pursuant to California Government Code section 820(a), public employees are liable for injuries caused by their acts or omissions to the same extent as a private person.

35. Defendants Burnes and Doe defendants owed a duty to Plaintiff to use ordinary care in their treatment of Mr. Romero's physical remains, including an obligation to refrain from taking and/or sharing inmates of them for persona, non-law-enforcement purposes. Cal. Civ. Code § 1714. Defendants Burnes and Doe defendants additionally owed a duty of care to Plaintiff to use ordinary care in preventing dissemination of any images of the remains of Mr. Romero once the images were created and/or were within their possession.

36. Defendants Burnes and Doe defendants breached their duty to Plaintiff by sharing photos of Mr. Romero's mutilated body and physical remains for personal non-law-enforcement purposes, including by electronic transmission and with members of the public. Defendants Burnes and Doe defendants foresaw or should have foreseen

that their conduct described above would injure Plaintiff.

38. As a direct and proximate result of the conduct of Burnes and Doe defendants 1 through 15, Plaintiff has suffered (and continues to suffer) sevre emotional distress in an amount to be proven at trial.

38. The conduct of Burnes and Doe defendants 1 through 15 was willful, wanton, malicious within the meaning of California Civil Code section 3294, entitling Plaintiff to exemplary and punitive damages as to Defendants in an amount appropriate to punish them and to make an example of them to the community.

## FOURTH CLAIM FOR RELIEF

### Invasion of Privacy

**(Against Individual Defendants and Does 3 through 15)**

39. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

40. Plaintiff has a privacy interest in the physical remains of her son, Luis Romero.

41. Upon information and belief, Defendants Burnes, Pena, Ortega and Does 3 through 15 disclosed photos of Mr. Romero's remains to multiple members of the public, both in person and electronically.

42. Sharing photos of accident victims' physical remains without any legitimate governmental purpose is offensive and objectionable to a reasonable person of ordinary sensibilities.

43. At the time that Defendants Burnes, Pena, Ortega and Does 3 through 15 shared the photographs of Mr. Romero's remains, no photos of the remains had otherwise been made public. Sharing the graphic images within the photographs served no legitimate public purpose.

44. As a direct and proximate result of Defendants Burnes, Pena, Ortega and Does 3 through 15 disclosing photographs of Mr. Romero's remains, Plaintiff has

13

suffered ( and continues to suffer) severe emotional distress in an amount ot be proven at trial.

45. The conduct of the individual defendants and Doe defendants 3 through 15 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Defendants Burnes, Pena, Ortega, and Does 3 through 15 who took and shared the photos of Mr. Romero's remains had access to those images by virtue of their employment with the CDCR. These acts by Defendants Burnes, Pena, Ortega, and Does 3 through 15 were committed within the course and scope of their employment, and punitive damages should be imposed as an example to the community that such behavior from peace officers is beyond the pale.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows against defendants:

1. General and Special damages, including both survival and wrongful death damages, in an amount according to proof;
2. Exemplary and punitive damages against each individual and Doe defendant, in amounts according to proof;
4. Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and
5. Such other relief as may be warranted or as is just and proper.

**LAW OFFICES OF JUSTIN STERLING**

DATED: June 16, 2023

By: */s/ Justin Sterling*
Justin Sterling
Attorney for Plaintiff,
DORA SOLARES

14

DATED: June 16, 2023                     **LAW OFFICES OF ERIN DARLING**

                                         By:  */s/ Erin Darling*
                                              Erin Darling
                                              Attorney for Plaintiff,
                                              DORA SOLARES

## JURY DEMAND

Plaintiff Dora Solares hereby demands trial by jury on all issues so triable.

DATED: June 16, 2023                     **LAW OFFICES OF JUSTIN STERLING**

                                         By:  */s/ Justin Sterling*
                                              Justin Sterling
                                              Attorney for Plaintiff,
                                              DORA SOLARES

DATED: June 16, 2023                     **LAW OFFICES OF ERIN DARLING**

                                         By:  */s/ Erin Darling*
                                              Erin Darling
                                              Attorney for Plaintiff,
                                              DORA SOLARES