1  Justin E. Sterling, State Bar No. 249491
2  LAW OFFICES OF JUSTIN STERLING
   Justin@SterlingDefense.com
3  15760 Ventura Blvd. Suite 700
   Encino, CA 91436
4  Tel. (818) 995-9452/Fax. (818) 824-3533
5
   Erin Darling, State Bar No. 259724
6  LAW OFFICES OF ERIN DARLING
7  Erin@ErinDarlingLaw.com
   3435 Wilshire Blvd. Suite 2910
8  Los Angeles, CA 90010
9  Tel. (323) 736-2230
10 Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual, | Case No. 1:21-cv-01349-JLT-BAM |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT BURNES'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities | **Date:** August 9, 2023<br>**Time:** 9:00 a.m.<br>**Judge:** Hon. Jennifer L. Thurston |
| Defendants. | |

## I. PLAINTIFF'S AMENDED COMPLAINT ADDRESSES THE COURT'S ORDER AND PROPERLY STATES A DUE PROCESS CLAIM UNDER THE FOURTEENTH AMENDMENT

Defendant's Motion to Dismiss focuses on the lack of a direct publication of death images by defendant Burnes. This argument ignores the Court's May 22, 2023, order, which stated: "Irrespective of the form or subject of delivery, an essential consideration in *Marsh* was whether the defendant acted with a legitimate government interest. *See Marsh*, 680F. 3d at 1155. Moreover, while it is relatively clear that whether the photographs were published is of no import as the photographs were not ultimately published in *Marsh*[.]" (Dkt. 19, Order on Motion to Dismiss, at 5)

Plaintiff's amended complaint responds to the Court's Order and thoroughly alleges that defendant Burnes and Does improperly took and shared crime scene photographs, for no legitimate government purpose:

> The Investigative Services Unit (ISU) is the CDCR unit tasked with preserving crime scenes and investigating crimes that occur within CDCR walls. Defendant Burnes, Ortega and Does 3 through 15 do and did not belong to the ISU in March of 2019, are not associated with ISU, and do not conduct any work or tasks on behalf of the ISU. … non-ISU officers including Burnes and Does 3-12, arrived at Osuna's cell and took pictures of the crime scene with their phones. Upon information and belief defendants Burnes and Does 3 through 12 were not rightfully on the premises of the murder scene in Romero's cell as first responders. Plaintiff is informed that Defendant Burnes and another CDCR officer were seen immediately after the murder discovery talking to another inmate on the cell block about the gruesome discovery and showing this inmate photographs of the crime scene from their respective cell phones.

(Plaintiff's First Amended Complaint (hereafter referred to as "FAC") Para. 17)

Additionally:

> CDCR officials defendants Burnes, Pena, and Does 3 through 15, took photographs of Mr. Romero's remains with personal cell phones despite being in uniform, on duty, and in an area where public access was prohibited and only first responders employed by the CDCR were allowed within the Corcoran Prison. Defendants Burnes, Pena, and Does 3 through 15 had no conceivable investigative purpose to

take photographs of the murder scene with their personal cell phones and were not authorized by the CDCR to take photographs of the murder scene with their personal cell phones. In addition, defendants Burnes, Pena and Ortega and Does 3 through 15 later accessed photographs taken for the investigation into Romero's murder, and without a conceivable government purpose, transferred grisly investigation photographs of the murder scene onto their personal cell phones.

(FAC, Para. 18)

Plaintiff's amended complaint also alleges Burnes and Doe defendants showed and shared these crime scene photographs for no legitimate government purpose:

[Burnes and Doe defendants] then showed these grisly murder scene photographs (both the ones improperly taken on personal cell phones and ones improperly transferred from investigation files to personal cell phones) to colleagues and CDCR inmates who had nothing to do with the investigation into Romero's murder

[…]

[A]fter the photos were taken and obtained, Defendant Burnes, Pena, Ortega and Does 3 through 15 possessed and transmitted them via text and/or airdrop to the personal cell phones of CDCR employees, including defendant Ortega, and to non-CDCR employees, neither of which had any had no role in the investigation. The sharing of these photographs with non-authorized CDCR personnel and civilians, for purposes that did not relate to any investigation or any other legitimate government purpose (but instead motivated by morbid gossip, ill-will and malice), was not in the scope of employment of defendants Burnes and Does 3 through 15

[…]

[Burnes and Doe defendants] took advantage of the physical and digital access provided by their employment (to improperly take and obtain murder scene photos) and then violated the trust of their positions of employment, despite the taking and sharing of these photos not being done in the scope of their employment.

(FAC, Para. 19)

Plaintiff's amended complaint alleges facts that defendants engaged in actions that would "shock the conscience" of the jury:

Some of these photographs are cell phone pictures void of any time stamp or official markings or insignia, typical of investigative photographing or documentation. One photograph depicts Mr. Osuna covered in blood wearing a

2

necklace made up of Mr. Romero's organs and body parts. Another photograph depicts Mr. Romero's head placed onto a nearby table. Mr. Romero's head is missing an eye. Another photograph depicts Mr. Romero's decapitated body positioned upright on the cell floor with the phrase, "hahahahaha" written in blood on the cell wall above.

(FAC, Para. 19)

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (emphasis added). Federal rules simply require notice pleading. Fed. R. Civ. P. 8(a)(2).

Defendant's motion to dismiss should be denied because the Complaint contains allegations "taken as true and construed in the light most favorable to plaintiff[]," *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999), "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## III. PLAINTIFF STATES A VALID CLAIM FOR A FOURTEENTH AMENDMENT VIOLATION

"Few things are more personal than the graphic details of a close family member's tragic death. Images of the body usually reveal a great deal about the manner of death and

3

the decedent's suffering during his final moments – all matters of private grief not generally shared with the world at large." *Marsh v. County of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012). Given the "long-standing tradition of respecting family members' privacy in death images," the constitutional right to privacy "encompasses the power to control images of a dead family member." *Id.* at 1153. The Ninth Circuit in *Marsh* held that *sharing* death images without any legitimate governmental purposes violates this right and shocks the conscience when it deprives the decedent's family the right to control the tragic images of family members. *See id.* at 1155. The privacy right in question centers on the right to be protected from government officials gratuitously revealing "the graphic details of a close family member's tragic death." *Id.* at 1154.

**A.  *Marsh* and *Vanessa Bryant* Make Clear Liability Under Due Process Fourteenth Amendment Can Be Established Without Direct Publication**

Close family of a decedent have a Fourteenth Amendment Due Process right to be protected against revealing graphic images of their loved one's death, and a government official can be liable even if not involved in the publication of such images.

Defendant argues *Marsh* only applies to the publication of photographs, citing a footnote to that effect. This is wrong. *Marsh* did not involve "publication" of death images in the press or on the Internet. As described below, the Ninth Circuit standard -- and applied at the District Court level in the Kobe Bryant death image case brought by his widow -- does not require actual or attempted publication.

In *Marsh*, the Ninth Circuit held that the district attorney's actions gave rise to the plaintiff's *fear* that she might one day "stumble upon photographs of her dead son," given the "viral nature of the Internet." *Marsh*, 680 F.3d at 1155. Defendant's Motion to Dismiss attempts to create a false dichotomy between sharing (purportedly ok by Defendant) and publishing (admittedly bad, but not alleged here, as argued by Defendant). This misapprehends *Marsh*: the family of a decedent has the right to control the death images of a loved one. *Marsh*, 680 F.3d at 1155-56. This right protects the family members against

4

government officials revealing "the graphic details of a close family member's tragic death." *Id.* at 1154. California law creates "the right not to have government officials engage in unwarranted reproduction of autopsy photographs or other death images of deceased relatives," (*id.* at 1157) and creates "a liberty interest in a family member's death images." *Id.* at 1156. In *Marsh*, the allegations that retired prosecutor Coulter improperly *copied* death images before he retired (*id.* at 1158), *distributed* photographs of decedent's remains (*id.* at 1157) and *possessed* photographs after he retired were all actionable allegations of a constitutional violation. *Id.* at 1158. Thus, *Marsh* recognizes "the federal privacy interest in death images," (*id.* at 1159), not just protection of coroner photographs, and not just against publication. Liability does not stem solely from the publication, but plaintiff's fear that she *might* one day "stumble upon photographs of her dead son." *Id.* at 1155.

In *Vanessa Bryant v. County of Los Angeles*, the County made the same argument that Defendant does here, that *Marsh* involved publication of death images in the press and internet. The District Court in *Bryant* denied defendants' summary judgment motion. *Bryant v. County of Los Angeles*, 20-cv-9582-JFW, 2022 U.S. Dist. LEXIS 20538, 2022 WL 2284542, at * 4 (C.D. Cal. Jan. 5, 2022). Plaintiff in that case, Kobe Bryant's widow, pointed out in her summary judgment opposition that *Marsh* stands for the proposition that "the mishandling of the death images shocked the conscience, and the district attorney's actions gave rise to the plaintiff's *fear* that she *might* one day 'stumble upon photographs of her dead son,' given the 'viral nature of the internet.'" *Bryant v. County of Los Angeles*, 20-cv-9582-JFW, Dkt. 190 (Plaintiff's Brief) (citing *Marsh*, 680 F.3d at 1155). The focus was not on the actual publication but efforts that a "reasonable jury also could conclude that the image Mrs. Bryant confronted on Twitter depicted her husband and that it originated from County personnel." *Id.* Moreover, it was the fear of publication: "a jury could fairly conclude that…[Vanessa Bryant] has a reasonable fear that the entire stash could go viral on the internet at any moment." *Id.*

In this case, Defendant relies on the footnote did not require actual publication but an "attempt to publish" death images, and that such an attempt regarding gruesome images was sufficiently shocking to violate Marsh's substantive due process. *Marsh*, 680 F.3d at 1155 n.3. Here, a reasonable jury could conclude defendant Burnes did publish or attempt to publish the horrific images given that they were shown on the website. As the facts alleged in Plaintiff's FAC make plain, the gruesome details a jury could also conclude that Defendnat's conduct was sufficiently shocking to violate Plaintiff's substantive due process rights: "None of these photographs are ISU photographs, which typically have investigative stamps and insignia on them. Plaintiff understands these photographs to be taken by Defendant Burnes, Pena, Ortega and Does 3 to 15 These are the same cell photographs shown to other inmates and later found on websites such as Sword and Scale and Documenting Reality." (FAC, Para. 19) If anything, the conduct at issue here is more shocking than in *Marsh*, where district attorney Coulter kept a death photo and later sent a copy to two reporters, but the photo never appeared on the Internet. Appellees' Brief, *Marsh*, No.11-55395, 2011 WL 3436959, at *1 (9th Cir. Aug. 1, 2011). Here, the gruesome photographs of Plaintiff son's remains have been released on the Internet, comparable to the harm at issue in *Vanessa Bryant* and worse than the facts at issue in *Marsh*.

**B.     Defendant Burnes Is Not Entitled to Qualified Immunity**

Since 2012, the Ninth Circuit has clearly established that a family has a procedural due process right under the Fourteenth Amendment to limit reproduction and sharing of the images of a deceased loved one, not just publication.

Defense counsel ignores a significant portion of *Marsh* and argues "Only when the official personally attempted to publish the photograph was the constitutional standard met." (Dkt. 22-1 at 8). Defendant cites to a single footnote no less than three times in two paragraphs but conspicuously fails to reference the rest of the holding, namely, the four pages in *Marsh* that the Ninth Circuit devoted to procedural due process and qualified immunity.

The Defense's argument regarding publication elides the explicit holding that, as of 2012 when *Marsh* was decided, the federal privacy right in a loved one's death images was not limited to publication: "In enacting section 129, California consciously and deliberately gave its citizens the right not to have government officials engage in *unwarranted reproduction* of autopsy photographs *or other death images of deceased relatives*." *Marsh*, 680 F.3d at 1158 (italics added). This included a prosecutor "us[ing] his position as a state official to *obtain* the autopsy photographs," and "*improper photocopying* prior to Coulter's retirement." *Marsh*, 680 F.3d at 1158 (italics added). Although "it was not clear, *prior to today*, that the statute [Cal. Code. Civ. P. § 129] created a federally protected right," that "this is the first case to address the federal privacy interest in death images," *Marsh*, 680 F.3d at 1159 (italics added). Applying that standard to the former prosecutor defendant, the Ninth Circuit held that "Coulter's violation of section 129 provides an additional basis for Marsh's section 1983 claim." *Id.* at 1158.

Thus, as of 2012, the Ninth Circuit had clearly established that a family has a procedural due process right under the Fourteenth Amendment, via Cal. Code. Civ. P. § 129, to limit reproduction of the images of a deceased loved one, and that this included improper reproduction and sharing, not just publication. Subsequently, District Courts have applied *Marsh* in recognizing the substantive due process right created by California statute. *See e.g. Yuen v. City of Montebello*, 20-cv-755-MWF 2021 U.S. Dist. LEXIS 47156, 2021 WL 2791615, at *9 (C.D. Cal. Mar. 10, 2021) ("California consciously and deliberately gave its citizens the right not to have government officials engage in unwarranted reproduction of autopsy photographs or other death images of deceased relatives," and the defendant's violation of section 129 could provide a basis for the plaintiff's § 1983 claim.)

Plaintiff has pleaded the standard articulated by the Ninth Circuit in 2012, as the behavior of defendant Burnes parallels the unwarranted reproduction, possession and sharing of death images alleged by the defendant in *Marsh* and violates Section 129:

> In addition, defendants Burnes, Pena and Ortega and Does 3 through 15 later accessed photographs taken for the investigation into Romero's murder, and

without a conceivable government purpose, transferred grisly investigation photographs of the murder scene onto their personal cell phones.

(FAC, Para. 18)

[A]fter the photos were taken and obtained, Defendant Burnes, Pena, Ortega and Does 3 through 15 possessed and transmitted them via text and/or airdrop to the personal cell phones of CDCR employees, including defendant Ortega, and to non-CDCR employees, neither of which had any had no role in the investigation. The sharing of these photographs with non-authorized CDCR personnel and civilians, for purposes that did not relate to any investigation or any other legitimate government purpose (but instead motivated by morbid gossip, ill-will and malice), was not in the scope of employment of defendants Burnes and Does 3 through 15

[…]

[Burnes and Doe defendants] took advantage of the physical and digital access provided by their employment (to improperly take and obtain murder scene photos) and then violated the trust of their positions of employment, despite the taking and sharing of these photos not being done in the scope of their employment.

(FAC, Para. 19)

Defendant's argument regarding qualified immunity loses the plot: *Marsh* sets forth the standard of liability for a procedural due process claim under the Fourteenth Amendment, Plaintiff has clearly pleaded facts that meet this standard, and Plaintiff has satisfied Rule 8 requirement to allege facts not a specific legal theory.

As stated by the Ninth Circuit in *Ghebreselassie v. Coleman Sec. Service*, 829 F.2d 892 (9th Cir. 1987): "a properly pleaded claim in federal court need not specify under which law it arises. A complaint need only set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 895 (quoting Fed. R. Civ. P. 8(a)(2)). Under Rule 8(a), a pleader need not allege legal theory on which he relies. *Hostrop v. Board of Junior College Dist. No. 515*, 523 F.2d 569, 581 (7th Cir. 1975). Plaintiffs have no obligation to plead legal theories under Rule 8, and fact that more than one legal theory might fit events described is immaterial, as long as allegations give notice of legally sufficient claim. *Harrell v. Cook*, 169 F.3d 428 (7th Cir. 1999). "Courts should construe

pleadings liberally so as to do substantial justice…and should do so, if possible, in favor of plaintiff." *Lynn v. Sheet Metal Workers' International Assoc.*, 804 F.2d 1472, 1482 (9th Cir. 1986). As for assessing Substantive Due Process claim under the Fourteenth Amendment for a motion to dismiss, "[i]t is sufficient at the pleading stage that all the facts taken together and taken as true present sufficient evidence upon which a jury could reach a verdict in Plaintiff's favor." *Phillips v. Cnty. Fresno*, No. 1:13-cv-0538-AWI-BAM) 2013 U.S. Dist. LEXIS 170511, 2013 WL 6243278, at *20 (E.D. Cal. Dec. 2, 2013).

Additionally, Defendant Burns was on notice that California Code of Civil Procedure § 129 creates a Due Process right because it (1) provides substantive criteria that limits an official's discretion to reproduce an autopsy photograph, and (2) contains explicit and mandatory language limiting an official's discretion unless specific exemptions apply. *See* Cal. Code Civ. Proc. § 129 ("[A] copy, reproduction, or facsimile of any kind of photograph…of the body, or any portion of the body, of a deceased person, taken by or for the coroner a the scene of death…shall not be made or disseminated, except [setting forth limited exceptions]"). A defendant's "violation of section 129 provides an additional basis" for a plaintiff's section 1983 claim. *Marsh*, 680 F.3d at 1158. Given all this, Defendant Burns cannot realistically argue that he was not on notice at the time of Mr. Romero's death that he was legally permitted to take photographs of an inmate's mutilated remains, with no legitimate governmental interest, and share them with others.

Thus, the Complaint contains sufficient allegations to support a Fourteenth Amendment due process violation claim. Moreover, as described in the subsequent sections, since Plaintiff's FAC states a proper Due Process claim under the Fourteenth Amendment, the Court should exercise discretion and retain jurisdiction over the state-law claims, so as to avoid overlapping factual allegations from being litigated in multiple fora.

## IV. PLAINTIFF STATES A CLAIM FOR BREACH OF MANDATORY DUTY AGAINST DEFENDANT BURNES

The Ninth Circuit in *Marsh* held that "[s]tate law can create a right that the Due Process Clause will protect only if the state law contains (1) substantive predicates governing official decision making, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met.'" *Marsh*, 680 F.3d at 1155. The *Marsh* court further held that, because "California consciously and deliberately gave its citizens the right not to have government officials engage in unwarranted reproduction of autopsy photographs or other death images of deceased relatives," and that defendant's violation of section 129 could provide a basis for plaintiff's § 1983 claim. *Id.* at 1157-58.

With liability under Section 129 on all fours under *Marsh*, defendant Burnes re-hashes another argument, that an individual defendant cannot be held liable for violating a mandatory duty. This novel notion is incorrect as a matter of law.

California Government Code § 820 governs liability of public employees: "Except as otherwise provided by statute ..., a public employee is liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov't Code § 820. Under California law, the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person and the public entity is vicariously liable for any injury which its employee causes to the same extent as a private employer. *Garcia v. City of Merced*, 637 F.Supp.2d 731, 747 (2008). Liability attaches when a governmental employee acts within the scope of their authority in a ministerial capacity. *Jones v. Czapkay*, 182 Cal.App.2d 192, 198 (1960). Government officials are liable for negligence in performance of ministerial acts. *Muskopf v. Corning Hospital Dist.*, 55 Cal.2d 211 (1961) (superseded by statute as stated in *Quigley v. Garden Valley Fire Protection Dist.*, 7 Cal.5th 798, 803 (2019)). Furthermore, where a mandatory duty exists, no immunity attaches for discretionary acts,

10

since the employee is not permitted the discretion to refuse to comply. See *Elson v. Public Utilities Commission*, 51 Cal.App.3d 577, 589 (1975).

The California Supreme Court has held that Cal. Penal Code § 11166(a) imposes a mandatory duty to make a report upon individual government employees who are deemed mandated reporters. *B.H. v. Cty. of San Bernardino*, 62 Cal. 4th 168, 197 (2015) ("[I]f [sheriff's deputy] were dispatched to investigated a reported residential burglary and observed evidence that would sustain an objective suspicion of child abuse, she would be required to report under section 11166, subdivision(a).") Federal courts have also recognized that the same statute imposes a mandatory duty upon individual government employees. *See e.g. R.H. v. Cty. of San Bernardino*, 2020 WL 5775177, *9 (C.D. Cal. Jul 31, 2020) (denying summary judgment and permitting claim against county social worker for violation of Cal. Penal Code § 11166(a)).

Section 129 explicitly states that photograph "of the body, or any portion of the body, of a deceased person," "shall not be made or disseminated," except under a very limited set of circumstances described "except as follows." Cal. Civil Code § 129. The Complaint explicitly states that Defendant Burns took photos of Mr. Romero's remains while on duty and in an area where only first responders were allowed, then shared photos of grotesque images of Luis Romero's remains. This was a breach of Section 129's mandatory duty not to make or disseminate photographs of a deceased person.

## V. PLAINTIFF STATES A VALID NEGLIGENCE CLAIM

Plaintiff's claim for general negligence liability arises under California Civil Code section 1714. The California Supreme Court has made clear that law enforcement officials are subject to general negligence liability. *Lugtu v. Cal. Highway Patrol*, 26 Cal. 4th. 703, 716 (2001). The Complaint cites to California Government Code section 820, which states, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." *See* Cal. Gov. Code § 820(a).

California law has long recognized a duty to handle dead bodies with due care because such conduct "is likely to cause serious emotional distress to members of the decedent's immediate family regardless of whether they observe the actual negligent conduct or injury to the remains of their decedent. *Christensen v. Superior Court*, 54 Cal.3d.868, 894-95 (1991). California specifically imposes a duty on law enforcement officers to "refrain from exploiting gruesome death images by disseminating them to friends and family members or others with no involvement in official [law enforcement] activities." *Catsouras v. Dept't of Cal. Highway Patrol*, 181 Cal. App. 4th. 856, 884 (2010). "*Catsouras* strongly supports the existence of a duty with respect to [individual law enforcement officials] who took the photos of the victims and shared them with others." *Bryant v. Cnty. of L.A.*, 2020 WL 8024857, at *7 (C.D. Cal. Dec. 28, 2020).

In *Catsouras*, two California Highway Patrol officers e-mailed horrific photographs of decedent's mutilated corpse to their friends and family members. *Catsouras*, 181 Cal. App. 4th at 863. Those photographs were then forwarded to others and spread across the Internet. *Id.* The California Court of Appeal found that the two officers "owed plaintiffs a duty not to exploit CHP-acquired evidence in such a manner as to place them at foreseeable risk of grave emotional distress." *Id.* It must be noted that the defendant officers themselves did not publish photographs on the Internet, and that merely sharing such sensitive images with others was enough to establish a breach of a duty of care. The *Catsouras* court swatted down the notion that the officers were immune, or that individual liability would hinder investigatory or other law enforcement purposes: "We simply hold that the CHP and its officers must refrain from exploiting gruesome death images by disseminating them to friends and family members or others with no involvement in official CHP activities." *Id.* at 884.

Similarly, the widow of Kobe Bryant brought negligence claims against individual Los Angeles County Sheriff's Deputies for taking and sharing photographs of the remains of her late husband and daughter, even though these photographs had never been

12

published on the Internet. In denying defendants' motion to dismiss, the court in *Bryant* found that "*Catsouras* strongly supports the existence of a duty in this case with respect to the LASD deputies who took the photos of the victims and shared them with others." *Bryant v. Cnty. of Los Angeles*, 2020 WL 8024857, at *7 (C.D. Cal. Dec. 28, 2020).

Here, Plaintiff alleges that Defendant Burns was the proximate cause of her injuries. (FAC Para 21) A reasonable jury could conclude defendant Burnes did publish or attempt to publish the horrific images given that they were shown on the website: "None of these photographs are ISU photographs, which typically have investigative stamps and insignia on them. Plaintiff understands these photographs to be taken by Defendant Burnes, Pena, Ortega and Does 3 to 15 These are the same cell photographs shown to other inmates and later found on websites such as Sword and Scale and Documenting Reality." (FAC, Para. 19).

Defendant Burnes argues that Defendant Burns did not breach any duty of care and had no duty of care to protect against third parties. A plain reading of the Complaint and referral to California case law demonstrates why this argument fails. The Complaint alleges that Defendant Burns himself, not a third party, caused Plaintiff's harm, by taking and sharing photographs of Mr. Romero's remains with no legitimate government interest. Thus, this case involves malfeasance, not nonfeasance. *See Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, fn. 5, ("the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter"); *Lugtu*, 26 Cal. 4th. at 716 (general negligence liability applies to law enforcement officers for allegations "based upon a claim of misfeasance, not nonfeasance").

The FAC properly alleges that Defendant Burns himself, not a third party, caused Plaintiff's harm by acts of misfeasance, the taking and sharing photographs of Mr. Romero's remains with no legitimate government interest: The Complaint clearly alleges that Burns took photographs of Mr. Romero's remains, possessed and shared photos of

Mr. Romero's remains without any legitimate purposes. (FAC, Para. 18) In so doing, the Complaint properly alleges that Burns had a duty of care and breached it.

Defendant's apparent argument is that Plaintiff does not allege that Defendant Burns himself posted the photographs on the internet and therefore cannot be held responsible. *Catsouras* and *Bryant* hold otherwise. Indeed, the mere taking and sharing of photographs is enough to establish liability. *See Catsouras*, 181 Cal. App. 4th at 884; *Bryant v. Cnty. of L.A.*, 2020 WL 8024857, at *7 (C.D. Cal. Dec. 28, 2020).

## VI. PLAINTIFF STATES A VALID INVASION OF PRIVACY CLAIM

Plaintiff's Complaint properly alleges a claim for invasion of privacy.

The elements of a claim of invasion of privacy on the public disclosure of private facts are as follows: (1) public disclosure; (2) of a private fact; (3) which would be offensive and objectionable to the reasonable person; and (4) which is not of legitimate public concern. *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 214 (1998).

The Supreme court has recognized a common law right "of family members to direct and control disposition of the body of the deceased." *Marsh*, 680 F.3d at 1153 (quoting *Favish*, 541 U.S. at 167). The *Catsouras* court recognized that surviving family members have no right of privacy arising from discussion of the life of a decedent but held that they do have a common law privacy right in the death images of the decedent. *Catsouras*, 181 Cal. App. 4th at 863-64. California and federal courts recognize that the sharing of sensitive images can constitute a cognizable basis for a state law invasion of privacy claim, whether the images involve a sonogram of an aborted fetus or a sex tape involving a rock singer and actress. *See Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1258 (2017) ("Mayweather's publication of the sonogram and summary medical report, like the *Catsouras* photographs and Michaels-Lee sex tape, involved a 'morbid and sensational' prying into her private life and thus constituted a cognizable basis for her invasion of privacy claim"); *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823, 842 (C.D.

Cal. 1998) (granting preliminary injunction prohibiting dissemination of sex tape "to prevent a violation of plaintiff's state law right of privacy in the contents of the Tape.")

Plaintiff's FAC alleges every element for an invasion of privacy claim. Like a sonogram or sex tape, the death images portray a private fact -- Mr. Romero's "mutilated" and "decapitated" remains -- that would be offensive to a reasonable person if shared for morbid and sensational purposes. Defendant Burns took and shared photos without a legitimate government interest and facilitated the public disclosure of these death images when he possessed and shared them, which in turn allowed these photographs to be leaked publicly, including on the website Sword and Scale. (FAC, Para. 19)

Thus, Plaintiff has plainly set forth the factual allegations for a cause of action for invasion of privacy.

**VII. CONCLUSION**

For the foregoing reasons, Defendant's Rule 12(b)(6) motion should be denied, and he should be ordered to answer Plaintiff's First Amended Complaint.

Alternatively, Plaintiff should be granted leave to amend should the Court determine any ground of the motion to dismiss to be meritorious. Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave when justice so requires," and the Ninth Circuit requires this policy be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); see also *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Respectfully submitted,

Dated: July 19, 2023

                        LAW OFFICES OF ERIN DARLING

                        By: _____*/s/Erin Darling*_____
                            Erin Darling,
                            Attorneys for Plaintiff
                            Dora Solares