**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA SOLARES,<br><br>       Plaintiff,<br><br>   v.<br><br>JOSEPH BURNS[1], et al.,<br><br>       Defendants. | Case No.: 1:21-cv-01349 JLT BAM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BURNES' MOTION TO DISMISS<br><br>(Doc. 22) |

Dora Solares alleges that after her son, Luis Romero, was brutally murdered by his cellmate at Corcoran State Prison, California Department of Corrections and Rehabilitation Sergeant Joseph Burnes and other officers[2] took and shared photographs of Mr. Romero's mutilated remains, which

---

[1] Plaintiff asserts that she has conducted an investigation and has determined that Mr. Burnes' name does ***not*** have an "e" in it. However, she now spells his name with an "e." Because the opposition to the motion spells the name with an "e," the Court presumes that the plaintiff's footnote 1 contains a typo, and the Court adopts the spelling of the name with an "e." (*See* Doc. 21 at 3 n.1; Doc. 22.)

[2] Plaintiff initially named Burnes and Does 1-15 as Defendants. (*See* Doc. 1.) The FAC adds two previous Doe Defendants, "Pena" and "Ortega," leaving "Does 3 through 15" (*See* Doc. 21 at 5 n.1), though there is no evidence the plaintiff has sought summonses for these new defendants nor sought a waiver of service from these newly added defendants.

Except where such distinctions are necessary, allegations pertaining to Burnes and Pena, Burnes and Ortega, and/or Burnes and any Doe Defendants will be referred to simply as "Defendants" for purposes of this order. Because the new defendants have not been served or appeared, this order does not address them, except as necessary.

1

were later published on the Internet and witnessed by Plaintiff. (*See generally* Docs. 1, 21.) She seeks to hold Defendants liable for, *inter alia*, violating her substantive due process rights under the Fourteenth Amendment. (*Id.*) Before the Court is Burnes' motion to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 22.) The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, Burnes' motion to dismiss is **GRANTED in part** and **DENIED in part**.

**I.     Background and Allegations**

On March 9, 2019, two days after Luis Romero was transferred to Corcoran State Prison, he was found brutally murdered by his cellmate, Jaime Osuna. (Doc. 21 at ¶¶ 14, 17.) Using what appeared to be a razor wrapped in string, Osuna had removed Mr. Romero's right ear, forcibly detached his eyes, removed portions of his ribs and lungs, and decapitated him. (*Id.* at ¶ 16.) He had written "hahahahaha" on the cell wall using Mr. Romero's blood and was found wearing a necklace made of Mr. Romero's body parts and organs. (*Id.* at ¶¶ 16, 19.)

After responding officer "Pena" triggered his CDCR-issued alarm and "word of [Mr.] Romero's grisly murder spread," Defendants arrived at Mr. Romero's cell and took unauthorized photographs of the murder scene with their cell phones. (Doc. 21 at ¶¶ 17-18.) This was outside the scope of the officers' employment: they were not members of the Investigative Services Unit, which is "tasked with preserving crime scene and investigating crimes within CDCR walls;" they were not rightfully on the premises as first responders; and they were not authorized by CDCR to take the photographs. (*Id.* at ¶¶ 17-19.)

"[I]mmediately after the murder discovery," and before ISU arrived, Burnes and another officer were seen speaking with an inmate and showing him the photos on their cell phones. (Doc. 21 at ¶ 17.) The officers were also heard discussing with the inmate that "they" would never find one of Mr. Romero's fingers. (*Id.*) In addition, Defendants later accessed additional photographs from Mr. Romero's murder investigation files and transferred them to their personal cell phones. (*Id.* at ¶ 18.) Defendants then showed and/or shared the photographs, via text message and/or Apple's AirDrop feature, to "colleagues," "CDCR employees," "CDCR inmates," "non-CDCR employees," "non-authorized CDCR personnel," and "civilians," none of whom were involved in the murder

investigation. (*See id.* at ¶¶ 18-19.)[3] Plaintiff alleges Defendants acted without a conceivable investigative or legitimate governmental purpose, and were instead personally motivated by "morbid gossip, ill-will and malice." (*Id.* at ¶ 19.)

Due to Defendants' actions, many of the photographs were "ultimately leaked to online media platforms," and Plaintiff endured "the horrific experience of witnessing the photographs and in knowing that these photographs of her mutilated son had been seen by the general public, a severe disrespect to his mortal remains." (Doc. 21 at ¶¶ 18, 20.) Plaintiff asserts Defendants "acted in a manner that shocks the conscience and offends the community's sense of fair play and decency." (*Id.* at ¶ 25.) As a direct and proximate result of Defendants' actions, Plaintiff was denied "her fundamental constitutional rights guaranteed by the Fourteenth Amendments of the United States Constitution," and she "suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension…." (*Id.* at ¶¶ 21-22.)

Based upon these allegations, Plaintiff filed the instant action, asserting a 42 U.S.C. § 1983 substantive due process claim and various state law claims against Defendants in their individual capacities. (Doc. 1.)[4] The Court granted Burnes' first motion to dismiss pursuant to Rule 12(b)(6) and granted Plaintiff leave to amend the complaint as to her substantive due process claim. (Docs. 11, 19.) Now pending is Burnes' motion to dismiss the First Amended Complaint. (*See* Docs. 21, 22.) Plaintiff filed an opposition, (Doc. 23), to which Burnes replied. (Doc. 25.)

## II.     Motion to Dismiss under Rule 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

---

[3] As part of her state law claims, Plaintiff also alleges that Defendants "disclosed photos of Mr. Romero's remains to multiple members of the public, both in person and electronically." (Doc. 21 at ¶ 41; *see also id.* at ¶ 36 ["Defendants … breached their duty to Plaintiff by sharing photos of Mr. Romero's mutilated body and physical remains for personal non-law-enforcement purposes, including by electronic transmission and with members of the public."].)

[4] Plaintiff filed a separate action in connection with the events preceding the discovery. *See Solares v. Diaz*, 1:20-cv-00323-JLT-BAM.

*Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. Porterville of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**III.     Discussion and Analysis**

Burnes contends that the FAC fails to state a substantive due process claim under 42 U.S.C. § 1983 because (1) his alleged conduct does not "shock the conscience," (2) the FAC fails to link Burnes' conduct to an alleged deprivation, and (3) he is entitled to qualified immunity. (*See* Doc. 22-1.) In addition, because the only federal claim should be dismissed, Burnes also argues the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, or, in the alternative, dismiss them for failing to state a claim under Rule 12(b)(6). (*Id.*) The Court addresses each argument in turn.

///

**A.     42 U.S.C. § 1983**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) he or she was deprived of a right secured by the Constitution or federal law; and (2) the defendant acted 'under color of state authority' in depriving the plaintiff of this right." *Franklin v. Terr*, 201 F.3d 1098, 1100 (9th Cir. 2000) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). A plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that a person deprives another of a constitutional right, "within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). Finally, "[a] plaintiff must also show that the federal right was 'clearly established' at the time of the violation, otherwise government officials are entitled to qualified immunity." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012).

There is no dispute that Defendants were acting under the color of state law. (*See* Doc. 21 at ¶ 26.) Thus, the Court addresses the applicable law for Plaintiff's section 1983 claim and whether a cognizable claim is stated for a substantive due process violation.

          1.     Substantive due process

Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal citations omitted). To state a substantive due process claim, "a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).

                    a.     Whether conduct "shocks the conscience"

The parties' dispute largely hinges on whether Burnes' alleged conduct is sufficient to "shock the conscience" in light of the Ninth Circuit's decision in *Marsh v. Cnty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012). There, a former district attorney, Jay S. Coulter, admitted to copying autopsy photographs of a young boy whose murder he had prosecuted. *Id.* at 1152. Coulter disclosed that when he retired decades later, he kept one photograph and eventually sent it, along with a memorandum

5

titled, "What Really Happened to Phillip Buell?" to a newspaper and television station. *Id.* The boy's mother, Brenda Marsh, sued Coulter and the County of San Diego under 42 U.S.C. § 1983, alleging that the "copying and dissemination" of her son's autopsy photos violated her due process rights. *Id*. at 1152.

In this context, the Ninth Circuit recognized, perhaps for the first time, that "the common law right to non-interference with a family's remembrance of a decedent is so ingrained in our traditions that it is constitutionally protected" by substantive due process. 680 F.3d at 1154.[5] More specifically, the Court concluded that the Fourteenth Amendment "protects a parent's right to control the physical remains, memory and images of a deceased child against unwarranted public exploitation by the government." *Id*. Based on the facts, the Court found that Coulter's "intrusion into the grief of a mother over her dead son—without any legitimate governmental purpose—shocks the conscience and therefore violates Marsh's substantive due process right." *Id*. at 1155. In a footnote, the Court limited its holding: "Only Coulter's attempt to publish the autopsy photograph is sufficiently shocking to violate Marsh's substantive due process right. We address Coulter's other instances of copying separately under procedural due process." *Id*. at 1155 n.3 (citation omitted). This footnote is the source of the parties' contention.

Based on the Court's distinction, Burnes maintains that absent an allegation that he published, attempted to publish, or otherwise participated in the publication of the images, there is no showing that his conduct "shocks the conscience" under *Marsh*, and thus, the FAC fails to state a substantive due process claim. (*See* Doc. 22-1 at 4-6.) According to Plaintiff, "actual or attempted publication" is not required to state a claim.[6] (Doc. 23 at 5.) However, *Marsh* did not specifically stand for either of

---

[5] The Court noted that, so far as it was aware, it was the first case to consider the issue. 680 F.3d at 1154.

[6] Plaintiff asserts that in *Marsh*, the Ninth Circuit found that improperly copying, possessing, and distributing photographs "were all actionable allegations of a constitutional violation." (Doc. 23 at 6.) While not necessarily false, this conduct was examined under procedural due process, not substantive due process. As the Court explained in *Marsh,* a procedural due process violation can occur without the "conscience-shocking" behavior required for a substantive due process violation. 680 F.3d at 1155 ("A state official's failure to comply with state law that gives rise to a liberty or property interest may amount to a procedural (rather than substantive) due process violation, which can be vindicated under 42 U.S.C. § 1983."). Thus, for purposes of the parties' arguments pertaining to whether the alleged conduct "shocks the conscience," Plaintiff's reliance on *Marsh*'s procedural due process discussion is misplaced.

6

these propositions.

In bringing her 42 U.S.C. § 1983 action, Marsh claimed she had "a federal right to control the autopsy photographs of her child," arguing that "such a right exists as a matter of substantive due process *and also* as a state-created liberty interest protected by procedural due process." 680 F.3d at 1152-53 (emphasis added). For this reason, the Ninth Circuit examined Marsh's claims under both. *See id*. at 1153-58. In the Court's view, the footnote in *Marsh* was included to clarify which of Coulter's particular acts its conclusion applied to, by separating the conduct into two parts: (1) dissemination to the press, or "attempting to publish," which was examined under substantive due process; and (2) photocopying and possessing the photo for years prior, which was analyzed under procedural due process. Thus, the conclusion that Coulter's attempt to publish was the only conscience-shocking conduct was as opposed to Coulter's *copying and possessing*, not as opposed to sharing in other manners or with other recipients, as the parties suggest. Nonetheless, the parties are asking the Court to resolve, *in light of Marsh*, an issue based on circumstances that were not present in *Marsh*.

Ultimately, *Marsh* is noteworthy in that the Ninth Circuit recognized a parent's substantive due process right to control the death images of a child "against unwarranted public exploitation by the government." 680 F.3d at 1154. It also held that the "public display of death images" is "likely to cause the family profound grief and therefore shock[] the conscience." *Id*. at 1155 (cleaned up). Based on this right, the Court found that Coulter's attempt to publish the images, under the circumstances presented, shocked the conscience and violated substantive due process. *Id*. What *Marsh* did not resolve, for example, was whether attempted publication is required *to state a claim*, or, if not, whether other conduct (such as sharing or publishing) or conduct involving other recipients (such as colleagues or friends) may also suffice to "shock the conscience." Put differently, though the Court agrees that *Marsh* did not create a dichotomy between "sharing" and "publishing," it also did not categorize the two as one and the same. The Ninth Circuit was not tasked with making these distinctions, nor was it required to.[7] *See Roberts v. Bell*, 281 F. Supp. 3d 1074, 1078 (D. Mont. 2018)

---

[7] That the Ninth Circuit did not resolve these questions as they relate to whether conduct "shocks the

7

("Whether conduct shocks the conscience is an objective test to be applied to the circumstances of the particular case.") (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 857 (1998) (Kennedy, J., concurring)).

### b. Whether Plaintiff shows a "deprivation"

Having rejected the broad assertion that without publication of death images, there can be no substantive due process violation, the Court briefly turns to Burnes' related causation argument.[8] *Marsh* aside, Burnes argues that the FAC fails to link his conduct with Plaintiff's alleged deprivation. (Doc. 22-1 at 5.) He contends that Plaintiff alleges the publication of the photos caused her damages, and because Burnes is not alleged to have participated in the publication, he did not cause Plaintiff's damages. (*Id.*, citing Doc. 21 at ¶ 20.)

First, this argument conflates the standard requiring a causal connection in a substantive due process claim. As discussed *supra*, the relevant question is not whether the *publication* of the photographs caused Plaintiff's damages, but rather, whether *Burnes' conduct* caused the deprivation of Plaintiff's rights. *See Rizzo*, 423 U.S. at 373-75; *see also Nunez*, 147 F.3d at 874 (requiring a causal connection between the alleged misconduct (cronyism) and the alleged deprivation (failure to be promoted)). Thus, although Plaintiff alleges that she suffered emotional, mental, and physical pain after having "the horrific experience of witnessing the photographs" online, this is not the relevant inquiry. (*See* Doc. 21 at ¶ 20.)[9]

---

conscience," does not bear on this Court's qualified immunity discussion. *See infra,* III.A.2.

[8] Burnes does not challenge that parents have a constitutionally protected interest in controlling a child's death images. (*See generally* Docs. 22, 25.) He only contends that the right was not "clearly established" for purposes of qualified immunity, which the Court discusses *infra*. Thus, with respect to this section, the Court limits its examination to whether Plaintiff sufficiently alleges a deprivation of that right.

[9] Elsewhere, Burnes further clouds his argument by asserting that "there is no allegation that [his] conduct *caused the publication*" of the photographs. (Doc. 22-1 at 6, emphasis added.) First, the FAC indicates otherwise. Plaintiff alleges that "*[a]s a result of the taking and sharing* grisly photographs of Mr. Romero's remains for no legitimate government purpose, *many of these shared photos have since been publicly posted*." (Doc. 21 at ¶ 20, emphasis added.) Such allegations would likely be sufficient to show causation. *See Johnson*, 588 F.2d at, 743-44 ("The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."). However, this is likewise not the inquiry. Plaintiff need not allege the exact conduct as in *Marsh* to state a claim. Rather, she must show a causal connection between Burnes' conduct and the deprivation alleged to have been suffered. *Rizzo*, 423 U.S. at 373-75.

8

1      Moreover, Burnes "minimizes the complaint's factual allegations." *Cotta v. Cnty. of Kings*,

2   2013 WL 3213075, at *3 (E.D. Cal. June 24, 2013). Contrary to Burnes' assertion, Plaintiff alleges the

3   following:

4   > **As a direct and proximate result of the aforesaid acts**, omissions, customs, practices, policies and decisions **of the aforementioned Defendants**, **Plaintiff suffered the denial of her fundamental constitutional rights guaranteed by the Fourteenth Amendment**[] of the United States Constitution, which have caused Plaintiff to sustain damages in a sum to be determined at trial.
> …
> **By taking and sharing photos** of Luis Romero's remains without any legitimate governmental purpose, **[Defendants] deprived Plaintiff of her substantive due process right to control the physical remains, memory, and death images of her deceased child.**
> …
> As a direct and proximate result of Defendants' conduct, **in photographing and sharing photographs of Mr. Romero's mutilated body, [Defendants] caused harm to Plaintiff** and Plaintiff was damaged as alleged herein above.

14  (Doc. 21 at ¶¶ 22, 25, 27 [emphasis, alteration added].) This is sufficient to connect Burnes' conduct

15  (taking and sharing photographs of Mr. Romero's remains) with the deprivation of Plaintiff's

16  constitutional right (to control her son's death images).

17      Finally, Burnes' causation argument appears to rely on the Court's prior dismissal order. In the

18  original complaint, Plaintiff alleged that Defendants took, possessed, and shared the photographs,

19  "and/or permitted other CDCR employees under their supervision to possess and share these

20  photographs, which in turn allowed these photographs to be leaked publicly." (Doc. 1 at ¶ 17.)

21  Accordingly, the Court found that "[m]erely asserting that Defendants shared photographs taken while

22  on duty without indicating, for example, with whom the photographs were shared or for what purpose,

23  Plaintiff fails to adequately link Burnes' conduct with her claimed deprivation to apprise him of his

24  wrongdoing." (Doc. 19 at 8.)

25      The FAC, on the other hand, alleges facts demonstrating the particular acts Burnes engaged in,

26  including when and how he captured and/or obtained the photographs, with whom he communicated,

27  what was said, how and with whom the photographs were shared, and for what purpose. Taken as true,

28  these allegations plausibly implicate the public display of death images by Burnes, the type of conduct

the Ninth Circuit held is likely to cause Mr. Romero's family "profound grief" and "shock the conscience." *Marsh*, 680 F.3d at 1155. Thus, Plaintiff has alleged sufficient facts to link Burnes' conduct to the alleged deprivation and allow the Court to reasonably infer that Burnes deprived Plaintiff of her constitutional right, as Mr. Romero's mother, to control the death images of her deceased son. 42 U.S.C. § 1983; *Iqbal*, 556 U.S. at 678; *Marsh*, 680 F.3d at 1154-55. Whether Plaintiff can *prove* causation or that Burnes' conduct shocks the conscience is a question for a later time. *Scheuer*, 416 U.S. at 236; *Vasquez*, 2019 WL 3564483, at *5; *Woodward*, 2018 WL 3343793, at *4.

### 2. Qualified immunity

Burnes asserts he is entitled to qualified immunity. Indeed, "[l]aw enforcement officers, including prison guards, enjoy qualified immunity from civil damage suits unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1195-96 (9th Cir. 2000) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "The purpose of qualified immunity is to 'ensure that defendants reasonably can anticipate when their conduct may give rise to liability.'" *Id.* at 1197 (quoting *United States v. Lanier,* 520 U.S. 259, 270 (1997)). Thus, "[a] right is 'clearly established' … if, 'at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 886 (9th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. "This does not mean, however, that the 'very action in question [must have] previously been held unlawful.'" *Schwenk*, 204 F.3d at 1197 (quoting *Mendoza v. Block,* 27 F.3d 1357, 1361 (9th Cir. 1994)). If preexisting law defines "the contours of the right" with sufficient specificity to provide an official with "fair warning" that his conduct was unlawful, qualified immunity is inappropriate. *Id.* (quoting *Lanier,* 520 U.S. at 270-71). In making this determination, courts "look to then-existing cases of controlling authority or, absent such cases, to a consensus of persuasive authorities." *Sabra*, 44 F.4th at 886-87.

Both parties rely on the *Marsh* case in advancing their qualified immunity arguments. Burnes asserts he is entitled to qualified immunity because the allegations do not show that his conduct violated a clearly established right. (*See* Doc. 22-1 at 8.) However, in support of his position, he maintains that the *Marsh* case "clearly established that it was *not* a substantive due process violation to copy, possess, and share (even with non-government employees) photographs of a decedent." (*Id.*, citing *Marsh*, 680 F.3d at 1152, 1155 n.3 [emphasis added].) Again, this misstates the Ninth Circuit's holding. More importantly, this overlooks what the Ninth Circuit *did* clearly establish in *Marsh*.

In opposition, Plaintiff focuses on *Marsh*'s discussion of procedural due process, noting that "as of 2012, the Ninth Circuit had clearly established that a family has a procedural due process right under the Fourteenth Amendment, via Cal. Code Civ. P. § 129, to limit reproduction of the images of a deceased loved one, and that this included improper reproduction and sharing, not just publication." (Doc. 23 at 8.) Burnes asserts that "in so arguing, Plaintiff concedes that it was not clearly established in 2019 that Burnes's alleged conduct was a *substantive* due process violation." (Doc. 25 at 4, emphasis in original.) Burnes' argument misses the mark.[10]

In *Marsh*, although the Ninth Circuit found Coulter's dissemination to the press shocked the conscience and violated substantive due process, it concluded that Coulter was not acting under color of state law at the time, and thus, Marsh failed to state a claim as to the later conduct. 680 F.3d at 1158.[11] The Court noted, however, that improper photocopying, removing the photo from the office,

---

[10] On the other hand, Plaintiff also makes various assertions suggesting the viability of a procedural due process claim. (*See* Doc. 23 at 9 ["Plaintiff has clearly pleaded facts that meet [*Marsh*'s procedural due process] standard, and Plaintiff has satisfied Rule 8 requirement [sic] to allege facts not a specific legal theory."].) The Court declines to interpret the FAC in this way. Not only did Plaintiff not assert such a claim, the FAC contains no allegations concerning a state law "that contains (1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." *Marsh*, 680 F.3d at 1155 (internal quotation marks omitted). Nor can Plaintiff rely on *Marsh*'s examination of California Civil Procedure Code § 129 to support a claim. *See Twombly*, 550 U.S. at 562. ("[A] *complaint* … must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.") (emphasis added).

[11] *Marsh* came to the Ninth Circuit on an appeal from the district court's grant of defendants' motion to dismiss the claims pertaining to Coulter's conduct after he retired, and its grant of defendants' summary judgment motion relating to the remaining conduct and claims. *Marsh*, 680 F.3d at 1152; *Marsh v. Cnty. of San Diego*, 2008 WL 11509147 (S.D. Cal. Aug. 4, 2008) (dismissing claim based on later conduct alleged in original complaint); *Marsh v. Cnty. of San Diego*, 2009 WL 10726740 (S.D. Cal. May 6, 2009) (dismissing same in FAC); *Marsh v. Cnty. of San Diego*, 771 F. Supp. 2d 1227, 1230 (S.D. Cal. 2011) (summary judgment).

11

1 and "giving" it to himself as a private individual still stood because Coulter was "clearly acting 'under
2 color of state law' in his capacity as a state prosecutor." *Id*.

3 However, for purposes of qualified immunity, the Court examined *all* of Coulter's conduct
4 (under the assumption he was acting under color of state law), considering the cases Marsh relied upon
5 in furthering her substantive due process argument, as well as California Civil Procedure Code § 129,
6 the statute upon which she relied in asserting her procedural due process argument. *See* 680 F.3d at
7 1158-59. The Court then explained: "As already noted, this is the first case to address the federal
8 privacy interest in death images. While we believe the right is sufficiently grounded in federal law, we
9 can't fault a state actor for failing to anticipate our ruling." *Id*. at 1159. Therefore, when the Court
10 ultimately held that Coulter was entitled to qualified immunity based on his earlier conduct, this was
11 not because *only* his earlier conduct violated clearly established law. The Court simply did not need to
12 reach the question as to his later conduct. *See id*. at 1160.

13 In fact, by its holding, the Ninth Circuit made clear that the lack of a clearly established right in
14 these circumstances was limited to instances prior to its decision. *See Marsh*, 680 F.3d at 1159; *see
15 also Pauly v. Vasquez*, 2016 WL 9443732, at *6 (D.N.M. Aug. 10, 2016) ("[T]he Ninth Circuit's
16 observation that *Marsh* was the first case to consider this issue [shows] that the right was not clearly
17 established before May 29, 2012, the date *Marsh* was decided."). It is unlikely that the Court defined
18 the contours of the right too generally by failing to clearly distinguish copying from disseminating.
19 However, it more logically follows that the Court merely addressed the conduct separately based upon
20 the allegations, Coulter's status as a government official, and the procedural history of the case, and as
21 a separate inquiry, addressed the entirety of Coulter's conduct in determining whether, from that point
22 forward, the right implicated was clearly established for purposes of qualified immunity.

23 Taking the allegations as true at this stage, Defendants, motivated by ill-will and morbid
24 gossip, took photographs of Mr. Romero's mutilated remains and shared them with others not
25 involved in the murder investigation, including "colleagues," "CDCR employees," "CDCR inmates,"
26 "non-CDCR employees," "non-authorized CDCR personnel," "civilians," and/or "members of the
27 public." (*See* Doc. 21 at ¶¶ 18-19, 36, 41.) The contours of the right established by the Ninth Circuit in
28 *Marsh* are sufficiently clear: the Fourteenth Amendment protects "a parent's right to control the

physical remains, memory and images of a deceased child against *unwarranted public exploitation by the government*." 680 F.3d at 1154 (emphasis added). The Ninth Circuit also held that the "[m]utilation of a deceased family member's body, desecration of the burial site and *public display of death images* are the kind of conduct that is likely to cause the family profound grief and therefore 'shocks the conscience' and 'offend[s] the community's sense of fair play and decency." *Id*. at 1155 (emphasis added) (quoting *Rochin v. California,* 342 U.S. 165, 172-73 (1952)).

Therefore, although the specific conduct in *Marsh* was decided in the context of copying and disseminating death photographs to the press, the "unwarranted public exploitation" and "public display of death images" are implicated by Defendants' conduct. The "controlling law" need not be on all fours. *al-Kidd*, 563 U.S. at 741; *Sabra*, 44 F.4th at 886-87; *Schwenk*, 204 F.3d at 1197. Given this precedent, the Court concludes that when Defendants shared the photographs of Mr. Romero's remains for personal purposes, they had "fair warning" that their conduct was unlawful, and "every reasonable [prison] official would have understood that what he is doing violates that right." *Id*.

At this stage, this supports a claim that the officials' conduct violated a clearly established constitutional right. *See Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (holding that at the motion-to-dismiss stage, "[i]f the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims"). Therefore, Burnes is not entitled to qualified immunity and his motion to dismiss is **DENIED** as to Plaintiff's section 1983 substantive due process claim.

### B.   Breach of mandatory duty

Remaining before the Court is Plaintiff's claim for breach of mandatory duty under California law.[12] Plaintiff alleges that Defendants "violated mandatory duties including, but not limited to, those

---

[12] The FAC asserts claims for breach of mandatory duty, negligence, and invasion of privacy under state law. (*See* Doc. 21 at ¶¶ 29-45.) Burnes concedes in his reply brief that Plaintiff sufficiently pleads claims for negligence and invasion of privacy. (*See* Doc. 25 at 7 n.1.) Nonetheless, he maintains that the Court should decline to exercise supplemental jurisdiction over all state law claims because Plaintiff fails to state a federal claim. (*Id*.) Because the Court finds that Plaintiff states a federal claim under 42 U.S.C. § 1983, Burnes' motion to dismiss is **DENIED as moot** as to Plaintiff's negligence and invasion of privacy claims.

13

set forth in" California Penal Code § 647.9 [13] and California Civil Procedure Code § 129. (Doc. 21 at ¶¶ 29-32.) Burnes contends this claim fails because California Civil Procedure Code § 129 does not create a mandatory duty in these circumstances, where the FAC alleges that the photographs at issue "were taken by one or more CDCR employees, and does not allege that they were taken by or for the coroner." (Doc. 22-1, citing Doc. 21 at ¶¶ 17-19.) California Civil Procedure Code § 129 provides that:

> a copy, reproduction, or facsimile of any kind of a photograph, negative, or print, including instant photographs and video recordings, of the body, or any portion of the body, of a deceased person, taken by or for the coroner at the scene of death or in the course of a post mortem examination or autopsy, shall not be made or disseminated except as follows[.]

Cal. Civ. Proc. Code § 129(a). Section 129(a)(1) sets forth a list of exceptions, none of which are applicable to this action. In response to Burnes' argument, Plaintiff contends that "Section 129 explicitly states that photograph [sic] 'of the body, or any portion of the body, of a deceased person,' 'shall not be made or disseminated,' except under a very limited set of circumstances described 'except as follows.'" (Doc. 23 at 12, quoting Cal. Civ. Proc. Code § 129.) She continues that the FAC "explicitly states that Defendant Burns [sic] took photos of Mr. Romero's remains while on duty and in an area where only first responders were allowed, then shared photos of grotesque images of Luis Romero's remains," thereby breaching "Section 129's mandatory duty not to make or disseminate photographs of a deceased person." (*Id.*)

However, Plaintiff fails to acknowledge Burnes' argument and omits a key component of section 129—it applies to "photographs … of the body … taken by or for the coroner at the scene of death or in the course of a post mortem examination or autopsy." Cal. Civ. Proc. Code § 129(a). The implication of Plaintiff's argument, that Burnes took these photos for the coroner, such to apply § 129

---

[13] In her opposition, Plaintiff fails to address the arguments raised in Burnes' motion to dismiss relating to California Penal Code § 647.9. (*See* Doc. 24.) Accordingly, the Court deems the arguments as conceded. To this extent, the Court will only consider the claim under California Civil Procedure Code § 129. *See Garrett v. City of Los Angeles*, 2014 WL 11397949, at *11 (C.D. Cal. Mar. 3, 2014) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)). Relatedly, because this claim also fails under section 129, the Court need not reach Burnes' remaining arguments in support of dismissal.

is flatly contradicted by the complaint. Doc. 21 at 9 ["[T]aking and sharing grisly photographs of Mr. Romero's remains [was] for no legitimate government purpose . . ."]

Plaintiff's reliance on the Ninth Circuit's discussion of section 129 in *Marsh* is unhelpful. *Marsh* unequivocally involved autopsy photos. Indeed, the Ninth Circuit quoted legislative history describing the purpose of section 129 "as vindicating the family of a deceased person's … right of privacy to limit reproduction of gruesome autopsy photographs." 680 F.3d at 1156 (internal quotation marks omitted). Then, the Court proceeded to generally characterize section 129 as proscribing the reproduction of autopsy photographs. *See id*. ("The law provides that no copy of an autopsy photograph may be taken except …."); *see also id*. ("[N]o copy, reproduction, or facsimile of any kind *shall be made* of any [autopsy photograph] …." (emphasis, alteration in original).

Though the Court appreciates that the goal of section 129 would be furthered by extending its prohibitions to all photographs taken of decedents, this is a question for the Legislature. Consequently, because the photographs at issue were not "taken by or for the coroner at the scene of death" and were not taken "in the course of a post mortem examination or autopsy," on its face section 129 does not apply. Cal. Civ. Proc. Code § 129(a). Accordingly, this claim is **DISMISSED without leave to amend**.

### C. Leave to amend

Plaintiff requests leave to amend should the Court grant the motion to dismiss. (Doc. 23 at 16.) Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations and internal quotation marks omitted). When dismissing a complaint, "a district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Because amending the complaint related to the mandatory duty claim under section 129 would

require the plaintiff to allege that the photographs were taken for the coroner, which is diametrically opposed to the complaint as it stands, and would require her to plead contrary to the factual allegations made thus far, the Court finds that she cannot, consistent with her duties under Rule 11, amend the complaint to cure the deficiency related to California Code of Civil Procedure section 129. Thus, the Court **DENIES** leave to amend.

## IV.     Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1. Defendant Burnes' motion to dismiss (Doc. 22) is **GRANTED** in part and **DENIED** in part as follows:
    a. The motion is **GRANTED** without leave to amend as to Plaintiff's breach of mandatory duty claim.
    b. The motion is **DENIED** as to Plaintiff's substantive due process claim under 42 U.S.C. § 1983.
    c. The motion is **DENIED as moot** as to Plaintiff's negligence and invasion of privacy claims.
2. **Within 30 days**, Plaintiff **SHALL** take all necessary action to serve the newly added defendants *and* to effect service.
3. Defendant Burnes **SHALL** file his answer within 30 days.
4. The Court refers the matter to Magistrate Judge McAuliffe to set and conduct the scheduling conference.

IT IS SO ORDERED.

Dated:   **March 28, 2024**                                   /s/ Jennifer L. Thurston
                                                              UNITED STATES DISTRICT JUDGE