Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH BURNES, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>    Defendants. | Case No. 1:21-cv-01349-LHR-BAM<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983 and SUPPLEMENTAL STATE CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.    On or about March 7, 2019, CDCR inmate Luis Romero was transferred from Mule Creek State Prison to California State Prison, Corcoran. Corcoran prison officials chose to bypass the standardized administrative committee process that is required before forcing one inmate to share the cell of another, and rushed to assign Mr. Romero to the same cell as convicted murderer, inmate Jaime Osuna. Mr. Osuna had not had a cellmate at Corcoran prior to this assignment. Corcoran officials had already been put on notice that Mr. Osuna was uniquely unfit to be housed with a cellmate, as he had engaged in multiple acts of violence against fellow inmates, had

1

been charged with attempted murder as a result of one such incident, and had been recommended for placement in a psychiatric ward rather than a prison. On March 8, 2019, despite having received these warnings about Mr. Osuna, and despite taking the unusual step of expediting Mr. Romero's placement, Corcoran prison officials chose to bypass the standardized process and then failed to conduct regularly scheduled nightly safety checks of Mr. Romero's new cell. Even after a bedsheet was visibly draped along the bars inside this cell, preventing anyone outside from peering in, no Corcoran prison official bothered to conduct a routine safety check during the evening of March 8, 2019. In the early morning hours of March 9, 2019, Corcoran prison officials finally conducted a safety check and looked on the other side of the bedsheet. At that point, Mr. Romero was found decapitated, and Mr. Osuna was found wearing a necklace made of Mr. Romero's body parts. Mr. Romero's body parts were then photographed by prison officials, who shared and distributed the gruesome photographs, including to non-prison officials. By 2020 and 2021, gruesome photographs of Mr. Romero's remains had been posted online and on social media.

## JURISDICTION AND VENUE

2.  This case arises under 42 U.S.C. § 1983, the Fourteenth Amendments of the United States Constitution, and various state-law governmental tort statutes. Jurisdiction in this Honorable Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff's state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in Eastern District of California pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred in Kings County, California. This is an action for damages and such other and further relief as may be consistent with law pursuant to 42 U.S.C. § 1983, to redress violations of the decedent's rights protected by the United States Constitution, by persons acting under color of law.

**PARTIES**

4. Plaintiff Dora Solares is the mother of Luis Romero, deceased ("the decedent"). She is the mother of Mr. Romero.

5. Defendant Joseph Burnes ("Burnes") is a California Department of Corrections & Rehabilitation (CDCR) Sergeant who was working at the California State Prison, Corcoran at the time of the incident. He is sued in his individual capacity. Defendant Erik Beam ("Beam") is a California Department of Corrections & Rehabilitation (CDCR) Lieutenant who was working at Salinas Valley State Prison (SVSP) at the time of the incident. He is sued in his individual capacity. Defendant Jacob Fugate ("Fugate") is a California Department of Corrections & Rehabilitation (CDCR) Correctional Officer who was working at the California State Prison, Corcoran at the time of the incident. He is sued in his individual capacity.

6. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 2 through 15, inclusive, and therefore sues these defendants by such fictitious names, in their individual capacities. Plaintiff is informed, believes and alleges that each of the fictitiously named defendants is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to and described, and thereby illegally caused the injuries, damages, and violations and/or deprivations of rights hereinafter alleged. Plaintiff will seek leave of Court to amend this Complaint and state the true names and/or capacities of said fictitiously named defendants when the same have been ascertained.

7. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Burnes, Fugate, and Does 2 through 15, inclusive, worked and resided in Kings County, State of California. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Burnes and Does 1 through 15, inclusive, were employees, agents and/or servants of the CDCR, employed at the California State Prison, Corcoran, and acted within the course and scope of said employment, agency and/or service, and acted under color of state

3

1 law.

2   8.   The reason why Plaintiff is ignorant of the true names and capacities of
3 Defendants sued herein as Does, inclusive, is that same have been unascertainable as of
4 the date of filing of this complaint, as many of these Does may be CDCR officers
5 and/or civilian employee agents, or employees, agents and representatives of the
6 CDCR, and as such many of their records are protected by state statute and can only
7 reasonably be ascertained through the discovery process. The individual defendants
8 were at all times mentioned herein duly appointed, qualified and acting officers of the
9 CDCR, acting within the course and scope of such employment with the CDCR, and
10 acted under color of the law of the State of California.

11 **PROCEDURAL HISTORY**

12   9.   Pursuant to Government Code § 910, Plaintiff presented a timely
13 appropriate claim for damages and a $25 check for the required tort claim fee, on or
14 around September 9, 2021, less than six months after the incident of the publication of
15 the photographs online. On September 12, 2019, the State of California cashed the $25
16 check, representing the government tort claim fee. This action is timely.

17 **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

18   10.   On March 2, 2020, Plaintiff Solares filed a federal civil rights complaint on
19 behalf of herself and as successor-in-interest for her deceased son, Luis Romero.
20 (*Solares v. Diaz, et al.*, Eastern District Case No. 1:20-cv-00323-NONE-BAM) The
21 complaint stemmed from the gruesome murder of Mr. Romero at the Corcoran Prison.

22   11.   However, at the time of the filing in March 2020, photographs of Mr.
23 Romero's remains had not become published and/or Ms. Solares had not become
24 aware that such photos had been publicly posted, particularly on the website *Sword and*
25 *Scale* (www.swordandscale.com) and the Facebook and Instagram accounts of *Sword and*
26 *Scale*.

27   12.   After learning of the online publication of gruesome photos of her son's
28 physical remains, Plaintiff's counsel Justin Sterling sent a letter on February 10, 2021, to

4

counsel for defendants, Jeremy Duggan, Deputy Attorney General, demanding that his client take action to request to removal of web content that infringes on copyright per the Digital Millennium Copyright Act ("DMCA").

13. On March 9, 2021, Ms. Solares filed a government tort claim pursuant to Government Code § 910, and although the state of California did not formally deny the claim, on March 18, 2021, it did cash the § 910 claim check for $25.

**FACTS**

14. On or about March 7, 2019, CDCR inmate Luis Romero (Inmate # H56733) was transferred from Mule Creek State Prison to California State Prison, Corcoran (hereinafter, "Corcoran"). Corcoran prison officials, including defendant CDCR Sergeant Joseph Burnes, and Does, were required to go through a standardized administrative committee process of matching two inmates in one cell, a process that is described in Paragraph 15. Defendant Burnes and Does chose to not follow this standardized administrative committee process, and rushed to place Mr. Romero with convicted murderer and single-celled inmate Jaime Osuna, despite knowing that Osuna was a danger to anyone around him.

15. On the evening of March 8, 2019, however, defendants Burnes and Does did not enforce the normal rules, despite being put on notice of the danger that Osuna posed to other inmates in general, and despite being aware of the fact that Osuna had not been permitted to share a cell with anyone before. Moreover, Burnes and Doe defendants, who were the correctional officers on shift over the night, failed to make regular checks despite a bedsheet draped inside Romero and Osuna's cell that evening, which visibly prevented proper monitoring and would have required the inmates to take it down, under Corcoran's own rules.

16. Mr. Romero's remains were then mutilated by Osuna. Romero's right ear was removed by Jamie Osuna. Romero's eyes were forcibly detached by Osuna, and Romero's left eye had been stabbed. The underlying rib segment was removed and Romero's left lung was removed in two parts. Heinously, Osuna decapitated Mr.

5

1 Romero. Crime scene photos taken prior to Romero being removed from the cell
2 showed Romero's body had been posed in a way that, if possible, made the full
3 decapitation even more shocking. Jamie Osuna had made a necklace for himself using
4 Romero's body parts and organs. Osuna was found with the murder weapon believed
5 to have been manufactured from a razor with a string around it.

6     17.    The horror or Mr. Romero's death was compounded by the fact that
7 CDCR officials defendants Burnes, Fugate and Does 2 through 15, took, or permitted
8 others to take, photographs of Mr. Romero's remains while in uniform, on duty, and in
9 an area where public access was prohibited and only first responders employed by the
10 CDCR were allowed within the Corcoran Prison. After the photos were taken,
11 Defendant Burnes, Fugate, Beam and Does 2 through 15 possessed and shared them,
12 and/or permitted other CDCR employees under their supervision to possess and share
13 these photographs, which in turn allowed these photographs to be leaked publicly.  In
14 2019, after the murder of Romero, Defendant Beam received at least three grisly
15 photographs of a decapitated Romero from the crime scene and shared it with others.
16 Specifically, even though he did not work at Corcoran and had no official reason to
17 possess images from a crime scene there, Defendant Beam emailed grisly crime scene
18 photographs of the decapitated Romero from his personal Yahoo email account to
19 over ten individuals. On a later date in 2019, Beam emailed at least one grisly crime
20 scene photographs of a decapitated Romero to his work CDCR email address and
21 multiple CDCR employees who worked at SVSP and had nothing to do with the
22 investigation of Romero's homicide. By sending these email with at least one grisly
23 crime scene images attached, Beam prompted the viral spread of a highly sensitive
24 image of a still-open crime investigation: at least 29 emails included a grisly crime scene
25 image of the decapitated Romero. One person who received an email of the image
26 responded, "Wow. Thank you." Beam sent multiple emails of the crime scene image
27 with the glib message "Work can always get worse." To make matters worse, Beam
28 then lied to investigators about the details of his involvement and tried to cover up his

6

heinous actions.

18. The grisly photographs of Mr. Romero's remains have since been publicly posted, particularly on the website *Sword and Scale* (www.swordandscale.com) and the Facebook and Instagram accounts of *Sword and Scale*. As a result, Plaintiff had the horrific experience of witnessing the photographs and in knowing that these photographs of her mutilated son had been seen by the general public, a severe disrespect to his mortal remains.

## DAMAGES

19. As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiff suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiff to sustain general damages in a sum to be determined at trial.

20. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered the denial of her fundamental constitutional rights guaranteed by the Fourteenth Amendments of the United States Constitution, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

21. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff incurred and/or will continue to incur medical expenses, including psychological treatment.

22. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered past and future losses of income that have caused her to sustain economic damages in a sum to be determined at trial.

23. Defendant Burnes and individual Doe defendants acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive the decedent of his constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial in this matter. Plaintiff also seeks attorneys' fees.

## FIRST CLAIM FOR RELIEF

## Violation of Civil Rights – 42 U.S.C. § 1983

## 14th Amendment

**(Against Defendants Burnes, Fugate, Beam and Does 1 through 15)**

24. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

25. By taking and/or sharing photos of Luis Romero's remains without any legitimate governmental purpose, defendants Burnes, Fugate, Beam and other CDCR prison guards, Does 1 through 15, deprived Plaintiff of her substantive due process right to control the physical remains, memory, and death images of her deceased child. *See March v. Cnty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012). In taking these actions, defendants Burnes, Beam and Does 1 through 15 acted in a manner that shocks the conscience and offends the community's sense of fair play and decency.

26. Defendants Burnes, Fugate, Beam, and Does 1 through 15 were acting under color of state law at the time of their actions. Defendants Burnes, Beam and Does 1 through 15 took or shared photos of Mr. Romero's remains while in uniform, on duty, and in an area where public access was prohibited and only first responders employed by the CDCR were allowed within the Corcoran Prison. Defendant Burnes, Fugate, Beam and Does 1 through 15 possessed and shared them, and/or permitted other CDCR employees under their supervision to possess and share them, while in uniform and/or on duty, or otherwise in connection with or by virtue of their employment with the CDCR.

8

27. As a direct and proximate result of Defendants' conduct, in photographing and sharing photographs of Mr. Romero's mutilated body, defendants Burnes, Fugate, Beam and Does 1 through 15 caused harm to Plaintiff and Plaintiff was damaged as alleged herein above.

28. The aforementioned misconduct of the named defendants was of such an egregious nature that it entitles the plaintiffs to an award of exemplary and punitive damages according to proof and as permitted by law.

## SECOND CLAIM FOR RELIEF

### Negligence

**(Against Defendants Burnes, Fugate, Beam and Does 1 through 15)**

29. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

30. Pursuant to California Government Code section 820(a), public employees are liable for injuries caused by their acts or omissions to the same extent as a private person.

31. Defendants Burnes, Fugate, Beam, and Doe defendants owed a duty to Plaintiff to use ordinary care in their treatment of Mr. Romero's physical remains, including an obligation to refrain from taking and/or sharing highly sensitive photographs of them for persona, non-law-enforcement purposes, in violation of Cal. Civ. Code § 1714. Defendants Burnes and Doe defendants additionally owed a duty of care to Plaintiff to use ordinary care in preventing dissemination of any images of the remains of Mr. Romero once the images were created and/or were within their possession.

32. Defendants Burnes, Fugate, Beam and Doe defendants breached their duty to Plaintiff by sharing photos of Mr. Romero's mutilated body and physical remains for personal non-law-enforcement purposes, including by electronic transmission and with members of the public. Defendants Burnes, Fugate, Beam and Doe defendants foresaw or should have foreseen that their conduct described above

9

would injure Plaintiff.

33. As a direct and proximate result of the conduct of Burnes, Fugate, Beam and Doe defendants 1 through 15, Plaintiff has suffered (and continues to suffer) severe emotional distress in an amount to be proven at trial.

34. The conduct of Burnes, Fugate, Beam and Doe defendants 1 through 15 was willful, wanton, malicious within the meaning of California Civil Code section 3294, entitling Plaintiff to exemplary and punitive damages as to Defendants in an amount appropriate to punish them and to make an example of them to the community.

### THIRD CLAIM FOR RELIEF

### Invasion of Privacy

### (Against Defendants Burnes, Fugate, Beam and Does 1 through 15)

35. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

36. Plaintiff has a privacy interest in the physical remains of her son, Luis Romero.

37. Upon information and belief, Defendants Burnes, Fugate, Beam and Does 1 through 15 disclosed photos of Mr. Romero's remains to multiple members of the public, both in person and electronically.

38. Sharing photos of accident victims' physical remains without any legitimate governmental purpose is offensive and objectionable to a reasonable person of ordinary sensibilities.

39. At the time that Defendants Burnes, Fugate, Beam and Does 1 through 15 shared the photographs of Mr. Romero's remains, no photos of the remains had otherwise been made public. Sharing the graphic images within the photographs served no legitimate public purpose.

40. As a direct and proximate result of Defendants Burnes, Fugate, Beam and Does 1 through 15 disclosing photographs of Mr. Romero's remains, Plaintiff has

suffered (and continues to suffer) severe emotional distress in an amount to be proven at trial.

41. The conduct of the individual defendants and Doe defendants 1 through 15 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Defendants Burnes, Fugate, Beam and Does 1 through 15 who took and shared the photos of Mr. Romero's remains had access to those images by virtue of their employment with the CDCR. These acts by Defendants Burnes and Does 1 through 15 were committed within the course and scope of their employment, and punitive damages should be imposed as an example to the community that such behavior from peace officers is beyond the pale.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows against defendants:

1. General and Special damages, including both survival and wrongful death damages, in an amount according to proof;
2. Exemplary and punitive damages against each individual and Doe defendant, in amounts according to proof;
4. Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and
5. Such other relief as may be warranted or as is just and proper.

**LAW OFFICES OF JUSTIN STERLING**

DATED: September 16, 2025

By: */s/ Justin Sterling*
Justin Sterling
Attorney for Plaintiff,
DORA SOLARES

11

DATED: September 16, 2025

**LAW OFFICES OF ERIN DARLING**

By: */s/ Erin Darling*
Erin Darling
Attorney for Plaintiff,
DORA SOLARES

## JURY DEMAND

Plaintiff Dora Solares hereby demands trial by jury on all issues so triable.

DATED: September 16, 2025

**LAW OFFICES OF JUSTIN STERLING**

By: */s/ Justin Sterling*
Justin Sterling
Attorney for Plaintiff,
DORA SOLARES

DATED: September 16, 2025

**LAW OFFICES OF ERIN DARLING**

By: */s/ Erin Darling*
Erin Darling
Attorney for Plaintiff,
DORA SOLARES