ROB BONTA, State Bar No. 202668
Attorney General of California
JON S. ALLIN, State Bar No. 155069
Supervising Deputy Attorney General
JEREMY DUGGAN, State Bar No. 229854
Deputy Attorney General
DAVID E. KUCHINSKY, State Bar No. 292861
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 95814
Telephone: (916) 210-7666
Fax: (916) 324-5205
E-mail: David.Kuchinsky@doj.ca.gov
*Attorneys for Defendants J. Burnes*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DORA SOLARES,**<br><br>Plaintiff,<br><br>**v.**<br><br>**JOSEPH BURNS, et al.,**<br><br>Defendants. | 1:21-cv-01349-LHR-FJS<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Lee. H. Rosenthal<br>Trial Date: Not set.<br>Action Filed: September 8, 2021 |

## INTRODUCTION

On March 9, 2019, Luis Romero, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR), was found murdered inside his cell in the 4A1R housing unit at California State Prison, Corcoran. As part of their investigation that day, Corcoran staff photographed the scene and Romero's remains. Later, photographs of the crime scene appeared online, and Plaintiff brought suit against several CDCR staff members, including J. Burnes, who was a Correctional Sergeant assigned to the 4A1R housing unit in early 2019. Plaintiff claims that Burnes took and shared photographs of Luis Romero's remains.

However, the undisputed evidence in this case shows that Burnes, who was on vacation from March 8, 2019, to March 24, 2019, and not at the prison at all during that time, never saw

the crime scene, never took photographs of the scene, and never viewed, possessed, shared, distributed, disclosed, or disseminated any images of the scene or of Romero's body to any member of the public or to any person. Burnes never allowed or caused such images to be leaked to the public or posted on the internet and has never viewed such images on the internet. Burnes has never known about or allowed any employee under his supervision to view, possess, share, or distribute any such images.

Aside from being a Correctional Sergeant assigned to 4A1R in early 2019, Defendant Burnes has no nexus to the claims in this case and was not involved in any way with taking or the purported sharing or distribution of photographs of inmate Romero or the scene. Accordingly, he is entitled to summary judgment and the Court should dismiss him from this case with prejudice. Additionally, because there is no evidence that Burnes committed any constitutional violation with respect to photographs of Romero, he is entitled to qualified immunity.

## STATEMENT OF UNDISPUTED FACTS

On the morning of March 9, 2019, Luis Romero, an inmate in the custody of CDCR, was found murdered inside his cell in the 4A1R housing unit at California State Prison, Corcoran. (Defendant's Separate Statement of Undisputed Facts (UF) ¶ 1.) As part of their investigation, California State Prison, Corcoran staff took photographs of the scene and Romero's remains. (UF ¶ 2.) Plaintiff alleges in her operative complaint that staff, including Defendant Burnes, shared and distributed these photographs to other CDCR staff and non-prison officials, and that the photographs were posted online and on social media. (UF ¶ 3.)

Defendant Burnes is an employee of CDCR who was assigned to California State Prison, Corcoran as a Correctional Sergeant supervising Facility 4A, which includes housing unit 4A1R, during the events alleged in this lawsuit. (UF ¶ 4.) Defendant Burnes was not working on March 9, 2019, when Romero's body was discovered and photographed; Burnes was on vacation from 10:00 p.m. on March 7, 2019, through March 24, 2019, and did not go to California State Prison, Corcoran at all during that time frame. (UF ¶ 5.)

Defendant Burnes did not participate in the investigation of the scene in any way, did not take any photographs of Romero's body or of the scene, and did not permit others to take photographs of Romero's body or the scene. (UF ¶ 6.)

Defendant Burnes has never viewed, possessed, shared, distributed, disclosed, or disseminated any images of the scene or of Romero's body. (UF ¶ 7.) Defendant Burnes has never allowed or caused images of Romero's body or the crime scene to be leaked to the public or posted on the internet. (UF ¶ 8.) Defendant Burnes has never discussed images of the scene with any CDCR employee or any other person and has never seen images of the scene in the media or on the internet. (UF ¶ 9.) Defendant Burnes has never known or allowed any employee under his supervision to view, possess, share, or distribute any images of Romero's body or the scene. (UF ¶ 10.)

Defendant Burnes served Plaintiff Solares with Requests for Admission in this matter on October 11, 2024. (UF ¶ 11.) Plaintiff Solares did not respond to the Requests for Admission within thirty days. (UF ¶ 12.) The Requests for Admission served on Plaintiff on October 11, 2024 included a request to admit that "Defendant Burnes did not take any images (including photographs and electronic images) of Luis Romero's remains." (UF ¶ 13.) The Requests for Admission served on Plaintiff on October 11, 2024 included a request to admit that "Defendant Burnes never possessed any images (including photographs and electronic images) of Luis Romero's remains." (UF ¶ 14.) The Requests for Admission served on Plaintiff on October 11, 2024 included a request to admit that "Defendant Burnes never shared any images (including photographs and electronic images) of Luis Romero's remains." (UF ¶ 15.) The Requests for Admission served on Plaintiff on October 11, 2024 included a request to admit that "No act or omission on the part of Defendant Burnes caused any photo of Luis Romero to be published online." (UF ¶ 16.) The Requests for Admission served on Plaintiff on October 11, 2024 included a request to admit that "No act or omission on the part of Defendant Burnes caused any photo of Luis Romero to be shared." (UF ¶ 17.)

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of such cause of action upon which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then the nonmoving party must identify specific facts to demonstrate that there is a dispute as to material facts on those elements that the moving party has contested. Fed. R. Civ. P. 56(c). The nonmoving party cannot simply rely on the pleadings and must do more than make "conclusory assertions [in] an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Summary judgment must be granted where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Abromson v. American Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997). "[W]hen a defendant moves for summary judgment, the trial court must determine from the record whether 'a fair minded jury could return a verdict for the plaintiff on the evidence presented.'" *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.3d 1539, 1541-1542 (9th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "The possibility that the plaintiff may discredit the defendant's testimony at trial is not enough for the plaintiff to defeat a properly presented motion." *Id.* at 1542.

## ARGUMENT

### I. DEFENDANT BURNES PLAYED NO ROLE IN PHOTOGRAPHING ROMERO'S REMAINS OR THE SCENE AND HAS NEVER POSSESSED, VIEWED, OR SHARED ANY IMAGES OF THE SCENE OR OF ROMERO'S BODY.

#### A. Personal Participation is Required for § 1983 Claims.

A plaintiff in a § 1983 action must establish that the defendant's conduct was the actionable cause of the claimed injury, which requires both causation in fact, also called but-for causation, and proximate cause. *Chaudhry v. Aragon*, 68 F.4th 1161, 1169-70 & n.11-12 (9th Cir. 2023); "[A] person 'subjects' another to the deprivation of a constitutional right, within the meaning of §

1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs*., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). A state official whose actions do not themselves violate the Constitution may be held liable under § 1983 "only if the official is an 'integral participant' in the unlawful act." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022). When making the causation determination, the court "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988).

**B. Burnes Did Not Violate the Fourteenth Amendment.**

Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their incarcerated child or parent through official conduct. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Official conduct that "shocks the conscience" in depriving parents of that interest is cognizable as a violation of due process. *Porter v. Osborne,* 546 F.3d 1131, 1137 (9th Cir. 2008).

The Ninth Circuit has recognized that parents have a constitutionally protected liberty interest in the privacy of a child's death images. *March v. County of San Diego*, 680 F.3d 1148, 1160 (9th Cir. 2012). To violate substantive due process, the alleged conduct by the defendant must "shock the conscience" and "offend the community's sense of fair play and decency." *Id*. at 1154-1155.

Here, it is undisputed that Defendant Burnes had no connection to any purported viewing or sharing of any images of Romero's remains. Burnes was not at work when Romero's body was discovered and photographed, and has never viewed, possessed, or shared any images of Romero's body or the scene. (UF ¶¶ 5-11.) There is no evidence by which a jury could find for Plaintiff on the any of the claims against Burnes.

In addition, Plaintiff has admitted that Burnes did not take, possess, view, or share any images of Romero's remains. (UF ¶¶ 11-17.) In October 2024, Defendant Burnes served Requests for Admission on Plaintiff Solares requesting that Solares admit that Burnes did not

take, possess, view, or share any images of Romero's remains. (UF ¶¶ 13-17.) Plaintiff Solares did not respond to the Requests for Admission. (UF ¶ 12.) Under Federal Rule of Civil Procedure 36(a)(3), a Request for Admission is "admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection." Plaintiff has admitted that Burnes did not take, possess, view, or share any images of Romero's remains. (UF ¶¶ 11-17.)

A violation of the Fourteenth Amendment substantive due process claim requires that Burnes engaged in conduct that shocks the conscience, but here it is undisputed that Burnes did not take, view, or share any photographs, nor did he participate in the investigation. (UF ¶ 7.) He has no connection to any purported photograph that Plaintiff saw online or that was shared between individuals. (UF ¶¶ 7-9.) Burnes did not deprive Plaintiff of any liberty interest and did not violate Plaintiff's or Romero's due process. He cannot be held liable for a violation of the Fourteenth Amendment and is entitled to judgment as a matter of law as to Plaintiff's Fourteenth Amendment claim.

**C. Burnes was Not Negligent.**

"In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 629 [internal alterations omitted].

While causation is normally a question of fact, "causation may be decided as a question of law if under the undisputed facts, "there is no room for a reasonable difference of opinion." *Romero v. Los Angeles Rams*, (2023) 91 Cal. App. 5th 562, 568. "On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id.* at 571-572.

Plaintiff cannot establish that Burnes breached any duty of care he owed to Plaintiff or to Romero, nor can she establish causation. Burnes did not take any photographs or even view the scene. (UF ¶ 7.) He was on vacation from March 8, 2019, to March 24, 2019, and did not go to the prison during that time. (UF ¶ 5.) He has never viewed, possessed, or shared any photographs of the scene or of Romero's remains, nor has he allowed or caused images of Romero's remains to be distributed to the public or posted on the internet. (UF ¶¶ 8-9.) There is no nexus between Burnes and the alleged distribution of photographs of Romero's remains. Plaintiff cannot establish the required elements of breach and causation because the evidence shows that Burnes was not involved at all. Accordingly, Burnes is entitled to summary judgment as to Plaintiff's negligence claim.

### D. Burnes Did Not Invade Plaintiff's Privacy.

To prove that Burnes invaded her privacy, Plaintiff must show that she possesses a legally protected privacy interest, that she maintained a reasonable expectation of privacy, that Burnes intruded upon that privacy interest, and that the alleged intrusion is so serious as to constitute an egregious breach of the social norms such that the breach is highly offensive to a reasonable person. Cal. Const., art. I, § 1; *Mathews v. Becerra* (2019) 8 Cal.5th 756, 769; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). "Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606.

As discussed above, it is undisputed that Burnes was not at work on the date Romero's body was discovered and did not return until more than two weeks later. (UF ¶¶ 5-6.) He played no role in the photographing of Romero, has never seen, possessed, or shared any such photographs, and has never known or allowed his staff to possess or share such photographs. (UF ¶¶ 7-11.) Because it is undisputed that he played no role in the alleged events, Plaintiff cannot establish that he intruded upon any privacy interest that she held. She similarly cannot show that

Burnes committed any act with respect to images of Romero's body that was highly offensive to a reasonable person. Accordingly, because there is no nexus between Burnes and the alleged sharing of photographs, Plaintiff cannot prove that Burnes committed a violation of her privacy. The Court should grant summary judgment in Burnes's favor.

## II. DEFENDANT BURNES IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE HE DID NOT COMMIT ANY CONSTITUTIONAL VIOLATIONS.

### A. Standard for Qualified Immunity

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts consider, in either order, whether the alleged facts constitute a constitutional violation and whether the constitutional right at issue was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A favorable determination for the defendants on either establishes qualified immunity. *Pearson*, 555 U.S. at 236.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). To overcome qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam) (quoting *al-Kidd*, 563 U.S. at 741). Plaintiff bears the burden of demonstrating that the constitutional right in question was clearly established at the time officials acted. *May v. Baldwin*, 109 F.3d 557, 561 (9th Cir. 1997).

The right at issue must be framed specifically and the focus is "whether the violative nature of *particular* conduct is clearly established," and whether the unlawfulness of the official's conduct was apparent. *Ziglar*, 582 U.S. 150–51 (citing *Mullenix v. Luna*, 577 U.S. at 12 (emphasis in original).) "[I]f a reasonable officer might not have known for certain that the conduct was unlawful[,] then the officer is immune from liability." *Id*. at 152.

**B. Defendant Burnes Did Not Commit Any Constitutional Violations.**

As discussed in detail above, there is no evidence in this case that Burnes committed any constitutional violation with respect to the claims in this case. In addition, there is no clearly established law holding that, under such circumstances, Burnes being on vacation and having nothing to do with this matter would violate any law.

Burnes was not present on March 9, 2019, when Romero's body was discovered and photographed, was on vacation from 10:00 p.m. on March 7, 2019, through March 24, 2019, and did not go to California State Prison, Corcoran at all during that time frame. (UF ¶ 5.) He did not participate in the investigation of the scene in any way, did not take any photographs of Romero's body or of the scene, and did not permit others to take photographs of Romero's body or the scene. (UF ¶ 6.) Burnes has never viewed, possessed, shared, distributed, disclosed, or disseminated any images of the scene or of Romero's body, and has never allowed or caused images of Romero's body or the crime scene to be leaked to the public or posted on the internet. (UF ¶¶ 7-8.) He has never discussed images of the scene with any CDCR employee or any other person and has never seen images of the scene in the media or on the internet, and has never known or allowed any employee under his supervision to view, possess, share, or distribute any images of Romero's body or the scene. (UF ¶¶ 9-10.) There is no evidence to establish that Burnes committed any constitutional violation with respect to photographs of Romero.

Accordingly, because there is no evidence of a constitutional violation, Burnes is entitled to qualified immunity from Plaintiff's claims.

## CONCLUSION

The undisputed evidence shows that Burnes was not present when Romero's body was found or when any images were taken, and it is undisputed that Burnes has never viewed, possessed, shared, distributed, disclosed, or disseminated any images of the scene or of Romero's body to any member of the public or to any member of CDCR. Accordingly, because there is no connection between Burnes and the claims in this lawsuit, Burnes is entitled to judgment as a matter of law and the Court should dismiss him from this case with prejudice. Additionally,

because there is no evidence that Burnes committed any constitutional violation with respect to photographs of Romero, he is entitled to qualified immunity.

Dated: August 14, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JON S. ALLIN
Supervising Deputy Attorney General
JEREMY DUGGAN
Deputy Attorney General

/s/ David E. Kuchinsky

DAVID E. KUCHINSKY
Deputy Attorney General
*Attorneys for Defendant J. Burnes*

SA2021304683
95734263.docx

# CERTIFICATE OF SERVICE

Case Name: **Dora Solares v. Joseph Burns, et al.** No. **1:21-CV-01349-LHR-FJS**

I hereby certify that on August 14, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**
- **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
- **DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
- **DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
- **DECLARATION OF J. DUGGAN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
- **DECLARATION OF J. BURNES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on August 14, 2026, at Fresno, California.

| J. Vinton | ***/s/ J. Vinton*** |
|---|---|
| Declarant | Signature |

SA2021304683
95734276.docx