PATRICK E. STOCKALPER, SBN 156954
MOLSHREE GUPTA, SBN 275101
KJAR, MCKENNA & STOCKALPER, LLP
841 Apollo Street, Suite 100
El Segundo, California 90245
Telephone (424) 217-3026
Facsimile (424) 367-0400
pstockalper@kmslegal.com
mgupta@kmslegal.com

Attorneys for Defendant, **JACOB FUGATE**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

DORA SOLARES,

Plaintiff,

v.

JOSEPH BURNES, in his individual, and DOES 1 TO 15, in their individual capacities,

Defendants.

**Case No.: 1:21-cv-01349-LHR (FJSx)**

**DEFENDANT JACOB FUGATE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION**

*[Filed concurrently with Notice of Motion; Separate Statement of Undisputed Material Facts; Declaration of Jacob Fugate; Declaration of Molshree Gupta; [Proposed] Order]*

Action Filed: September 8, 2021
Pretrial Conference: XXX
Trial Date: XXX

Assigned to:
Hon. Lee H. Rosenthal, District Judge

# TABLE OF CONTENTS


Table of Authorities……………………………………………………………….………..3

Memorandum Of Points and Authorities…………………………………………………5

I. Introduction……………………………………………………………………………..5

II. Statement Of Undisputed Facts…………………………………………………………5

A. Mr. Fugate Took the Scene Photos as an ISU Backup Evidence Officer…..6

B. Mr. Fugate's Conduct Approximately Three Weeks After the March 9, 2019, Incident…………………………………………………………………6

C. Mr. Fugate Showed the Images to Other Corcoran Officers to Try to Process the Trauma from the Incident……………………………………7

D. There is No Evidence that Mr. Fugate Transmitted Crime Scene Images or Otherwise Caused Them to Become Public………………………………..7

i. Mr. Fugate Did not Transmit or Publish Crime Scene Images………7

ii. Plaintiff's Investigation and Discovery has Yielded No Evidence that Mr. Fugate Transmitted or Published Crime Scene Images…………8

E. Plaintiff's Damages in This Action are Attributable Solely to Seeing Crime Scene Images Online…………………………………………………………9

III. Summary Judgment Standard……………………………………………………….10

IV. Plaintiff's Substantive Due Process Claim Under 42 U.S.C. § 1983 Fails As A Matter Of Law……………………………………………………………………………10

A. Plaintiff Lacks Evidence of Public Dissemination or Any Transmission of Crime Scene/Death Images by Mr. Fugate……………………………….11

B. Plaintiff Lacks Evidence of Conduct by Mr. Fugate Which Rises to the Level of a Substantive Due Process Violation……………………………12

C. Plaintiff Lacks Evidence that Mr. Fugate's Conduct Caused Her Injuries..13

D. Mr. Fugate is Entitled to Qualified Immunity……………………………..14

V. Plaintiff's Negligence Claim Fails As A Matter Of Law………………………...14

## TABLE OF CONTENTS (Continued)

A. Plaintiff Cannot Establish Negligence – i.e. that Mr. Fugate Beached a Duty of Care Owed to Her……………………………………….……………..15

i. Plaintiff Cannot Establish a Duty of Care Based on a "Special Relationship"………………………………………………………………….15

ii. Plaintiff Cannot Establish that Mr. Fugate Breached Any Duty of Care Owed to Her………………………………………………………...16

B. Plaintiff Cannot Establish that Mr. Fugate Caused Her Alleged Injuries…17

VI. Plaintiff's Invasion Of Privacy Claim Fails As A Matter Of Law……………….17

VII. Conclusion…………………………………………….……………………….18

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242 ....................10
*Brown v. Metro by T-Mobile* (C.D. Cal. 2024) 768 F. Supp. 3d 1068 ....................11
*Catsouras v. Department of California Highway Patrol* (Cal. Ct. App. 2010) 181 Cal.App.4th 856 ....................15, 16, 17
*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 ....................10
*Chaudhry v. Aragon* (9th Cir. 2023) 68 F.4th 1161 ....................13
*Coyle v. Historic Mission Inn Corp.* (Cal. Ct. App. 2018) 24 Cal. App. 5th 627 ....................17
*Lamorie v. Davis* (D. Ariz. 2020) 485 F. Supp. 3d 1065 ....................11
*Marsh v. Cnty. of San Diego* (9th Cir. 2012) 680 F.3d 1148 ....................10, 11, 12
*Matsushita Electric Industrial Co. v. Zenith Radio Corp.* (1986) 475 U.S. 574....................10
*Nally v. Grace Community Church* (Cal. 1988) 47 Cal.3d 278....................15
*National Archives and Records Administration v. Favish* (2004) 541 U.S. 157 ....................11
*Pearson v. Callahan* (2009) 555 U.S. 223....................14
*Rochin v. California* (1952) 342 U.S. 165....................12
*Rosenbaum v. Washoe Cnty.* (9th Cir. 2011) 663 F.3d 107 ....................12
*Rowland v. Christian* (Cal. 1968) 69 Cal.2d 108....................16
*Saucier v. Katz* (2001) 533 U.S. 194 ....................14
*Shulman v. Group W Productions, Inc.* (Cal. 1998) 18 Cal.4th 200 ....................17
*Thompson v. County of Alameda* (Cal. 1980) 27 Cal.3d 741 ....................16

**Rules**

Fed. R. Civ. P. 56(a) ....................10
Fed. R. Civ. P. 56(g) ....................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action arises from alleged publication or public dissemination of crime scene and death images of Luis Romero (hereinafter, "Decedent"), an inmate in the custody of the California Department of Corrections and Rehabilitation (hereinafter, "CDCR"), who was found murdered inside his cell at California State Prison, Corcoran, on March 9, 2019. As part of the CDCR's homicide investigation that day, Defendant Jacob Fugate (hereinafter, "Mr. Fugate") photographed the scene and Decedent's remains. Plaintiff Dora Solares (hereinafter, "Plaintiff"), Decedent's mother, alleges that Mr. Fugate is liable for "taking and/or sharing photos of [Decedent]'s remains without any legitimate governmental purpose." (Third Amended Complaint (hereinafter, "TAC"), see *ECF #71*, at ¶¶ 5, 17, 25, 31, 37-39.) Plaintiff asserts three (3) causes of action against Mr. Fugate: 1) Substantive Due Process (42 U.S.C. § 1983); 2) Negligence; and 3) Invasion of Privacy. She alleges damages arising from "the horrific experience of witnessing the photographs and in knowing that these photographs of her mutilated son had been seen by the general public," and attributes this harm to "Defendants' conduct, in [] sharing photographs of Mr. Romero's mutilated body." (TAC, *ECF #71*, ¶¶ 18, 27.)

However, there is no evidence that Mr. Fugate distributed, transmitted, disseminated, or otherwise caused the publication of any images of the scene or of Decedent's body. Additionally, because there is no evidence that he committed any constitutional violation with respect to the public dissemination of the crime scene or death images, Fugate is entitled to qualified immunity as a matter of law. Accordingly, Mr. Fugate is entitled to summary judgment or, alternatively, summary adjudication on Plaintiff's claims.

## II. STATEMENT OF UNDISPUTED FACTS

On March 9, 2019, Decedent, an inmate in the custody of the CDCR, was found murdered inside his cell in the 4A1R housing unit at California State Prison, Corcoran. (Fugate's Separate Statement of Undisputed Facts (hereinafter, "UF") ¶ 1.)

### A. Mr. Fugate Took the Scene Photos as an ISU Backup Evidence Officer

At the time of the incident, Mr. Fugate was working at the Corcoran State Prison and was assigned to the Investigative Services Unit (hereinafter, "ISU") as a radio liaison and backup evidence officer. (UF ¶ 2.) As a backup evidence officer, he was required to respond to the location of any incident to collect evidence if the main evidence officer was unavailable. (UF ¶ 3.)

As part of the CDCR's investigation of the March 9, 20219, murder, Mr. Fugate took photographs of the crime scene and Decedent's remains. (UF ¶ 4.) Mr. Fugate recalls there were about three evidence officers, in addition to his Lieutenant and another supervisor, at the scene. (UF ¶ 5.) Mr. Fugate was at the scene for approximately 4 hours and then retuned directly to the ISU office to take photographs of the evidence collected from the scene. (UF ¶ 6.)

Then, "per the procedures in the ISU office," Mr. Fugate downloaded the photographs to the ISU's "squad share" drive by creating an incident folder and labeling the downloaded photos. (UF ¶ 7.) He also prepared an Initial Report summarizing what he did during the investigation on March 9, 2019, and describing about 205 frames which he downloaded to the shared ISU incident folder. (UF ¶ 8.) Additionally, Mr. Fugate copied the scene photographs onto a disc, labeled the disc with the incident number, placed the disc inside an evidence envelope, logged it into evidence, and secured it in a locker inside the main evidence room before he left the prison that day. (UF ¶ 9.)

"[W]ithin a week" of the March 9, 2019, incident, Mr. Fugate learned that "photos of the crime scene were out in the public domain." (UF ¶ 10.)

### B. Mr. Fugate's Conduct Approximately Three Weeks After the March 9, 2019, Incident

About three (3) weeks after the incident, while on duty in the ISU office, Mr. Fugate used his personal cellphone to take three (3) photographs (of different zoom variations) of a crime-scene image displayed on his work computer monitor. (UF ¶ 11.)

When examined why he did so, Mr. Fugate explained that the crime scene was "horrific" and that it "almost seemed fake," and that he took the photographs on his cell phone to "process it later." (UF ¶ 12.) He further explained that while he was at the scene on March 9, 2019, there was "so much going on" and he was "so focused on getting the job done" that he "didn't actually have time to process what [he] was seeing." (UF ¶ 13.)

Mr. Fugate admitted that he intended to "process" the trauma of the incident by speaking to his "lady" (life partner) about it and showing the photographs on his cellphone, but that she refused to see the images and he never tried to show them to her again. (UF ¶ 14.)

**C. <u>Mr. Fugate Showed the Images to Other Corcoran Officers to Try to Process the Trauma from the Incident</u>**

On March 16, 2024, while Mr. Fugate was working as a correctional officer at the Corcoran State Prison, he and two (2) other correctional officers began discussing the March 9, 2019, homicide. (UF ¶ 15.) During this discussion, Mr. Fugate showed a crime scene images on his cellphone to the other officers. (UF ¶ 16.) Mr. Fugate explained that he was trying "to get an understanding [of] and trying to process" the incident; he stated specifically that, "when you see something like that, you got to talk about it" and that it was "easier to talk to people that are in the same profession" because they "go through similar things." (UF ¶ 17.)

**D. <u>There is No Evidence that Mr. Fugate Transmitted Crime Scene Images or Otherwise Caused Them to Become Public</u>**

***i. Mr. Fugate Did Not Transmit or Publish Crime Scene Images***

On March 2, 2026, Mr. Fugate responded to Plaintiff's Request for Admission (hereinafter, "RFA") No. 8, which asked him to admit that he "shared photographs of the crime scene [] from March 9, 2019," with a denial. (UF ¶ 18.) Mr. Fugate also responded to Plaintiff's RFA No. 9, which asked him to admit that he "texted photographs of the crime scene [] from March 9, 2019," with a denial. (UF ¶ 19.) At his deposition on July 17, 2026, Mr. Fugate was not asked whether he shared, texted,

emailed, distributed, transmitted, disseminated, or otherwise caused the publication of any images of the scene or of Decedent's body. (UF ¶ 20.) If asked, Mr. Fugate would have testified, *and he now declares in support of this Motion*, that he did not share, text, email, distribute, transmit, disseminate, or otherwise cause the publication of any images of the scene or of Decedent's body. (UF ¶ 21.)

***ii. Plaintiff's Investigation and Discovery has Yielded No Evidence that Mr. Fugate Transmitted or Published Crime Scene Images***

Additionally, Plaintiff's significant and comprehensive investigation with the CDCR (in two lawsuits) has resulted in the discovery of no evidence that Mr. Fugate transmitted any images of the crime scene or Decedent's body. (UF ¶ 22.) As such, on June 8, 2026, the parties appeared for a Status Conference prior to which Plaintiff raised the issue of seeking Mr. Fugate's cellphone number, which would allow him to subpoena Mr. Fugate's cellphone records and determine whether Mr. Fugate had transmitted the subject crime scene images on his personal cellphone. (UF ¶ 23.) At the June 8, 2026, Status Conference, Plaintiff's counsel agreed that he would limit the subpoena to requests for text message transmissions of photographs from March 2019 to March 2024, and further agreed to allow Mr. Fugate's counsel a "*first look*" at subpoenaed records to search for and produce only those records ordered by the Court. (UF ¶ 24.)

On June 16, 2026, Mr. Fugate provided his cellphone number as a further response to Plaintiff's Interrogatory No. 1, pursuant to Plaintiff's June 8, 2026, on-the-record agreements and the Court's resulting June 8, 2026, Order. (UF ¶ 25.) On June 19, 2026, Plaintiff served a subpoena to Verizon which did not comport with the Court's June 8, 2026, Order, and Plaintiff's counsel thereafter declined to withdraw or amend the subpoena in response to meet and confer efforts by Mr. Fugate's counsel. (UF ¶ 26.) On June 26, 2026, Mr. Fugate was forced to file a timely objection to Plaintiff's subpoena for failure to comply with the Court-ordered scope. (UF ¶ 27).)

On July 13, 2026, Plaintiff's counsel finally agreed to meet and confer with Mr. Fugate counsel in good faith regarding the scope of the Verizon subpoena for Mr. Fugate's cellphone records, and Plaintiff's counsel consequently agreed to prepare an Amended Subpoena and to confer with Mr. Fugate's counsel to confirm agreement as to scope before issuing it. (UF ¶ 28.) Between July 13, 2026, and July 16, 2026, Mr. Fugate's counsel spent significant time conferring with Plaintiff's counsel regarding the amended scope of the Verizon subpoena, which was approved for issuance on July 16, 2026 – more than two weeks before the close of discovery in this action. (UF ¶ 29.)

During his deposition on October 13, 2026, Plaintiff's correctional practices expert, Richard Winistorfer, conceded that he has seen no evidence of Mr. Fugate's transmission of crime scene images from his cellphone. (UF ¶ 30.) In response to follow-up meet and confer correspondence, Plaintiff's counsel confirmed in writing on October 19, 2026, that the amended and "revised subpoena," which was approved for issuance over 3 months ago, "was not served" by Plaintiff. (UF ¶ 31.)

### E. <u>Plaintiff's Damages in This Action are Attributable Solely to Seeing Crime Scene Images Online</u>

On August 13, 2026, Plaintiff made an initial disclosure which included the designation of damages expert, Emin Gharibian, Psy.D., and his Psychological Evaluation Report. (UF ¶ 32.) Therein, Dr. Gharibian noted that Plaintiff "reported intrusive memories and anxiety related to the images that she saw online." (UF ¶ 33.) Based on an interview with Plaintiff, Dr. Gharibian summarized that, though "she had not seen the photos in several years, thinking about or remembering them would cause her distress." (UF ¶ 34.)

As such, Dr. Gharibian's expert report concluded that, "[g]iven the anxiety and memories she has related to seeing photos of her son's remains online, she would meet the criteria for Other Specified Trauma and Stressor Related Disorder (Persistent Response to Trauma with PTSD Like Symptoms)." (UF ¶ 35.) Gharibian's report further concluded that, "[b]ased on her history of chronic depression, which is due to the

murder of her son and seeing the photos online, she would meet the criteria for Persistent Depressive Disorder with Pure Dysthymic Syndrome, Moderate." (UF ¶ 36.)

At his expert deposition on October 14, 2026, Dr. Gharibian confirmed the foregoing conclusions in his report that all of Plaintiff's claimed damages in this action are attributable to seeing the crime scene images online. (UF ¶ 37.)

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. (Fed. R. Civ. P. 56(a).) A fact is material if it might affect the outcome of the action under the governing law, and a dispute is genuine only if a reasonable jury could return a verdict for the nonmoving party. (*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248.)

Where the moving party does not bear the burden of proof at trial, it may satisfy its initial burden by demonstrating an absence of evidence supporting an essential element of the nonmoving party's claim. (*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322–325.) Once the moving party satisfies its initial burden, the nonmoving party must identify specific facts establishing a genuine issue for trial and may not rely merely on allegations or denials in the pleadings. (*Anderson*, supra, 477 U.S. at pp. 248–250; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.* (1986) 475 U.S. 574, 586–587.)

Summary judgment may also be granted as to particular claims or issues where the requirements of Rule 56 are satisfied. (Fed. R. Civ. P. 56(a), (g).)

## IV. PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM UNDER 42 U.S.C. § 1983 FAILS AS A MATTER OF LAW

Plaintiff alleges that she was "deprived [] of her substantive due process right to control the physical remains, memory, and death images of her deceased child," and cites the decision in *Marsh v. Cnty. of San Diego* (9th Cir. 2012) 680 F.3d 1148 (hereinafter, "*Marsh*"). (TAC, *ECF #71*, ¶ 25.)

**A. <u>Plaintiff Lacks Evidence of Public Dissemination or Any Transmission of Crime Scene/Death Images by Mr. Fugate</u>**

"[A] parent's right to control a deceased child's [] death images flows from the well-established substantive due process right to family integrity." (*Marsh, supra*, 680 F.3d at 1154.) However, the *Marsh* decision frames the substantive right by reference to publication from the outset; specifically, the court considered "whether individuals have a federal privacy right to control public dissemination of a family member's death images." (<u>See</u> *id.* at 1152.)

In *Marsh*, a plaintiff sued a county and a deputy district attorney for photocopying "autopsy photographs of" her deceased child and, for keeping "one of these as a 'memento of cases that [he] handled' and [] eventually [giving] a copy of this photograph, along with a memorandum he wrote [] to a newspaper and a television station." (*Marsh*, 680 F.3d at 1152.) Relying on the Supreme Court's reasoning in *National Archives and Records Administration v. Favish* (2004) 541 U.S. 157 (hereinafter, "*Favish*"), the Ninth Circuit held that "unwarranted public exploitation of death images degrades the respect accorded to families in their time of grief." (*Id.* at 1152 (citing *Favish* at 167–68).)

Courts applying *Marsh* have declined to extend its finding beyond cases involving publication or public dissemination of death scene or autopsy photos. For example, in *Lamorie v. Davis* (D. Ariz. 2020) 485 F. Supp. 3d 1065, a district court dismissed a *Marsh*-based death-image claim precisely for lack of publication. (*Id.* at 1073) ("the conduct in this case fails to 'shock the conscience.' Unlike *Marsh*, there has been no publication of [decedent]'s autopsy photos…").) Similarly, in *Brown v. Metro by T-Mobile* (C.D. Cal. 2024) 768 F. Supp. 3d 1068, a district court read the *Marsh* decision narrowly as holding that the unauthorized public disclosure of a child's autopsy photographs is a violation of the mother's substantive due process rights and refused to extend it to a mere "failure to sufficiently control" the images, which would significantly expand substantive due process law to unprecedented reaches. (*Id.* at 1097-98.)

Unlike in *Marsh*, but as in *Lamorie* and *Brown*, the evidence here establishes that Mr. Fugate did not disseminate or otherwise cause the subject crime scene/death images to be in the public domain. Moreover, as established by his testimony (*as well as other evidence in this case which is not pertinent to Mr. Fugate's Motion*), the subject crime scene/death images were in the public domain (*and were being widely disseminated*) weeks before any of Mr. Fugate's alleged misconduct with respect to the subject images. As such, Plaintiff cannot establish that Mr. Fugate either publicly disseminated any crime scene/death images or otherwise caused them to be in the public domain.

**B. <u>Plaintiff Lacks Evidence of Conduct by Mr. Fugate Which Rises to the Level of a Substantive Due Process Violation</u>**

To violate substantive due process, the alleged conduct must "shock[ ] the conscience" and "offend the community's sense of fair play and decency." (*Marsh*, *supra*, 680 F.3d at 1154.) The Ninth Circuit in *Marsh* held that "public display of death images are the kind of conduct that is likely to cause the family profound grief and therefore 'shocks the conscience' and 'offend[s] the community's sense of fair play and decency'." (*Id.* at 1155 (quoting *Rochin v. California* (1952) 342 U.S. 165, 172–73).) Specifically, the *Marsh* Court reasoned that that the defendant's conduct in sending the "son's autopsy photograph to the press," raised the mother's fear she would "stumble upon photographs of her dead son on news websites, blogs or social media websites." (*Id.* at 1155.) In fact, the *Marsh* Court reiterated that the shocking and offensive conduct act was "submission of the au autopsy photograph to the press." (<u>See</u> *id.* at 1157.)

Because this right sits within the substantive due process family-integrity doctrine, it carries that doctrine's demanding threshold. In *Rosenbaum v. Washoe Cnty.* (9th Cir. 2011) 663 F.3d 1071**,** the Ninth Circuit held that officers' "inappropriate and even offensive" words to a plaintiff's young children during an arrest did "not come close to rising to the level of conduct that 'shocks the conscience'." (*Id.* at 1179-80.) The Ninth Circuit's decision in *Rosenbaum* demonstrates that conduct which is distasteful but falls

short of unwarranted public exploitation does not make out a substantive due process claim.

While Plaintiff may take issue with Mr. Fugate's conduct in capturing crime scene and death images on his cellphone for the purpose of processing his own trauma of seeing the "horrific" crime scene and having to remain there for approximately 4 hours to photograph the scene, and may even find it distasteful that Mr. Fugate attempted to do so by trying to show the images to his life partner and later to his colleagues in an attempt to talk about and process his trauma – which is conduct akin to that which was alleged in *Rosenbaum, supra* – it cannot be disputed that Mr. Fugate never publicly disseminated these images or caused them to be in the public domain. As such, Mr. Fugate's conduct, however inappropriate and even distasteful, does not meet the demanding threshold of shocking or offensive conduct which rises to the level of a Substantive Due Process violation.

**C. <u>Plaintiff Lacks Evidence that Mr. Fugate's Conduct Caused Her Injuries</u>**

A plaintiff in a § 1983 action must establish that the defendant's conduct was the actionable cause of the claimed injury, which requires both causation in fact, also called but-for causation, and proximate cause. (See *Chaudhry v. Aragon* (9th Cir. 2023) 68 F.4th 1161, 1169-70 & n.11-12.)

In the present case, Plaintiff alleges damages arising from "the horrific experience of witnessing the photographs and in knowing that these photographs of her mutilated son had been seen by the general public," and attributes this harm to "Defendants' conduct, in [] sharing photographs of Mr. Romero's mutilated body." (TAC, *ECF #71*, ¶¶ 18, 27.) Plaintiff's damages expert, Dr. Gharibian, agrees that the harm and injuries which Plaintiff attributes to the misconduct at issue in this action arises solely from seeing the crime scene images online. (*See* UF ¶¶ 32-37.)

As established herein, Mr. Fugate did not cause the injury-producing event, which was Plaintiff seeing the crime scene and death images online, because he did not publish or transmit those images. Even if Plaintiff alternatively argues that her injury arises from

knowing that these images are in the public domain, Plaintiff lacks any evidence to establish that Mr. Fugate publicly disseminated or made any transmission of these images which caused them to be in the public domain. As such, Plaintiff cannot establish that Mr. Fugate was the actionable cause of her injury.

**D. <u>Mr. Fugate is Entitled to Qualified Immunity</u>**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (*Pearson v. Callahan* (2009) 555 U.S. 223, 231 (citations omitted).) "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" (*Id.* (citations omitted).) To determine whether a government official is entitled to qualified immunity, the court must ascertain: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official's] conduct violated a constitutional right"; and (2) "whether the right was clearly established." (*Saucier v. Katz* (2001) 533 U.S. 194, 201.)

Even if Plaintiff can establish that Mr. Fugate's conduct in retaining crime scene images on his cellphone sufficiently shocks the conscience and offends the community's sense of fair play and decency to raise a triable issue of fact as to her Substantive Due Process claim, she still cannot identify any "clearly established" precedent from which a reasonable officer in Mr. Fugate's position would have known that his conduct violated her constitutional right. Therefore, Mr. Fugate is entitled to qualified immunity as to this claim.

**V. PLAINTIFF'S NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW**

"[T]o prove facts sufficient to support a finding of negligence, a plaintiff must show that defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." (*Catsouras v.*

*Department of California Highway Patrol* (Cal. Ct. App. 2010) 181 Cal.App.4th 856, 876 (citing *Nally v. Grace Community Church* (Cal. 1988) 47 Cal.3d 278, 292–293).)

**A. <u>Plaintiff Cannot Establish Negligence – i.e. that Mr. Fugate Beached a Duty of Care Owed to Her</u>**

"[B]ecause liability for negligence turns on whether a duty of care is owed, our first task is to determine whether a duty exists in the present case." (*Catsouras*, *supra*, 181 Cal.App.4th at 876 (citing *Nally*, *supra*, 47 Cal.3d at 293).) The existence of a duty of care is a question of law to be determined by the court alone. (*Id.*)

***i. Plaintiff Cannot Establish a Duty of Care Based on a "Special Relationship"***

In *Catsouras*, the plaintiffs alleged that CHP "officers owed them a duty of care to use the death images exclusively for the purpose of the accident investigation, to protect their privacy and property rights in those images, and to avoid foreseeable harm to them by spreading the images across the Internet." (*Catsouras*, 181 Cal.App.4th at 877.) The *Catsouras* plaintiffs further alleged that two CHP officers "engaged in the affirmative act of disseminating decedent's death images on the Internet, thereby placing plaintiffs at risk of suffering exactly the emotional harm that they did." (*Id.* at 878.) After reviewing all pertinent case law and statutory authority relied on by plaintiffs to create a "special relationship" giving rise to a duty of care regarding the control or public dissemination of death images, the California Court of Appeal declined to conclude that there was a special relationship between the *Catsouras* plaintiffs, as the persons entitled to control decedent's death images, and the CHP or the two officers who disseminated those death images. (*Id.* at 878-81.)

As in *Catsouras*, Plaintiff cannot premise her Negligence claim against Mr. Fugate based on a "special relationship" doctrine.

///

///

***ii. Plaintiff Cannot Establish that Mr. Fugate Breached Any Duty of Care Owed to Her***

The *Catsouras* Court continued its duty analysis by considering a multifactor duty analysis articulated by the California Supreme Court in *Rowland v. Christian* (Cal. 1968) 69 Cal.2d 108. *Rowland* stands for the proposition that, when considering the existence of duty, several factors require consideration, including: the foreseeability of harm to the plaintiff; the degree of certainty that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct and the injury suffered; the moral blame attached to the defendant's conduct; the policy of preventing future harm; the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and the availability, cost, and prevalence of insurance for the risk involved. (*Rowland* at 113.)

The *Catsouras* Court – "[h]aving considered the classic *Rowland* factors and the supplemental public agency factors noted in" *Thompson v. County of Alameda* (Cal. 1980) 27 Cal.3d 741, as well as the analysis of *Christensen v. Superior Court* (Cal. 1991) 54 Cal.3d 868 – concluded that the defendants owed a duty of care to plaintiffs not to place decedent's death images on the Internet for the lurid titillation of persons unrelated to official CHP business. (*Catsouras*, 181 Cal.App.4th at 881-86.) As in *Marsh*, the Court of Appeal's analysis focused on the *Catsouras* defendants' conduct in publicly disseminating the crime scene images by publishing them on the internet. (*Id.*)

In the present case, Plaintiff alleges that Defendant Fugate breached his duty of care by "sharing highly sensitive photographs of" "Mr. Romero's physical remains." (TAC, ¶ 31.) However, unlike the officers in *Catsouras*, Mr. Fugate did not place the subject crime scene and death images on the Internet or otherwise cause them to be published. Rather, Mr. Fugate only showed the images to his fellow law enforcement officers for the purpose of processing the trauma he suffered from being at and photographing the crime scene for approximately 4 hours.

Because there is no evidence of publication or public dissemination by Mr. Fugate, Plaintiff cannot establish that he breached any duty of care owed to her.

**B. <u>Plaintiff Cannot Establish that Mr. Fugate Caused Her Alleged Injuries</u>**

"The element of causation requires there to be a connection between the defendant's breach and the plaintiff's injury." (*Coyle v. Historic Mission Inn Corp.* (Cal. Ct. App. 2018) 24 Cal. App. 5th 627, 645.) As discussed above, Plaintiff alleges and her damages expert witness agrees that the injury-producing event at issue in this action is Plaintiff seeing the crime scene and/or death image(s) online. Because Plaintiff lacks evidence of any publication or public dissemination of the images by Mr. Fugate, she cannot establish that any of Mr. Fugate's conduct caused her injuries.

## VI. PLAINTIFF'S INVASION OF PRIVACY CLAIM FAILS AS A MATTER OF LAW

The elements of a claim of invasion of privacy based on the public disclosure of private facts are as follows: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." (*Shulman v. Group W Productions, Inc.* (Cal. 1998) 18 Cal.4th 200, 214 (internal citations and quotations omitted); *Catsouras*, *supra*, 181 Cal.App.4th at 868.) When evaluating a relative's claimed invasion of privacy associated with death images, the *Catsouras* Court relied heavily on the United States Supreme Court's decision in *Favish*, *supra*, and specifically that ruling's focus on "public intrusion" and "public exploitation." (*Catsouras* at 871 (citing *Favish*, *supra*, 541 U.S. at 167-68).) Analyzing various persuasive cases on the issue, the *Catsouras* Court held that "publicity" of death images for the sake of "morbid and sensational prying" would be offensive and objectionable to the reasonable person, and it is the publication of such images which constitutes an invasion of privacy. (*Id.* at 871-874.)

As argued above, Mr. Fugate did publicly disseminate or otherwise cause the publication of the subject death images, and, as such, his conduct does not constitute a "public disclosure" under the controlling precedent. Additionally, Mr. Fugate did not

show the images to anyone other than his professional partners, and he only did so to process his own personal trauma from being at and photographing the "horrific" crime scene for approximately 4 hours; as such, his conduct is not "offensive and objectionable to the reasonable person" such that he can be liable for invasion of Plaintiff's privacy.

Due to the lack of evidence to establish the requisite elements of a claim for Invasion of Privacy, and all the reasons discussed above in this Motion, Plaintiff cannot maintain this cause of action against Mr. Fugate.

## VII. CONCLUSION

For the foregoing reasons, Mr. Fugate respectfully requests that this Court grant summary judgment in his favor on all claims asserted against them. Alternatively, Moving Defendants request summary judgment on any individual claims or defenses for which no genuine dispute of material fact exists.

Dated: November 6, 2026 KJAR, MCKENNA & STOCKALPER, LLP

By: Molshreegupta

PATRICK E. STOCKALPER
MOLSHREE GUPTA
Attorneys for Defendant, **JACOB FUGATE**

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 841 Apollo Street, Suite 100, El Segundo, California 90245.

On November 6, 2026, I served the foregoing document described as ***DEFENDANT JACOB FUGATE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION*** on all interested parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

<u>SEE ATTACHED SERVICE LIST</u>

By Mail I caused such envelope(s) to be deposited in the mail at El Segundo, California. The envelope was mailed with postage thereon fully prepaid and addressed to the parties listed on the Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

XX By Email Based upon a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in the Service List. My email address is mnixon@kmslegal.com.

By Personal Service I caused such document to be Personally Served on the parties listed in the Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 6, 2026, at El Segundo, California.

Maria Nixon

**SERVICE LIST**

628-6

*Solares v Burnes, et al*

Lynne Stocker Andrada & Associates
E-mail Address: lstocker@andradalaw.com
spadilla@andradalaw.com
*Attorney for Defendant Beam*

Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
5760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230
*Attorneys for Plaintiff DORA SOLARES*