PATRICK E. STOCKALPER, SBN 156954
MOLSHREE GUPTA, SBN 275101
KJAR, MCKENNA & STOCKALPER, LLP
841 Apollo Street, Suite 100
El Segundo, California 90245
Telephone (424) 217-3026
Facsimile (424) 367-0400
pstockalper@kmslegal.com
mgupta@kmslegal.com

Attorneys for Defendant, **JACOB FUGATE**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA SOLARES,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH BURNES, in his individual, and DOES 1 TO 15, in their individual capacities,<br><br>Defendants. | **Case No.: 1:21-cv-01349-LHR (FJSx)**<br><br>**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with the Notice of Motion; Memorandum of Points and Authorities; Declaration of Jacob Fugate; Declaration of Molshree Gupta; [Proposed] Order]*<br><br>Action Filed: September 8, 2021<br>Pretrial Conference: XXX<br>Trial Date: XXX<br><br>Assigned to:<br>Hon. Lee H. Rosenthal, District Judge |

**TO THE COURT AND TO ALL PARTIES:**

Defendant, JACOB FUGATE, hereby submits the following Separate Statement of Undisputed Material Facts in support of its Motion for Summary Judgment and or in the Alternative Motion for Summary Adjudication.

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| 1. | On March 9, 2019, Decedent, an inmate in the custody of the CDCR, was found murdered inside his cell in the 4A1R housing unit at California State Prison, Corcoran.<br><br>(Third Amended Complaint (hereinafter, "TAC"), *ECF #71*, at ¶ 1.) | |
| 2. | At the time of the incident, Mr. Fugate was working at the Corcoran State Prison and was assigned to the Investigative Services Unit (hereinafter, "ISU") as a radio liaison and backup evidence officer.<br><br>(Deposition of Jacob Fugate (hereinafter, "*Fugate Depo.*"), **Exhibit A**, at 12:06-09, 13:13-15, 14:01-18, 17:01.) | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| 3. | As a backup evidence officer, he was required to respond to the location of any incident to collect evidence if the main evidence officer was unavailable.<br><br>(*Fugate Depo.*, **Exhibit A**, at 14:01-12, 15:15-19.) | |
| 4. | As part of the CDCR's investigation of the March 9, 20219, murder, Mr. Fugate took photographs of the crime scene and Decedent's remains.<br><br>(*Fugate Depo.*, **Exhibit A**, at 61:13-25, 62:02-12, 63:02-04, 64:21-24.) | |
| 5. | Mr. Fugate recalls there were about three evidence officers, in addition to his Lieutenant and direct supervisor, at the scene.<br><br>(*Fugate Depo.*, **Exhibit A**, at 64:25-65:10.) | |
| 6. | Mr. Fugate was at the scene for approximately 4 hours and then | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | retuned directly to the ISU office to take photographs of the evidence collected from the scene.<br><br>(*Fugate Depo.*, **Exhibit ***, at 70:09-19.) | |
| 7. | Then, "per the procedures in the ISU office," downloaded the photographs to the ISU's "squad share" drive by creating an incident folder and labeling the downloaded photos.<br><br>(*Fugate Depo.*, **Exhibit A**, at 70:24-72:09, 75:25-76:04, 76:12-20.) | |
| 8. | Mr. Fugate also prepared an Initial Report summarizing what he did during the investigation on March 9, 2019, and describing about 205 frames which he downloaded to the shared ISU incident folder.<br><br>(*Fugate Depo.*, **Exhibit A**, at 72:23-73:04, 75:09-12.) | |
| 9. | Additionally, he copied the scene photographs onto a disc, labeled the | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
| --- | --- | --- |
| | disc with the incident number, placed the disc inside an evidence envelope, logged it into evidence, and secured it in a locker inside the main evidence room before he left the prison that day.<br><br>(*Fugate Depo.*, **Exhibit A**, at 76:21-77:17, 79:13-20.) | |
| 10. | "[W]ithin a week" of the March 9, 2019, incident, Mr. Fugate learned that "photos of the crime scene were out in the public domain."<br><br>(*Fugate Depo.*, **Exhibit A**, at 151:07-17, 152:08-16.) | |
| 11. | About three (3) weeks after the incident, while on duty in the ISU office, Mr. Fugate used his personal cellphone to take three (3) photographs (of different zoom variations) of a crime-scene image displayed on his work computer monitor.<br><br>(*Fugate Depo.*, **Exhibit A**, at 82:05- | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | 24, 83:16-84:04, 85:25-86:07, 86:18-87:04.) | |
| 12. | When examined why he did so, Mr. Fugate explained that the crime scene was "horrific" and that it "almost seemed fake," and that he took the photographs on his cell phone to "process it later."<br><br>(*Fugate Depo.*, **Exhibit A**, at 68:18, 90:05-15.) | |
| 13. | He further explained that while he was at the scene on March 9, 2019, there was "so much going on" and he was "so focused on getting the job done" that he "didn't actually have time to process what [he] was seeing."<br><br>(*Fugate Depo.*, **Exhibit A**, at 90:05-15.) | |
| 14. | Mr. Fugate admitted that he intended to "process" the trauma of the incident by speaking to his "lady" (life partner) about it and showing the photographs on his | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | cellphone, but that she refused to see the images and he never tried to show them to her again.<br><br>(*Fugate Depo.*, **Exhibit A**, at 90:16-91:04, 94:14, 105:01-04, 106:05-23, 111:12-112:08, 153:23-154:06.) | |
| 15. | On March 16, 2024, while Mr. Fugate was working as a correctional officer at the Corcoran State Prison, he and two (2) other correctional officers began discussing the March 9, 2019, homicide.<br><br>(*Fugate Depo.*, **Exhibit A**, at 114:02-11, 115:12-116:08.) | |
| 16. | During this discussion, Mr. Fugate showed a crime scene images on his cellphone to the other officers.<br><br>(*Fugate Depo.*, **Exhibit A**, at 116:25-117:02.) | |
| 17. | Mr. Fugate explained that he was trying "to get an understanding [of] and trying to process" the incident; | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | he stated specifically that, "when you see something like that, you got to talk about it" and that it was "easier to talk to people that are in the same profession" because they "go through similar things."<br><br>(*Fugate Depo.*, **Exhibit A**, at 118:11-119:03, 121:11-122:08, 153:23-154:06.) | |
| 18. | On March 2, 2026, Mr. Fugate responded to Plaintiff's Request for Admission (hereinafter, "RFA") No. 8, which asked him to admit that he "shared photographs of the crime scene [] from March 9, 2019," with a denial.<br><br>(*Fugate Declaration*, at ¶ 2; *Fugate RFA Responses*, **Exhibit B**, at p. 8.) | |
| 19. | Mr. Fugate also responded to Plaintiff's RFA No. 9, which asked him to admit that he "texted photographs of the crime scene [] from March 9, 2019," with a denial. | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | (*Fugate Declaration*, at ¶ 2; *Fugate RFA Responses*, **Exhibit B**, at p. 9.) | |
| 20. | At his deposition on July 17, 2026, Mr. Fugate was not asked whether he shared, texted, emailed, distributed, transmitted, disseminated, or otherwise caused the publication of any images of the scene or of Decedent's body.<br><br>(*Fugate Declaration*, at ¶ 3.) | |
| 21. | If asked, Mr. Fugate would have testified, *and he now declares in support of this Motion*, that he did not share, text, email, distribute, transmit, disseminate, or otherwise cause the publication of any images of the scene or of Decedent's body.<br><br>(*Fugate Declaration*, at ¶ 4.) | |
| 22. | Additionally, Plaintiff's significant and comprehensive investigation with the CDCR (in two lawsuits) has resulted in the discovery of no evidence that Mr. Fugate transmitted any images of the crime | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | scene or Decedent's body.<br><br>(*Gupta Declaration*, at ¶ 4.) | |
| 23. | As such, on June 8, 2026, the parties appeared for a Status Conference prior to which Plaintiff raised the issue of seeking Mr. Fugate's cellphone number, which would allow him to subpoena Mr. Fugate's cellphone records and determine whether Mr. Fugate had transmitted the subject crime scene images on his personal cellphone.<br><br>(*Gupta Declaration*, at ¶ 5; *Pre-Motion Conference Statement*, **Exhibit C**, at p. 1.) | |
| 24. | At the June 8, 2026, Status Conference, Plaintiff's counsel agreed that he would limit the subpoena to requests for text message transmissions of photographs from March 2019 to March 2024, and further agreed to allow Mr. Fugate's counsel a "*first look*" at subpoenaed records to | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | search for and produce only those records ordered by the Court.<br><br>(*Gupta Declaration*, at ¶ 6.) | |
| 25. | On June 16, 2026, Mr. Fugate provided his cellphone number as a further response to Plaintiff's Interrogatory No. 1, pursuant to Plaintiff's June 8, 2026, on-the-record agreements and the Court's resulting June 8, 2026, Order.<br><br>(*Gupta Declaration*, at ¶ 7.) | |
| 26. | On June 19, 2026, Plaintiff served a subpoena to Verizon which did not comport with the Court's June 8, 2026, Order, and Plaintiff's counsel thereafter declined to withdraw or amend the subpoena in response to meet and confer efforts by Mr. Fugate's counsel.<br><br>(*Gupta Declaration*, at ¶ 8; **Exhibit D**, June 19, 2026, meet and confer correspondence re Verizon Subpoena (Version 1), at pp. 1-3.) | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| 27. | On June 26, 2026, Mr. Fugate was forced to file a timely objection to Plaintiff's subpoena for failure to comply with the Court-ordered scope.<br><br>(*Gupta Declaration*, at ¶ 9; **Exhibit E**, June 26, 2026, Objection to Verizon Subpoena (Version 1).) | |
| 28. | On July 13, 2026, Plaintiff's counsel finally agreed to meet and confer with Mr. Fugate counsel in good faith regarding the scope of the Verizon subpoena for Mr. Fugate's cellphone records, and Plaintiff's counsel consequently agreed to prepare an Amended Subpoena and to confer with Mr. Fugate's counsel to confirm agreement as to scope before issuing it.<br><br>(*Gupta Declaration*, at ¶ 10.) | |
| 29. | Between July 13, 2026, and July 16, 2026, Mr. Fugate's counsel spent significant time conferring with | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | Plaintiff's counsel regarding the amended scope of the Verizon subpoena, which was approved for issuance on July 16, 2026 – more than two weeks before the close of discovery in this action.<br><br>(*Gupta Declaration*, at ¶ 11; **Exhibit F**, Meet and confer correspondence re Verizon Subpoena (Version 2), at pp. 2-6.) | |
| 30. | During his deposition on October 13, 2026, Plaintiff's correctional practices expert, Richard Winistorfer, conceded that he has seen no evidence of Mr. Fugate's transmission of crime scene images from his cellphone.<br><br>(*Gupta Declaration*, at ¶ 12.) | |
| 31. | In response to follow-up meet and confer correspondence, Plaintiff's counsel confirmed in writing on October 19, 2026, that the amended and "revised subpoena," which was approved for issuance over 3 | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | months ago, "was not served" by Plaintiff.<br><br>(*Gupta Declaration*, at ¶ 13; **Exhibit F**, Meet and confer correspondence re Verizon Subpoena (Version 2), at p. 1.) | |
| 32. | On August 13, 2026, Plaintiff made an initial disclosure which included the designation of damages expert, Emin Gharibian, Psy.D., and his Psychological Evaluation Report.<br><br>(*Gupta Declaration*, at ¶ 14; **Exhibit G**, Psychological Evaluation Report, dated August 13, 2026.) | |
| 33. | Therein, Dr. Gharibian noted that Plaintiff "reported intrusive memories and anxiety related to the images that she saw online."<br><br>(*See* **Exhibit G**, at p. 5.) | |
| 34. | Based on an interview with Plaintiff, Dr. Gharibian summarized that, though "she had not seen the | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| | photos in several years, thinking about or remembering them would cause her distress."<br><br>(*See* **Exhibit G**, at p. 7.) | |
| 35. | As such, Dr. Gharibian concluded that, "[g]iven the anxiety and memories she has related to seeing photos of her son's remains online, she would meet the criteria for Other Specified Trauma and Stressor Related Disorder (Persistent Response to Trauma with PTSD Like Symptoms)."<br><br>(*See* **Exhibit G**, at p. 7.) | |
| 36. | He further concluded that, "[b]ased on her history of chronic depression, which is due to the murder of her son and seeing the photos online, she would meet the criteria for Persistent Depressive Disorder with Pure Dysthymic Syndrome, Moderate."<br><br>(*See* **Exhibit G**, at pp. 7-8.) | |

| No. | Moving Party's Uncontroverted Facts and Evidence | Opposing Party's Response |
|---|---|---|
| 37. | At his expert deposition on October 14, 2026, Dr. Gharibian confirmed the foregoing conclusions in his report that all of Plaintiff's claimed damages in this action are attributable to seeing the crime scene images online.<br><br>(*Gupta Declaration*, at ¶ 15.) | |

Dated: November 6, 2025 KJAR, MCKENNA & STOCKALPER, LLP

By: Molshreegupta

PATRICK E. STOCKALPER
MOLSHREE GUPTA
Attorneys for Defendant, **JACOB FUGATE**

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 841 Apollo Street, Suite 100, El Segundo, California 90245.

On November 6, 2026, I served the foregoing document described as ***SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION*** on all interested parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

SEE ATTACHED SERVICE LIST

By Mail I caused such envelope(s) to be deposited in the mail at El Segundo, California. The envelope was mailed with postage thereon fully prepaid and addressed to the parties listed on the Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

XX By Email Based upon a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in the Service List. My email address is mnixon@kmslegal.com.

By Personal Service I caused such document to be Personally Served on the parties listed in the Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 6, 2026, at El Segundo, California.

Maria Nixon

**SERVICE LIST**
628-6
*Solares v Burnes, et al*

Lynne Stocker Andrada & Associates
E-mail Address: lstocker@andradalaw.com
spadilla@andradalaw.com
*Attorney for Defendant Beam*

Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
5760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230
*Attorneys for Plaintiff DORA SOLARES*