Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

DORA SOLARES, an individual,

Plaintiff,

v.

RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities

Defendants.

Case No. 1:21-cv-01349-LHR

**REDACTED**

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES AND OBJECTIONS IN OPPOSITION TO DEFENDANT JACOB FUGATE'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

(filed concurrently with Plaintiff's Memorandum in Opposition to Defendant Jacob Fugate's Motion for Summary Judgment)

Judge: Hon. Lee H. Rosenthal

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 260(b), Plaintiff Dora Solares hereby submits this Statement of Genuine Disputes and Objections in opposition to the Motion for Summary Judgment or, in the Alternative, Motion for

Summary Adjudication of Defendant Jacob Fugate (ECF No. 99). The left-hand column below reproduces, in order and verbatim, the facts asserted in Defendant's Separate Statement of Undisputed Material Fact (ECF No. 99-4) and the evidence Defendant cites in support of each. Plaintiff's response to each asserted fact, together with Plaintiff's evidentiary objections and citations to the record establishing that genuine disputes of material fact preclude summary judgment, appears in the right-hand column. Plaintiff's Additional Material Facts and Supporting Evidence ("PMF") follow.

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES AND OBJECTIONS IN OPPOSITION TO DEFENDANT FUGATE'S MOTION FOR SUMMARY JUDGMENT**

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| 1. On March 9, 2019, Decedent, an inmate in the custody of the CDCR, was found murdered inside his cell in the 4A1R housing unit at California State Prison, Corcoran.<br><br>(Third Amended Complaint (hereinafter, "TAC"), ECF #71, at ¶ 1.) | Undisputed. |
| 2. At the time of the incident, Mr. Fugate was working at the Corcoran State Prison and was assigned to the Investigative Services Unit (hereinafter, "ISU") as a radio liaison and backup evidence officer.<br><br>(Deposition of Jacob Fugate (hereinafter, "Fugate Depo."), Exhibit A, at 12:06-09, 13:13-15, 14:01-18, 17:01.) | Undisputed.<br><br>[redacted] |
| 3. As a backup evidence officer, he was required to respond to the location of any incident to collect evidence if the main evidence officer was unavailable.<br><br>(Fugate Depo., Exhibit A, at 14:01-12, 15:15-19.) | Undisputed that Fugate so testified.<br><br>Plaintiff further notes that Fugate described the backup evidence officer as the officer who worked when "the main officer was not available to clear the [evidence] lockers and then process that evidence collected in the main evidence room." (Fugate Depo. 17:8-15.) |
| 4. As part of the CDCR's investigation of the March 9, 20219, murder, Mr. Fugate took photographs of the crime scene and Decedent's remains. | Undisputed.<br><br>Plaintiff further notes that Fugate was the only person who photographed the crime scene. None |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| (Fugate Depo., Exhibit A, at 61:13-25, 62:02-12, 63:02-04, 64:21-24.) | of the other ISU officers took photographs; Fugate "held the camera the entire time" and did not see anyone else photograph the [redacted] |
| 5. Mr. Fugate recalls there were about three evidence officers, in addition to his Lieutenant and direct supervisor, at the scene.<br><br>(Fugate Depo., Exhibit A, at 64:25-65:10.) | Undisputed that Fugate so testified.<br><br>[redacted] |
| 6. Mr. Fugate was at the scene for approximately 4 hours and then retuned directly to the ISU office to take photographs of the evidence collected from the scene.<br><br>(Fugate Depo., Exhibit *, at 70:09-19.) | Objection: The supporting evidence is cited as "Exhibit *," and Defendant does not identify the exhibit on which he relies. (Fed. R. Civ. P. 56(c)(1)(A).)<br><br>Subject to that objection, and |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | assuming the reference is to the Fugate Deposition (Exhibit A), undisputed that Fugate so testified. |
| 7. Then, "per the procedures in the ISU office," downloaded the photographs to the ISU's "squad share" drive by creating an incident folder and labeling the downloaded photos.<br><br>(Fugate Depo., Exhibit A, at 70:24-72:09, 75:25-76:04, 76:12-20.) | Undisputed.<br><br>[redacted] |
| 8. Mr. Fugate also prepared an Initial Report summarizing what he did during the investigation on March 9, 2019, and describing about 205 frames which he downloaded to the shared ISU incident folder.<br><br>(Fugate Depo., Exhibit A, at 72:23-73:04, 75:09-12.) | Undisputed.<br><br>[redacted] |
| 9. Additionally, he copied the scene photographs onto a disc, labeled the disc with the incident number, placed the disc inside an evidence envelope, logged it into evidence, and secured it in a locker inside the main evidence room before he left the prison that day.<br><br>(Fugate Depo., Exhibit A, at 76:21-77:17, 79:13-20.) | Objection: Incomplete and misleading characterization of the record.<br><br>[redacted]<br><br>Disputed to the extent the asserted fact implies that the evidence disc was the only copy Fugate made. |

| **DEFENDANT'S ALLEGED FACTS AND SUPPORT** | **PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS** |
|---|---|
| | [redacted] |
| 10. "[W]ithin a week" of the March 9, 2019, incident, Mr. Fugate learned that "photos of the crime scene were out in the public domain."<br><br>(Fugate Depo., Exhibit A, at 151:07-17, 152:08-16.) | Objection: Hearsay (Fed. R. Evid. 801(c), 802) to the extent offered to prove that photographs of the crime scene were in fact in the public domain within a week of the homicide; lacks foundation and personal knowledge (Fed. R. Evid. 602), as Fugate does not identify the source of his information, which images were purportedly public, or where; vague and ambiguous as to "photos of the crime scene" and "public domain."<br><br>Disputed and immaterial.<br><br>[redacted] |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | domain. At deposition he offered a different estimate of "about three weeks." (Fugate Depo. 83:22.) Which version to credit is for the jury.<br><br>[redacted],<br><br>*Foreseeability*. To the extent credited, the asserted fact establishes that [redacted] |
| 11. About three (3) weeks after the incident, while on duty in the ISU office, Mr. Fugate used his personal cellphone to | Objection: Incomplete.<br><br>Disputed in part. |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
| --- | --- |
| take three (3) photographs (of different zoom variations) of a crime-scene image displayed on his work computer monitor.<br><br>(Fugate Depo., Exhibit A, at 82:05-24, 83:16-84:04, 85:25-86:07, 86:18-87:04.) | [redacted] |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | *Policy violation; no purpose.* Fugate knew that bringing his personal iPhone into CSP-Corcoran violated the Department Operations Manual, and he had done so before. (Fugate Depo. 85:14-22; DOM § 12070.18, CDCRSDT 588.) He admitted, "There was no purpose for me to take a photo for ISU on my personal phone." (Fugate Depo. 89:24-25.) |
| 12. When examined why he did so, Mr. Fugate explained that the crime scene was "horrific" and that it "almost seemed fake," and that he took the photographs on his cell phone to "process it later."<br><br>(Fugate Depo., Exhibit A, at 68:18, 90:05-15.) | Objection: Self-serving; argumentative; lacks foundation as to the purpose asserted, which is contradicted by Fugate's own prior statements.<br><br>Undisputed that Fugate so testified. Disputed that this was his purpose.<br><br>[redacted]<br><br>*Conduct inconsistent with "processing."* Fugate never participated in peer support ("I did not do peer support"), rejected it because "they're not going to understand what we have to deal with," and never sought a licensed therapist about what he saw at the Romero |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | crime scene. (Fugate Depo. 119:5-9, 120:5, 120:19-21, 120:24-121:3.) Instead, he kept the images on his personal phones for five years and displayed them to coworkers. (Fugate Depo. 92:4-7, 93:5-12, 116:25-117:2.)<br><br>*Expert testimony.* Plaintiff's correctional practices expert, Rick Winistorfer, opines that the images served as "trophies." (Winistorfer Report at 14.)<br><br>Whether to credit Fugate's present explanation is a credibility determination for the jury. |
| 13. He further explained that while he was at the scene on March 9, 2019, there was "so much going on" and he was "so focused on getting the job done" that he "didn't actually have time to process what [he] was seeing."<br><br>(Fugate Depo., Exhibit A, at 90:05-15.) | Objection: Irrelevant (Fed. R. Evid. 401-403).<br><br>Undisputed that Fugate so testified. Disputed that this testimony explains or justifies his later conduct. Plaintiff incorporates by reference her response to Fact No. 12.<br><br>Fugate's subjective reaction to the scene does not supply a legitimate governmental purpose for copying death images onto a personal device, which Fugate concedes served "no purpose" for ISU. (Fugate Depo. 89:24-25.) |
| 14. Mr. Fugate admitted that he intended to "process" the trauma of the incident by speaking to his "lady" (life partner) about it and showing the photographs on his cellphone, but that she refused to see the images and he never tried to show them to her again. | Objection: Compound; self-serving; argumentative characterization of the record; hearsay (Fed. R. Evid. 801(c), 802) and lacks foundation to the extent offered to prove the third party's purported refusal.<br><br>Disputed. Fugate has given at least |

| **DEFENDANT'S ALLEGED FACTS AND SUPPORT** | **PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS** |
|---|---|
| (Fugate Depo., Exhibit A, at 90:16-91:04, 94:14, 105:01-04, 106:05-23, 111:12-112:08, 153:23-154:06.) | four irreconcilable accounts of whether he showed the images to his "lady," and whether she exists:<br><br>[redacted]<br><br>(2) At deposition, Fugate testified, "I never showed her the photos" (Fugate Depo. 94:14), but later asked, "Are you talking about the time I showed my lady or tried to show my lady the photo?" (Fugate Depo. 111:1-2.)<br><br>(3) In response to Interrogatory No. 10, Fugate stated that his "lady" was "no one." (Fugate Resp. to Interrog. No. 10.)<br><br>(4) In support of this motion, Fugate asserts that she "refused to see the images." (ECF No. 99-4, Fact No. 14.)<br><br>Fugate also told CDCR investigators that he collected the photographs "to brag to his 'lady' at home" (CDCRSDT 22), not to process trauma. Plaintiff incorporates by reference her response to Fact No. 12.<br><br>That Fugate did not again try to show the images to his partner is |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | immaterial: he retained them on his personal phones for five years and displayed them to coworkers. (Fugate Depo. 92:4-7, 93:5-12, 116:25-117:2.) |
| 15. On March 16, 2024, while Mr. Fugate was working as a correctional officer at the Corcoran State Prison, he and two (2) other correctional officers began discussing the March 9, 2019, homicide.<br><br>(Fugate Depo., Exhibit A, at 114:02-11, 115:12-116:08.) | Objection: Incomplete and misleading; vague and ambiguous as to "began discussing."<br><br>Undisputed that on March 16, 2024, while on duty at CSP-Corcoran, Fugate discussed the Romero homicide with Correctional Officers Tyran Marshall and Rodrigo Alvarado.<br><br>[redacted] |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | (CDCR 17, 21; Fugate Depo. 114:21-25, 115:10, 116:17-18.) |
| 16. During this discussion, Mr. Fugate showed a crime scene images on his cellphone to the other officers.<br><br>(Fugate Depo., Exhibit A, at 116:25-117:02.) | Objection: Incomplete; vague and ambiguous as to the number of images shown.<br><br>Undisputed that Fugate displayed crime scene images of Mr. Romero's remains from his personal cell phone to COs Marshall and Alvarado. Fugate admits that he showed at least one person, including CO Marshall, a photograph of Mr. Romero's remains that he kept on his personal cell phone. (Fugate Resp. to RFA Nos. 13, 14.)<br><br>[redacted] |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | [redacted] |
| 17. Mr. Fugate explained that he was trying "to get an understanding [of] and trying to process" the incident; he stated specifically that, "when you see something like that, you got to talk about it" and that it was "easier to talk to people that are in the same profession" because they "go through similar things."<br><br>(Fugate Depo., Exhibit A, at 118:11-119:03, 121:11-122:08, 153:23-154:06.) | Objection: Self-serving; argumentative; lacks foundation as to the purpose asserted.<br><br>Undisputed that Fugate so testified. Disputed that this was his purpose. Plaintiff incorporates by reference her responses to Fact Nos. 12, 14, 15, and 16.<br><br>Fugate himself testified, "I mean, you can't say it's therapy." (Fugate Depo. 118:25-119:3.) His conduct [redacted] |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | [redacted]<br><br>Plaintiff's correctional practices expert opines that the images served as "trophies." (Winistorfer Report at 14.) |
| 18. On March 2, 2026, Mr. Fugate responded to Plaintiff's Request for Admission (hereinafter, "RFA") No. 8, which asked him to admit that he "shared photographs of the crime scene [] from March 9, 2019," with a denial.<br><br>(Fugate Declaration, at ¶ 2; Fugate RFA Responses, Exhibit B, at p. 8.) | Objection: Hearsay (Fed. R. Evid. 801(c), 802) to the extent offered for the truth of the denial; a party's own discovery response is not admissible on his own behalf, as Rule 801(d)(2) applies only to statements offered against the party; self-serving.<br><br>Undisputed that Fugate served that |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
| --- | --- |
| | response. Disputed that the denial is true.<br><br>[redacted] |
| 19. Mr. Fugate also responded to Plaintiff's RFA No. 9, which asked him to admit that he "texted photographs of the crime scene [] from March 9, 2019," with a denial.<br><br>(Fugate Declaration, at ¶ 2; Fugate RFA Responses, Exhibit B, at p. 9.) | Objection: Hearsay (Fed. R. Evid. 801(c), 802) to the extent offered for the truth of the denial; a party's own discovery response is not admissible on his own behalf; self-serving.<br><br>Undisputed that Fugate served that response. Disputed that the denial is true or that it establishes the absence of a genuine dispute.<br><br>[redacted] |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | [redacted] "I had the photos on my phone . . . I was not truthful not having them on my phone," and that he concealed them because he expected "some kind of disciplinary action." (Fugate Depo. 108:5-6, 109:11-23, 110:2-4.) Plaintiff incorporates by reference her responses to Fact Nos. 12, 14, 16, and 17.<br><br>*Destruction of evidence*. The evidence that would show whether Fugate texted the images was in his exclusive control, and he destroyed it. The images were transferred from his original phone to a new phone "at the phone store." (Fugate Depo. 92:25-93:12.) When Fugate was served with notice of the July 2024 interview about the images, he deleted them "[b]ecause I was being interviewed for the photos." (Fugate Depo. 144:14-145:11, 147:3-5.) CDCR never examined either phone.<br><br>Plaintiff incorporates by reference her response to Fact No. 21. |
| 20. At his deposition on July 17, 2026, Mr. Fugate was not asked whether he shared, texted, emailed, distributed, transmitted, disseminated, or otherwise caused the publication of any images of the scene or of Decedent's body.<br><br>(Fugate Declaration, at ¶ 3.) | Objection: Irrelevant (Fed. R. Evid. 401-403); argumentative; the deposition transcript, not Fugate's characterization of it, is the best evidence of the questions posed (Fed. R. Evid. 1002).<br><br>Disputed and immaterial. Fugate was examined at deposition about displaying the crime scene images and testified that he showed them to other officers (Fugate Depo. 116:25- |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | 117:2), as Defendant's own Fact No. 16 acknowledges. He was also examined about the leaked photographs, his concealment of the images from Special Agent McClellan, and his deletion of the images. (Fugate Depo. 108:5-110:4, 144:14-147:5.) Whether a particular question was asked does not render competent a later declaration that contradicts his testimony and admissions. Plaintiff incorporates by reference her response to Fact No. 21. |
| 21. If asked, Mr. Fugate would have testified, and he now declares in support of this Motion, that he did not share, text, email, distribute, transmit, disseminate, or otherwise cause the publication of any images of the scene or of Decedent's body.<br><br>(Fugate Declaration, at ¶ 4.) | Objection: Self-serving and conclusory; to the extent the declaration states that Fugate did not "share" or "distribute" the images, it contradicts his deposition testimony and his admissions in response to RFA Nos. 13 and 14 and should be disregarded as a sham, *see Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991); *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); lacks foundation and personal knowledge (Fed. R. Evid. 602), and states an improper legal conclusion, as to whether Fugate "otherwise cause[d] the publication" of images later circulated by others.<br><br>Disputed.<br><br>[redacted] |

| DEFENDANT’S ALLEGED FACTS AND SUPPORT | PLAINTIFF’S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | [redacted]<br>*A jury could find that Fugate was a source of the images that circulated within CDCR and online.*<br>[redacted] |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
| --- | --- |
| | [redacted] |

| **DEFENDANT'S ALLEGED FACTS AND SUPPORT** | **PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS** |
|---|---|
| | Whether to credit Fugate's denial in light of this evidence is a credibility determination for the jury. |
| 22. Additionally, Plaintiff's significant and comprehensive investigation with the CDCR (in two lawsuits) has resulted in the discovery of no evidence that Mr. Fugate transmitted any images of the crime scene or Decedent's body.<br><br>(Gupta Declaration, at ¶ 4.) | Objection: Argumentative; not a statement of fact; lacks foundation and personal knowledge (Fed. R. Evid. 602), as defense counsel is not competent to attest to the scope of "Plaintiff's . . . investigation" or to characterize the state of the evidence; improper attorney argument in declaration form (Fed. R. Civ. P. 56(c)(4)); mischaracterizes the record.<br><br>Disputed. Plaintiff incorporates by reference her response to Fact No. 21, which sets out the evidence from which a jury could find that Fugate transmitted the images, and the evidence that he displayed them to others.<br><br>[redacted] |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| 23. As such, on June 8, 2026, the parties appeared for a Status Conference prior to which Plaintiff raised the issue of seeking Mr. Fugate's cellphone number, which would allow him to subpoena Mr. Fugate's cellphone records and determine whether Mr. Fugate had transmitted the subject crime scene images on his personal cellphone.<br><br>(Gupta Declaration, at ¶ 5; Pre-Motion Conference Statement, Exhibit C, at p. 1.) | Objection: Argumentative ("As such"); irrelevant (Fed. R. Evid. 401-403).<br><br>Undisputed that, before the June 8, 2026 Status Conference, Plaintiff raised the issue of obtaining Fugate's cell phone number in order to subpoena his cell phone records.<br><br>Immaterial. By June 2026, Fugate had already deleted the images from his phone, nearly two years earlier. (Fugate Depo. 144:14-145:1.) |
| 24. At the June 8, 2026, Status Conference, Plaintiff's counsel agreed that he would limit the subpoena to requests for text message transmissions of photographs from March 2019 to March 2024, and further agreed to allow Mr. Fugate's counsel a "first look" at subpoenaed records to search for and produce only those records ordered by the Court.<br><br>(Gupta Declaration, at ¶ 6.) | Objection: Irrelevant (Fed. R. Evid. 401-403).<br><br>Undisputed that Plaintiff's counsel agreed to those limitations.<br><br>Immaterial. Plaintiff notes that a subpoena so limited would reach only carrier text-message transmissions, and would not capture in-person display of the images, transmission by e-mail, or transmission through internet-based messaging applications.<br>Also irrelevant under *Marsh*. |
| 25. On June 16, 2026, Mr. Fugate provided his cellphone number as a further response to Plaintiff's Interrogatory No. 1, pursuant to Plaintiff's June 8, 2026, on-the-record agreements and the Court's resulting June 8, 2026, Order.<br><br>(Gupta Declaration, at ¶ 7.) | Objection: Irrelevant (Fed. R. Evid. 401-403).<br><br>Undisputed that Fugate provided his cell phone number on June 16, 2026, following the Court's June 8, 2026 Order. Immaterial. |
| 26. On June 19, 2026, Plaintiff served a subpoena to Verizon which did not comport with the Court's June 8, 2026, Order, and Plaintiff's counsel thereafter | Objection: Argumentative; states a legal conclusion ("did not comport"); irrelevant (Fed. R. Evid. 401-403). |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| declined to withdraw or amend the subpoena in response to meet and confer efforts by Mr. Fugate's counsel.<br><br>(Gupta Declaration, at ¶ 8; Exhibit D, June 19, 2026, meet and confer correspondence re Verizon Subpoena (Version 1), at pp. 1-3.) | Undisputed that Plaintiff served a subpoena on Verizon on June 19, 2026. Disputed as to Defendant's characterization.<br><br>Immaterial to whether a genuine dispute of material fact exists. |
| 27. On June 26, 2026, Mr. Fugate was forced to file a timely objection to Plaintiff's subpoena for failure to comply with the Court-ordered scope.<br><br>(Gupta Declaration, at ¶ 9; Exhibit E, June 26, 2026, Objection to Verizon Subpoena (Version 1).) | Objection: Argumentative ("forced"); states a legal conclusion; irrelevant (Fed. R. Evid. 401-403).<br><br>Undisputed that Fugate filed an objection to the subpoena on June 26, 2026. Disputed as to Defendant's characterization. Immaterial. |
| 28. On July 13, 2026, Plaintiff's counsel finally agreed to meet and confer with Mr. Fugate counsel in good faith regarding the scope of the Verizon subpoena for Mr. Fugate's cellphone records, and Plaintiff's counsel consequently agreed to prepare an Amended Subpoena and to confer with Mr. Fugate's counsel to confirm agreement as to scope before issuing it.<br><br>(Gupta Declaration, at ¶ 10.) | Objection: Argumentative ("finally," "in good faith"); irrelevant (Fed. R. Evid. 401-403).<br><br>Undisputed that counsel met and conferred on July 13, 2026, and that Plaintiff's counsel agreed to prepare an amended subpoena and to confirm its scope with Fugate's counsel before issuing it. Disputed to the extent the asserted fact implies that Plaintiff's counsel had not previously conferred in good faith. Also assumes there were materials that could be successfully subpoenaed. |
| 29. Between July 13, 2026, and July 16, 2026, Mr. Fugate's counsel spent significant time conferring with Plaintiff's counsel regarding the amended scope of the Verizon subpoena, which was approved for issuance on July 16, 2026 – more than two weeks before the close of discovery in this action. | Objection: Argumentative; vague as to "significant time"; irrelevant (Fed. R. Evid. 401-403).<br><br>Undisputed that the scope of the amended subpoena was agreed upon on July 16, 2026. Immaterial. |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| (Gupta Declaration, at ¶ 11; Exhibit F, Meet and confer correspondence re Verizon Subpoena (Version 2), at pp. 2-6.) | |
| 30. During his deposition on October 13, 2026, Plaintiff's correctional practices expert, Richard Winistorfer, conceded that he has seen no evidence of Mr. Fugate's transmission of crime scene images from his cellphone.<br><br>(Gupta Declaration, at ¶ 12.) | Objection: Hearsay and lacks foundation (Fed. R. Evid. 602, 802); defense counsel's declaration paraphrases expert deposition testimony without attaching the transcript (Fed. R. Civ. P. 56(c)(1)(A), (c)(4)); the transcript is the best evidence of the testimony (Fed. R. Evid. 1002); incomplete and mischaracterizes the testimony.<br><br>[redacted]<br><br>Mr. Winistorfer opines that holding crime scene images on a personal phone is "never authorized" and that the images served as "trophies." (Winistorfer Report at 6, 14.) Plaintiff incorporates by reference her responses to Fact Nos. 21 and 22. |
| 31. In response to follow-up meet and confer correspondence, Plaintiff's | Objection: Argumentative; irrelevant (Fed. R. Evid. 401-403). |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
| --- | --- |
| counsel confirmed in writing on October 19, 2026, that the amended and "revised subpoena," which was approved for issuance over 3 months ago, "was not served" by Plaintiff.<br><br>(Gupta Declaration, at ¶ 13; Exhibit F, Meet and confer correspondence re Verizon Subpoena (Version 2), at p. 1.) | Immaterial. The movant bears the burden of showing the absence of a genuine dispute, and the absence of carrier records does not establish that Fugate did not transmit the images. A subpoena limited to carrier text-message records would not have captured in-person display, e-mail, or internet-based messaging, and could not have recovered the images Fugate deleted. Plaintiff incorporates by reference her responses to Fact Nos. 19, 21, and 24. |
| 32. On August 13, 2026, Plaintiff made an initial disclosure which included the designation of damages expert, Emin Gharibian, Psy.D., and his Psychological Evaluation Report.<br><br>(Gupta Declaration, at ¶ 14; Exhibit G, Psychological Evaluation Report, dated August 13, 2026.) | Undisputed that on August 13, 2026, Plaintiff disclosed Emin Gharibian, Psy.D., and his Psychological Evaluation Report. |
| 33. Therein, Dr. Gharibian noted that Plaintiff "reported intrusive memories and anxiety related to the images that she saw online."<br><br>(See Exhibit G, at p. 5.) | Objection: Incomplete.<br><br>Undisputed that the report contains the quoted language. Disputed to the extent the asserted fact implies that Dr. Gharibian attributed Ms. Solares's condition solely to the images she saw online. Plaintiff incorporates by reference her response to Fact No. 37. |
| 34. Based on an interview with Plaintiff, Dr. Gharibian summarized that, though "she had not seen the photos in several years, thinking about or remembering them would cause her distress."<br><br>(See Exhibit G, at p. 7.) | Objection: Incomplete.<br><br>Undisputed that the report contains the quoted language. Disputed to the extent the asserted fact implies that Ms. Solares's distress is confined to memories of images she saw online, |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | as opposed to learning of others' sharing of the photos. Dr. Gharibian found that she "continues to struggle with ongoing depression and sadness due to not only losing her son, but learning that he was murdered, seeing his photos online, knowing that the photos are still online, and that nobody has been held accountable." (Gharibian Report at 5, 7.) Plaintiff incorporates by reference her response to Fact No. 37. |
| 35. As such, Dr. Gharibian concluded that, "[g]iven the anxiety and memories she has related to seeing photos of her son's remains online, she would meet the criteria for Other Specified Trauma and Stressor Related Disorder (Persistent Response to Trauma with PTSD Like Symptoms)."<br><br>(See Exhibit G, at p. 7.) | Objection: Incomplete.<br><br>Undisputed that the report contains the quoted language. Disputed to the extent the asserted fact implies that this diagnosis captures the full scope of Ms. Solares's injuries or their causes. Plaintiff incorporates by reference her response to Fact No. 37. |
| 36. He further concluded that, "[b]ased on her history of chronic depression, which is due to the murder of her son and seeing the photos online, she would meet the criteria for Persistent Depressive Disorder with Pure Dysthymic Syndrome, Moderate."<br><br>(See Exhibit G, at pp. 7-8.) | Undisputed that the report contains the quoted language, which attributes Ms. Solares's chronic depression to multiple causes, including the murder of her son, and not to the online images alone. Plaintiff incorporates by reference her response to Fact No. 37. |
| 37. At his expert deposition on October 14, 2026, Dr. Gharibian confirmed the foregoing conclusions in his report that all of Plaintiff's claimed damages in this action are attributable to seeing the crime scene images online.<br><br>(Gupta Declaration, at ¶ 15.) | Objection: Hearsay and lacks foundation (Fed. R. Evid. 602, 802); defense counsel's declaration characterizes expert deposition testimony without attaching the transcript (Fed. R. Civ. P. 56(c)(1)(A), (c)(4)); the transcript is the best evidence of the testimony (Fed. R. Evid. 1002); |

| DEFENDANT'S ALLEGED FACTS AND SUPPORT | PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS |
|---|---|
| | mischaracterizes the report, which contains no such conclusion.<br><br>Disputed.<br><br>*The report attributes Ms. Solares's injuries to multiple causes.* Dr. Gharibian found that Ms. Solares "continues to struggle with ongoing depression and sadness due to not only losing her son, but learning that he was murdered, seeing his photos online, knowing that the photos are still online, and that nobody has been held accountable." (Gharibian Report at 5, 7.) Defendant's own Fact No. 36 quotes the report as attributing her chronic depression to "the murder of her son and seeing the photos online." (Gharibian Report at 7-8.)<br><br>*Learning of further misuse of the images renews the injury.* Ms. Solares testified that learning new details about her son's murder and its aftermath makes her relive it: "I live it again. It's like living again the same thing." (Solares Depo. 121:4-11.) Learning from the news that her son had been murdered increased the emotional pain she was already suffering. (Solares Depo. 127:16-20.) Ms. Solares has learned that crime scene photographs were "copied, shared, and shown to individuals who were not involved in the investigation" (Solares Decl. ¶ 2), and she struggles to sleep, experiences nightmares, and has increased anxiety and diminished appetite. (Solares Decl. ¶ 4-8.) In |

| **DEFENDANT'S ALLEGED FACTS AND SUPPORT** | **PLAINTIFF'S OBJECTIONS AND OPPOSING POINTS** |
|---|---|
| | February 2026, her physician found her blood pressure and blood sugar elevated; she was losing weight, sleeping poorly, and her "nerves were really bad." She began psychotherapy for the first time in February 2026 and psychiatric care in March 2026. (Gharibian Report at 2-4, 7.)<br><br>[redacted]<br><br>*Immaterial to liability*. The Court has held in this action that "the relevant question is not whether the publication of the photographs caused Plaintiff's damages, but rather, whether [defendant's] conduct caused the deprivation of Plaintiff's rights." (ECF No. 26 at 8.) Apportionment of damages among causes is a question for the jury. |

## PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE ("PMF")

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| **A. Defendant Jacob Fugate Photographed the Romero Crime Scene as the ISU's Designated Photographer** | | |
| 1. | On March 9, 2019, Luis Romero's mutilated body was found in Cell 46 of the 4A1R housing unit at California State Prison ("CSP")-Corcoran. | 1. Fugate Depo. 61:13-17; DEF 4096. |
| [redacted] | | |
| 8. | None of the other ISU officers took photographs. Fugate "held the camera the entire time" and did not see anyone | 8. Fugate Depo. 65:22-66:6, 67:17-20. |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | else photograph the Romero crime scene. | |
| [redacted] | | |
| [redacted] | | |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| [redacted] | | |
| **B. Fugate Photographed the Crime Scene Images with His Personal Cell Phone** | | |
| 15. | [redacted] | |
| 16. | | |
| 17. | Only ISU staff could access the ISU shared drive. Fugate testified, "You have to be in the ISU unit to have access to squad share," and "If I wasn't in ISU I wouldn't have had access to them." | 17. Fugate Depo. 42:1, 43:15-16, 83:2-3. |
| 18. | Fugate was on duty when he photographed the images, and had brought his personal iPhone into CSP-Corcoran. He had done so before, and knew when he did so that he was violating a Department Operations Manual ("DOM") regulation. | 18. Fugate Depo. 81:24, 85:14-22. |
| 19. | Fugate took "three photos" with "zoomed variation. It was like an overall, then a medium zoom and then a close-up." | 19. Fugate Depo. 86:23, 87:3-4. |
| 20. | Fugate admitted, "There was no purpose for me to take a photo for ISU on my personal phone." | 20. Fugate Depo. 89:24-25. |
| 21. | Fugate testified that "it was my intention" to show the photographs he took on his personal cell phone to his "lady" at home. | 21. Fugate Depo. 90:7-21, 91:3-4. |
| [redacted] | | |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| [redacted] | | |
| 23. | Fugate left the ISU in approximately May 2019. He and his supervisor, Charlie Morlock, "didn't see eye to eye on certain things," and Fugate "maybe wasn't the type of officer that he wanted me to be." Fugate then returned to Facility 4A and later Facility 3C. | 23. Fugate Depo. 18:20-24, 19:16-17, 20:4-13. |
| **C. Fugate Has Given Inconsistent Accounts of Showing the Images to His "Lady"** | | |
| 2[redacted] | [redacted] | [redacted] |
| 25. | At deposition, Fugate testified, "I never showed her the photos," but later asked, "Are you talking about the time I showed my lady or tried to show my lady the photo?" | 25. Fugate Depo. 94:14, 111:1-2. |
| 26. | In response to Interrogatory No. 10, Fugate stated that his "lady" was "no one." | 26. Fugate Resp. to Interrog. No. 10. |
| 27. | In support of this motion, Fugate asserts that his "lady" "refused to see the images." | 27. ECF No. 99-4, Fact No. 14. |
| **D. Fugate Concealed the Images from CDCR's 2023 Investigation into the Leaked Photographs** | | |
| [redacted] | | |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | [redacted] | |
| 31. | Special Agent McClellan asked Fugate directly about crime scene photographs that had been leaked to the public, and Fugate knew that the leak of the photographs was the subject of her investigation. | 31. Fugate Depo. 108:8-15. |
| 32. | [redacted] | |
| 33. | Fugate later admitted that at the time of the interview, "I had the photos on my phone . . . I was not truthful not having them on my phone." | 33. Fugate Depo. 108:5-6. |
| 34. | Fugate did not disclose the photographs because he knew "there would be some kind of disciplinary action from the prison" "[f]or having those crime scene photos on my phone." | 34. Fugate Depo. 109:11-23, 110:2-4. |
| 35. | Fugate bought a new cell phone "a year or two" after 2019, and the photographs on his old phone "got transferred at the phone store" to the new phone. | 35. Fugate Depo. 92:25-93:12. |
| 36. | Fugate retained the crime scene photographs on his personal phones from late March 2019 until at least March 16, 2024. | 36. Fugate Depo. 92:4-7. |
| **E. Fugate Displayed the Images to Two Officers with No Role in the Investigation** | | |
| 37. | [redacted] | |
| 38. | | |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | [redacted] | |
| 39. | | |
| 40. | | |
| 41. | | |
| 42. | | |
| 43. | | |
| 44. | | |
| 45. | | |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
| --- | --- | --- |
| | [redacted] | |
| 46. | | |
| 47. | | |
| 48. | | 48. |
| 49. | Fugate testified: "I mean, you can't say it's therapy. But when you see something like that, you got to talk about it."<br>"So maybe just by looking at it later if I figured out how to process it better." | 49. Fugate Depo. 90:13-15; 118:25-119:3. |
| 50. | Fugate never participated in peer support ("I did not do peer support"), explaining, "I'm not comfortable doing that because they're not going to understand what we have to deal with," and never sought a licensed therapist about what he had seen at the Romero crime scene. | 50. Fugate Depo. 119:5-9, 120:5, 120:19-21, 120:24-121:3. |
| 51. | Fugate admits that he showed at least one person a photograph of Luis Romero's remains that he kept on his personal cell phone, and that he showed such a photograph to CO Tyran Marshall. | 51. Fugate Resp. to RFA Nos. 13, 14. |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| **F. Fugate Deleted the Images upon Notice of an Investigation into Them** | | |
| 52. | [redacted] | [redacted] |
| 53. | [redacted] | [redacted] |
| 54. | [redacted] | [redacted] |
| 55. | [redacted] | [redacted] |
| 56. | [redacted] | [redacted] |
| **G. CDCR Policy and Training Prohibited Fugate's Conduct** | | |
| 57. | [redacted]ugate knew he was required to comply with all laws, including California Code of Regulations, Title 15, departmental policy, applicable operating procedures, and institution post orders. | 57. Fugate Depo. 29:2-20; Fugate Depo. Ex. 5, CDCRSDT 591. |
| 58. | Fugate was familiar with the Law Enforcement Code of Ethics, which | 58. Fugate Depo. 26:5-7; Fugate Depo. Ex. 1, CDCRSDT 586; |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
| --- | --- | --- |
| | provides: "Confidential information received in my official capacity shall remain undisclosed unless disclosure is necessary in the performance of my duty." | Fugate Depo. Ex. 3, CDCR 589; DOM § 33030.3.3. |
| 59. | Fugate received DOM training on state-issued cell phones. DOM § 12070.18 prohibits personal cell phones within any CDCR institution. | 59. Fugate Depo. 25:9-12; Fugate Depo. Ex. 2, CDCRSDT 588. |
| 60. | Fugate was familiar with the chain of custody, which he described as a "paper trail for everywhere [a piece of evidence] goes." | 60. Fugate Depo. 37:1-15. |
| 61. | Operational Procedure 202, Control of Evidence, provides that "[t]he ISU Officers are solely responsible for maintaining the custody of the evidence within the Main Evidence Room," and that "[m]aintaining the integrity of the evidence is paramount." | 61. DEF 242; Fugate Depo. Ex. 6; CDCR 3. |
| 62. | [redacted] | |
| 63. | | |
| **H. CDCR Sustained Misconduct Findings Against Fugate** | | |
| 64. | [redacted] | |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | [redacted] | [redacted] |
| 65. | [redacted] | [redacted] |
| 66. | [redacted] | [redacted] |
| 67. | [redacted] | [redacted] |
| 68. | After resigning, Fugate "stayed home with the kids" until he was hired by Allied Universal, where he works security. | 68. Fugate Depo. 5:8-10, 163:21-25. |
| **I. Evidence Bearing on Whether Fugate Was a Source of the Images That Circulated Within CDCR and Online** | | |
| 69. | [redacted] | [redacted] |
| 70. | [redacted] | [redacted] |
| 71. | [redacted] | [redacted] |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | [redacted] | |
| 72. | | |
| 73. | | |
| 74. | | |
| 75. | Plaintiff's correctional practices expert, Rick Winistorfer, opines that holding crime scene images on a personal phone is "never authorized," and that the images Fugate kept served as "trophies." | 75. Winistorfer Report at 6, 14. |
| **J. Plaintiff Dora Solares's Injuries** | | |
| 76. | Ms. Solares learned of her son's murder from the news and later saw photographs of his mutilated remains online. | 76. Gharibian Report at 3, 6. |
| 77. | Before she saw the photographs online, Ms. Solares did not know that her son had been beheaded. | 77. Solares Depo. 100:15-17. |
| 78. | Among the images Ms. Solares saw online was an image of "the killer wearing her son's organs as jewelry around his neck." | 78. Gharibian Report at 6. |
| 79. | Ms. Solares's examining psychologist, Dr. Emin Gharibian, diagnosed Persistent Depressive Disorder and Other Specified Trauma and Stressor Related Disorder. | 79. Gharibian Report at 6-7. |
| 80. | Dr. Gharibian found that Ms. Solares "continues to struggle with ongoing depression and sadness due to not only losing her son, but learning that he was murdered, seeing his photos online, knowing that the photos are still online, and that nobody has been held | 80. Gharibian Report at 5, 7. |

| No. | PLAINTIFF'S MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | accountable." | |
| 81. | In February 2026, Ms. Solares's physician found her blood pressure and blood sugar elevated; she was losing weight, sleeping poorly, and her "nerves were really bad." She began psychotherapy for the first time in February 2026 and psychiatric care in March 2026. | 81. Gharibian Report at 2-4, 7. |
| 82. | Ms. Solares testified that learning new details of her son's murder and what has happened since makes her relive it: "I live it again. It's like living again the same thing." | 82. Solares Depo. 121:4-11. |
| 83. | Learning from the news that her son had been murdered increased the emotional pain Ms. Solares was already suffering from his death. | 83. Solares Depo. 127:16-20. |
| 84. | Ms. Solares learned "that crime scene photos were copied, shared, and shown to individuals who were not involved in the investigation." | 84. Solares Decl. ¶ 2. |
| 85. | Since learning this, Ms. Solares's daily life has been affected: she struggles to sleep, experiences nightmares, her anxiety has increased, her appetite has been affected. (PMF 85.) | 85. Solares Decl. ¶¶4-8. |
| 86. | What is left is a feeling of pain that comes from powerlessness, Ms. Solares "cannot erase them. It has already happened. My son's dignity cannot be protected from something that has already happened." (PMF 86.) | 86. Solares Decl. ¶ 6. |

Dated: November 20, 2026

Respectfully submitted,

LAW OFFICES OF JUSTIN STERLING

By: */s/ Justin E. Sterling*
Justin E. Sterling
Attorneys for Plaintiff Dora Solares

LAW OFFICES OF ERIN DARLING

By: */s/ Erin Darling*
Erin Darling
Attorneys for Plaintiff Dora Solares